### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD A MYERS, SHERNETTE CLARK, KENNETH BINGHAM, and FLOYD MCLEAN,<br>　　　　Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| TOWN OF TRUMBULL, OFFICER COPPOLA, I.D. #24 (first name unknown) (individually and in his official capacity), OFFICER, I.D. #35 (name unknown) (individually and in his official capacity), SPECTAGUARD, MICHAEL (last name unknown), WESTFIELD SHOPPINGTOWN, JOHN DOES 1 Through 10, Jane Does 1 through 10, and ABC Corp. through XYZ, individually, jointly, and severally, | : | CASE NO.:  3:03 CV 373 (RNC) |
| | : | |
| 　　　　Defendants. | : | June 14, 2004 |

### <u>MEMORANDUM OF LAW IN SUPPORT OF</u>
### <u>MOTION FOR SUMMARY JUDGMENT</u>

The Defendants, Town of Trumbull, Officer Robert Coppola, I.D. #24, and Officer James Leos, I.D. #35, submit the following memorandum in support of their motion that the Court enter summary judgment against the Plaintiffs, Richard A. Myers, Shernette Clark, Kenneth Bingham and Floyd McLean, as to all counts of the present action.

## I.    FACTUAL BACKGROUND

The Plaintiffs, Richard A. Myers, Shernette Clark, Kenneth Bingham and Floyd

McLean, are all black and of West Indian descent.  Amended Complaint, ¶ 14.[1]  The Plaintiffs

are all residents of New Jersey.  Amended Complaint, ¶ 5.  The Plaintiffs commenced the

present action in the United States District Court for the District of New Jersey against

Defendants Town of Trumbull, the Trumbull Police Department, Officer Robert Coppola,

Officer James Leos, Spectaguard, Michael (last name unknown), Westfield Shoppingtown

Trumbull ("the Mall"), John Does 1 through 10, Jane Does 1 through 10, and ABC Corp.

through XYZ, on or about August 1, 2002.  On or about January 30, 2003, the Defendants

moved to have the action transferred to the District of Connecticut as it was clear that this was

the appropriate venue for the present action.  The Plaintiffs did not contest the request for

transfer of venue, and the action was transferred by the Court (Greenaway, J.) on March 13,

2003.

The Plaintiffs state that they were patrons of the Mall on the evening of July 31, 2001.

(Complaint, ¶ 16; Deposition of Shernette Clark, p. 26, excerpts attached to Local Rule 56(a)

Statement as Exhibit A).  They went to the Mall with three other persons:  Olando Wilson,

Marvin Buntin (deceased) and Richard Meyers' teenage cousin, Nelay Grant.  (Deposition of

Richard Meyers, pp. 19-20, excerpts attached to Local Rule 56(a)1 Statement as Exhibit B).

Upon entering the Mall, the Plaintiffs and their friends browsed through several stores, spoke

with other patrons and proceeded to the second floor of the Mall.  The Plaintiffs had been in

---

[1]Unless specified otherwise, all citations to the Complaint or Amended Complaint in this memorandum are meant
to refer to the "Amended Complaint and Demand for Jury Trial" attached to the Plaintiffs' May 27, 2004 "Motion
to Amend Complaint."

2

the Mall for about 20 to 30 minutes, when they split into two groups.  (Exhibit B, p. 31; Exhibit C, p. 24).  One group included Richard Meyers, Shernette Clarke and Olando Wilson. (Exhibit A, pp. 33-34; Exhibit B., p. 31; Exhibit C, p. 25).  This first group went shopping for clothes for Miss Clarke at Lord & Taylor, while the remainder waited just outside the store.

While the second group was waiting, they flirted with female Mall patrons who passed by.  The manner in which the members of this group were flirting was quite aggressive, to the point where an employee of a store in the Mall contacted security. [2]  (See Westfield Shoppingtown Trumbull Witness Statement from Matthew Wilkins, copy attached to Local Rule 56(a)1 Statement as Exhibit J).  When the security guards approached the group outside of Lord & Taylor, the group refused to leave the area, and one of the members of the group stated in a very loud tone "I ain't doing shit."  (Westfield Shoppingtown Trumbull Security Report, copy attached to Local Rule 56(a)1 Statement as Exhibit L).  When the group became hostile and began to use foul and abusive language in voices loud enough to be heard over a hundred feet away, the group was asked to leave the Mall and the Trumbull Police Department was contacted.  (Exhibit E, p. 80; Exhibit L).  The group continued in this manner, and it was shortly thereafter that the others who had gone shopping at Lord & Taylor returned and asked what was happening.  (Complaint, ¶¶ 21-22; Exhibit A, p. 35; Exhibit B, pp. 33-34).  When the security guards tried to explain the situation, one of the members of the group began to shout "Man don't give me that shit."  (Exhibit L).  Several of the Plaintiffs and their friends were

---

[2]It should be noted, however, that the allegation in Paragraph 19 of the Amended Complaint that Plaintiffs Bingham and McLean were talking with two white females who had just given them a flyer when the group was approached by security guards is completely false.  The interaction between the Plaintiffs and these two females, if it ever happened, took place on the first floor of the Mall before the group went shopping at Lord & Taylor. The Plaintiffs were not approached by security guards while talking with these two white females.  (See Exhibit B, p. 41; Exhibit C, pp. 31-32).

shouting various profanities at this point.  (Exhibit A, pp. 63-65; Exhibit B, pp. 35-36, 59; Exhibit C, pp. 35-37; Exhibit E, pp. 83-84; Exhibit L).

The Plaintiffs and their friends left the area and began to walk through the Mall again, ignoring the requests of the security guards that they leave the Mall.  (Exhibit A, pp. 35-36; Exhibit B, p. 35; Exhibit C, pp. 34-35).  They walked slowly and took a circuitous route towards the parking lots where their cars were located, stopping at several points to look into stores.  (Exhibit C, p. 78; Exhibit E, p. 105-106; Exhibit L).  Various security guards monitored their progress along the way, occasionally repeating the request that the Plaintiffs and their friends leave when they continued to browse in various stores despite their earlier behavior and the requests that they leave the premises.  (Exhibit A, p. 40; Exhibit B, p. 37; Exhibit C, pp. 34-35, 73-74).

When the Plaintiffs exited the doors of the Mall nearest their cars, police officers of the Town of Trumbull were waiting outside.  (Exhibit A, p. 42; Exhibit B, p. 43; Exhibit C, p. 39). The police officers had not spoken with the security guards at any point prior to the Plaintiffs exiting the Mall.  (Exhibit E, pp. 7-9).  When the Plaintiffs' group came outside, they were detained by the police long enough to allow the officers to check the group's identification and determine if there were any warrants as to the various members of the group.  (Complaint, ¶ 25; Exhibit C, pp. 40-41; Exhibit E, pp. 19-20).  The security guards described the group's behavior to the police officers and stated that they had been asked to leave.  (Exhibit E, p. 172). In addition, the Mall was closing for the night at around the time that the Plaintiffs' group was still outside.  (Exhibit E, pp. 174-75).

According to the Plaintiffs, after the police had finished checking the group's identification, the group was ordered to leave the Mall.  See Interrogatory Responses, ¶ 17. The Plaintiffs each estimated that they were detained by the police for approximately 45 minutes to an hour.  The Plaintiffs were never told that they were under arrest, nor were they placed in handcuffs or touched by any of the officers.  (Exhibit E, p. 169).  At no time did the police officers make any racial slurs, nor did the officers make any negative comments with respect to the Plaintiffs' national origins.  (See Exhibits F through I, nos. 23 and 24).

Subsequent to the transfer of this action to Connecticut, the Plaintiffs withdrew their claims as to the "Trumbull Police Department."  Upon a Motion to Dismiss filed by Defendants Town of Trumbull, and Officers Leos and Coppola, the Court (Chatigny, J.) dismissed Count One of the Complaint solely as to the Town of Trumbull.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides, in part, that a motion for summary judgment shall be granted when a review of the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The burden falls on the moving party to establish that no relevant facts are in dispute.  Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975).  In determining whether a genuine has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993,8 L. Ed. 2d 176 (1962) (per curiam); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).

The nonmoving party, however, cannot simply rest on the allegations in his pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  If the movant demonstrates an absence of material issues of fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial."  (Emphasis in original; internal quotation marks omitted.) Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (citations, internal quotation marks, and emphasis omitted).  "[P]roperly employed, summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation….  Thus, the mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party."  (Citations omitted; emphasis in original.) Quinn, supra, 613 F.2d 445.  If the nonmovant fails to meet this burden, summary judgment should be granted.  The question then becomes whether there is sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### III.     COUNT ONE: CONSPIRACY – FEDERAL CLAIM - § 1985

The Plaintiffs first count, entitled "First Claim for Relief (Conspiracy – federal claim)," attempts to assert a cause of action pursuant to 42 U.S.C. § 1985 for an alleged conspiracy by the Defendants to deprive the Plaintiffs of their rights due to the Plaintiffs' race and national origins.  The Plaintiffs have no evidence to support the existence of such a conspiracy beyond the allegations of the Complaint and their own stereotypes of white police officers' relations to

persons of color.  Moreover, the Plaintiffs' own admissions demonstrate that there was a

legitimate reason for the Plaintiffs to be expelled from the Mall.

   In 42 U.S.C. § 1985 (3), Congress created a cause of action to prevent conspiracies to

deprive persons of rights and privileges set forth in the federal constitution.  The statute

provides, in relevant part, as follows:

> If two or more persons in any State or Territory conspire .
> . . for the purpose of depriving, either directly or
> indirectly, any person or class of persons of the equal
> protection of the laws, or of equal privileges and
> immunities under the laws . . . ;  in any case of conspiracy
> set forth in this section, if one or more persons engaged
> therein do, or cause to be done, any act in furtherance of
> the object of such conspiracy, whereby another is injured
> in his person or property, or deprived of having and
> exercising any right or privilege of a citizen of the United
> States, the party so injured or deprived may have an action
> for the recovery of damages, occasioned by such injury or
> deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985 (3).  The elements necessary to sustain such a cause of action are well

settled.  Under § 1985 (3), a plaintiff must prove:  "(1) a conspiracy; (2) for the purpose of

depriving, either directly or indirectly, any person or class of persons of equal protection of the

laws…; (3) an act in furtherance of the conspiracy; (4) whereby a person is…deprived of any

right of a citizen of the United States."  (Internal quotation marks omitted.) Brown v. City of

Oneonta, New York, 221 F.3d 329, 341 (2d Cir. 2000), cert. denied, 534 U.S. 816, 122 S. Ct.

44, 151 L. Ed. 2d 16 (2001); see also United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S.

825, 828-29, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983).  An essential element to a cause of

action under §1985 is a requirement that the alleged discrimination took place because of the

individual's race.  Id., 829.  In other words, "the conspiracy must … be motivated by some

racial or perhaps otherwise class-based, invidious discriminatory animus behind the

conspirators action."  (Internal quotation marks omitted.)  <u>Mian v. Donaldson, Lufkin &

Jenrette Securities Corp.,</u> 7 F.3d 1085, 1088 (2d Cir. 1993).

      **A.**      <u>**Count One Must Fail Because No Evidence of Conspiracy**</u>

      The Plaintiffs' claims brought pursuant to § 1985 must fail, because they cannot

establish their prima facie case as to the first element of such a cause of action: the existence of

a conspiracy.  The Plaintiffs have no evidence to support such a claim beyond a bare allegation

in the first count of the Complaint that "[a]ll named defendants conspired with one another to

deprive plaintiffs of their rights . . . ."  (Complaint, ¶ 31).  The Plaintiffs, in their depositions,

put forth no evidence of such a conspiracy existing between the various Defendants.  (Exhibit

A, pp. 116-17; Exhibit B, pp. 103-104; Exhibit C, p. 111-12).  Moreover, the security guards

had not even spoken with the police officers prior to the point when the Plaintiffs and their

friends had already exited the Mall.  (Exhibit E, pp. 7-9).  At that point, the only topic of

conversation between the guards and the police officers was the reasons why the Plaintiffs had

been asked to leave the Mall.  (Exhibit E, pp. 169-170, 172-174).

      A plaintiff must do more than make "vague, general or conclusory accusations to

establish the existence of a conspiracy actionable under §1985(3)."  <u>Mass v. McClenahan,</u> 893

F.Supp. 225 (S.D.N.Y. 1995), <u>quoting</u> <u>Williams v. Reilly,</u> 743 F.Supp. 168, 173-74 (S.D.N.Y.

1990); <u>see also</u> <u>Local 749, AFSCME, Council 4, AFL-CIO v. Ment,</u> 945 F. Supp. 30, 35 (D.

Conn. 1996) ("the Second Circuit has repeatedly required specifics factual allegations to

support conspiracy claims"); <u>Mazurek v. Wolcott Bd. of Educ.,</u> 815 F.Supp. 71, 77

(D.Conn.1993) ("It is well established that mere conclusory allegations are insufficient to

establish a cause of action for a violation of civil rights.").  Rather, the plaintiff must plead specific material facts that show the existence of a conspiracy.  See Winterland Concessions Co. v. Trela, 735 F.2d 257, 262 (7th Cir. 1984).  "Absent specific factual allegations as to the participation of a particular defendant in the conspiracy, plaintiff's §1985(3) claim cannot survive a motion for summary judgment by that defendant."  McPartland v. American Broadcasting Companies, Inc., 623 F.Supp. 1334, 1341 (S.D.N.Y. 1985).

The Plaintiffs have no evidence to support their claims of a conspiracy between the various Defendants.  Therefore, the Court should grant summary judgment as to Count One.

**B.    Count One Fails Because No Evidence of Discriminatory Motive**

In order to bring a successful § 1985 claim, the Plaintiffs must prove that the Defendants' action were "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus …." (Internal quotation marks omitted.)  Mian v. Donaldson, Lufkin & Jenrette Securities Corp., supra, 7 F.3d 1088.  The Plaintiffs have no evidence to support this essential element of their cause of action, and, therefore, summary judgment is appropriate.

The Plaintiffs have admitted that at no time did the Police Officers make any statements that were discriminatory either on the basis of race or national origin.  (Exhibit A, p. 46; Exhibit B, 48; Exhibits F through I, nos. 23-24).  In fact, the Plaintiffs have no evidence whatsoever of such a motive on the Defendants' part.  (Exhibit E, pp. 169-170).  The police officers behaved in a professional manner, and they did not treat the Plaintiffs any differently than they would a group of white patrons.  (Exhibit E, pp. 168, 174).  Instead, it is the Plaintiffs themselves who are stereotyping the Police Officers and the other Defendants on the basis of race.  The Plaintiffs are assuming that the Defendants' actions were discriminatory, because

the Defendants were, by and large, white while the Plaintiffs were black.  (Exhibit A, p. 46).

The Plaintiffs should not, however, be permitted to maintain such a cause of action without

some affirmative proof beyond the color of the Defendants' skin.

     The Plaintiffs complain about the fact that they were detained and had their

identification checked and state, "I believe that the police officers' statements requesting our

identification, directing us to leave the Mall and not to return were prejudicial against my race

and national origin as there was no reason to [sic] for them to kick us out.  We had not done

anything to warrant such action or behavior from the police officers directed towards us."

(Exhibits F through I, no. 16).

     The Plaintiffs omit the fact that they were yelling obscenities in the Mall and harassing

mall patrons and employees.  (See Exhibit A, pp. 63-65; Exhibit B, pp. 35-36, 59; Exhibit C,

pp. 34-37; Exhibit E, pp. 80, 83-84; Exhibit L; Exhibit K).  These are matters, which provided

ample reason for the Mall to ask the Plaintiffs and their cohorts to leave.  (See Exhibit M).  The

security guards informed the Plaintiffs and their friends of at least two of the rules they had

violated at the Mall.  (Exhibit B, pp. 37-38; Exhibit E, pp. 98-101).  By their conduct, it is clear

that the Plaintiffs may have violated at least four of the Mall's rules, namely numbers 2

through 5.

     In the face of the evidence demonstrating the fact that the police officers merely

conducted an investigation before releasing the plaintiffs, and in light of the legitimate, non-

discriminatory reasons behind the Plaintiffs' expulsion from the Mall, and in the absence of

any contrary evidence from the Plaintiffs, the Court must enter summary judgment as to Count

One.

IV.    **COUNT TWO – FALSE IMPRISONMENT AND FALSE ARREST – POLICE OFFICERS ENTITLED TO QUALIFIED IMMUNITY FOR THEIR INVESTIGATION OF THE SECURITY GUARDS' COMPLAINT**

The Plaintiffs assert that "[t]he defendants' actions in illegally detaining plaintiffs inside of … the Mall parking lot for a specific period of time constituted false arrest and false imprisonment.  Defendants actions were further committed with malice, willfulness, and a wanton disregard of the rights of the plaintiff under both federal and state law."  (Complaint, ¶35).[3]  The Plaintiffs cannot succeed on their claims for false arrest, because the Defendants are entitled to qualified immunity in this instance.

"False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another."  Outlaw v. City of Meriden, 43 Conn. App. 387, 392, 682 A.2d 112, cert. denied, 239 Conn. 946, 686 A.2d 122 (1996); see also Berry v. Loiseau, 223 Conn. 786, 820, 614 A.2d 414 (1992); Green v. Donroe, 186 Conn. 265, 267, 440 A.2d 973 (1982); Felix v. Hall-Brooke Sanitarium, 140 Conn. 496, 499, 101 A.2d 500 (1953).  "To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is that he did not consent to the restraint or acquiesce in it willingly."  Berry, 223 Conn. at 820 (quoting Lo Sacco v. Young, 20 Conn. App. 6, 19, 564 A.2d 610, cert. denied, 213 Conn. 808, 568 A.2d 793 (1989))(emphasis added).  Finally, it is a crucial element of a claim of false arrest or false imprisonment that the restraint be unlawful.  See Outlaw v. City of Meriden, supra, 43 Conn. App. 393-94.

---

[3] The Plaintiffs do not allege that the Defendant Police Officers were involved in detaining the Plaintiffs until they were outside the Mall; (see Complaint, ¶25); and, therefore, the allegations of an unlawful restraint inside the Mall are not addressed by these Defendants.

"The defense of qualified immunity shields government officials from civil liability if the official's conduct did not violate constitutional rights that were clearly established at the pertinent time or if it was objectively reasonable for the official to believe that the conduct did not violate such rights....  As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights."  (Internal quotation marks omitted.)  Crone v. Connelly, 74 Conn. App. 788, 798, 813 A.2d 1084 (2003), aff'd, 267 Conn. 581, 840 A.2d 552 (2004).  "With respect to whether a wrongful arrest has occurred, considerable uncertainty must be tolerated on occasion because of the need to allow the police to take immediate affirmative action in ambiguous circumstances….  The Constitution therefore does not guarantee that only guilty persons will be arrested."  (Citation omitted; internal quotation marks omitted.) Lukos v. Bettencourt, 23 F. Supp. 2d 175, 177 (D. Conn. 1998);  see also Krause v. Bennett, 887 F.2d 362, 371 (2d Cir. 1989) (noting that probable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful).

"The Supreme Court has expressly encouraged the use of summary judgment when qualified immunity is raised as a defense.  The objective reasonableness test was designed to facilitate this summary device as a means quickly to extricate government officials from defending insubstantial suits."  (Internal quotation marks omitted.) Outlaw v. City of Meriden, supra, 43 Conn. App. 395.  "Summary judgment on the issue of objective reasonableness is appropriate where no reasonable jury could conclude that it was objectively unreasonable for defendants to believe they were acting in a manner that did not clearly violate an established

federally protected right."  (Emphasis in original.) <u>Smart v. Morgillo</u>, Docket No. 3:00cv1281, 2001 WL 802697, *2 (D. Conn. Jul. 10, 2001).

The Defendants are entitled to qualified immunity as to the Plaintiffs' claims of false arrest/false imprisonment, because the Police Officers' actions were objectively reasonable. First, there is no dispute that the full extent of the police officers' involvement was nothing more than being called to the Mall, investigating the complaint, checking the Plaintiffs' identification, and releasing the Plaintiffs.  The police officers did not have the full information about the incident between the security guards and the Plaintiffs' group until they arrived at the Mall and the guards and the Plaintiffs came outside.  (Exhibit E, pp. 7-9, 172).  The Plaintiffs cannot point to any instance in which the police officers had <u>unlawfully</u> restrained their liberty.

Moreover, the police officers were called to the scene, because the Plaintiffs were giving the security guards a hard time and were ignoring the guards' requests that the Plaintiffs and their friends leave the Mall.  (Exhibit A, pp. 35-36; Exhibit B, p. 35; Exhibit C, pp. 34-35; Exhibit E, pp. 146-148).  In such a situation, the Plaintiffs could have been charged with committing the crime of Criminal Trespass in the First Degree, Conn. Gen. Stat. § 53a-107.[4] The Court should note that for purposes of a prosecution for the crime of trespass in Connecticut, "property does not lose its private character merely because the public is generally invited to use it for designated purposes."  <u>State v. Ong</u>, 30 Conn. App. 45, 50 n.8, 618 A.2d 583, cert. denied, 225 Conn. 909, 621 A.2d 290 (1993).  Rather than arrest the

---

[4] Connecticut General Statutes § 53a-107(a) provides, in pertinent part, "A person is guilty of criminal trespass in the first degree when:  (1) Knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person…."

Plaintiffs, however, the only things the Police Officers did at the scene were show up and hold the Plaintiffs long enough to check their identification.  (Exhibit C, pp. 40-41).  A reasonable jury could conclude that it was objectively reasonable for the Defendants to believe that these actions were appropriate.  See, generally, <u>Smart v. Morgillo</u>, Docket No. 3:00cv1281, 2001 WL 802697, *2 (D. Conn. Jul. 10, 2001).

The Defendants are entitled to qualified immunity for the Plaintiffs' claims of false arrest and false imprisonment.  Therefore, the Court should enter summary judgment as to Count Two of the Complaint.

## V.     COUNTS THREE and FOUR – 42 U.S.C. § 1983

In their third claim for relief, the Plaintiffs attempt to assert a cause of action against the Defendant Police Officers pursuant to 42 U.S.C. § 1983.  The Plaintiffs' fourth claim for relief repeats the allegations contained in the third claim, the only distinction being that the fourth claim appears directed towards all of the Defendants, whereas the third claim is directed solely towards the "defendant officer[s]."  (<u>Compare</u> Complaint ¶ 37 <u>with</u> ¶ 39).  The basis asserted for these claims being identical, the Defendants will address Counts Three and Four together.

### A.     <u>Denying Access to a Public Accommodation Claims must Fail Because Shopping Mall is not a Public Accommodation and No Evidence of Discriminatory Motive</u>

The Plaintiffs attempt to impose liability under a number of theories based upon federal statutes and the United States Constitution.  The Plaintiffs first attempt to impose liability is the argument that the Police Officers denied the Plaintiffs "access to a public accommodation in violation of 42 U.S.C. §§ 2000 (a) and 1981…."  (Complaint, ¶ 37).  Count Four merely adds

14

that the denial of access to a public accommodation was based upon the Plaintiffs' race and national origin.  (Complaint, ¶ 39).

### 1.    42 U.S.C. § 2000a

In Counts Three and Four of their Complaint, the Plaintiffs bring claims against the Defendants for race and national origin-based denial of access to a public accommodation under 42 U.S.C. §2000a.  The Plaintiffs cannot succeed upon these claims, in that the Mall is not a place of public accommodation included within the meaning of the statute.  For this reason, summary judgment is appropriate as to these claims in Counts Three and Four.

First, based upon a plain reading of 42 U.S.C. § 2000a(b), the Mall is not a place of public accommodation.  Section 2000a(b) provides:

> Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action: (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence; (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station; (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000a (b).

The Plaintiffs allege that the Defendants "discriminated against them by denying them access to a place of public accommodation."  (Complaint, ¶ 39).  Plaintiffs also allege that the

Mall is "a shopping center open to the general public for business purposes," and that it "consists of various stores specializing in the sale of clothing articles, food products, and general merchandise." (Complaint, ¶¶ 16, 17). While it is true that the list of covered establishments traditionally has been construed broadly; Welsh v. Boy Scouts of America, 993 F.2d 1267, 1269 (7th Cir.), cert. denied, 510 U.S. 1012, 114 S. Ct. 602, 126 L. Ed. 2d 567 (1993); the Plaintiffs do not specifically allege that the Mall is a place of public accommodation covered by the statute, nor can they.

The Mall is not an establishment within the meaning of the § 2000a(b). Courts have found covered establishments include, *inter alia:* health spas,[5] golf clubs,[6] and beach clubs,[7] but the Act clearly does not include retail stores and food markets because there has been little if any discrimination in the operation of these establishments. See, generally, Newman v. Piggie Park Enterprises, 377 F.2d 433 (4th Cir.1967), aff'd, 390 U.S. 400, 88 S. Ct. 964, 19 L.Ed.2d 1263 (1968). None of the case law addressing a covered establishment has specifically found that a shopping mall falls within the meaning of the statute. More importantly, courts have found that shopping malls are not covered establishments under the statute. See, e.g., Halton, et al. v. Great Clips, Inc., 94 F. Supp. 2d 856, 863 (N.D. Ohio 2000). Additionally, if Congress wanted to include, within the meaning of the statute, other types of establishments such as a service establishment, it could have amended Title II; after all, over

---

[5] Rousseve v. Shape Spa for Health and Beauty Inc., 516 F.2d 64 (5th Cir.1975); Johnson v. Brace, 472 F.Supp. 1056 (E.D.Ark.1979).

[6] Evans v. Laurel Links, Inc., 261 F.Supp. 474 (E.D.Va.1966); Anderson v. Pass Christian Isles Golf Club, Inc., 488 F.2d 855 (5th Cir.1974).

[7] United States v. Beach Associates, Inc., 286 F.Supp. 801 (D.Md.1968).

three decades have passed since Congress enacted the statute.  "This inaction by Congress could not be a mere oversight or an expectation that courts would broadly interpret the statute to include basically any type of establishment because Congress has subsequently defined 'public accommodation' more broadly."  Id., 862; see also the Americans with Disabilities Act, 42 U.S.C. § 12181.[8]

A shopping mall not being a place of public accommodation under § 2000a, the Court should enter summary judgment as to these claims in Counts Three and Four.

### 2.      42 U.S.C. § 1981

To prevail on a claim under §1981, a plaintiff must establish, *inter alia*, intentional race discrimination.[9]  See Brown v. City of Oneonta, New York, supra, 221 F.3d 339; Edwards v. Acadia Realty Trust, Inc., 141 F.Supp.2d 1340, 1345-46 (M.D. Fla. 2001).  As the court noted

---

[8] 42 U.S.C. § 12181(7) provides: Public accommodation
The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce-- (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor; (B) a restaurant, bar, or other establishment serving food or drink; (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment; (D) an auditorium, convention center, lecture hall, or other place of public gathering; (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment; (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment; (G) a terminal, depot, or other station used for specified public transportation; (H) a museum, library, gallery, or other place of public display or collection; (I) a park, zoo, amusement park, or other place of recreation; (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education; (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

[9] To establish a claim under §1981 a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.). See, e.g., Mian v. Donaldson, Lufkin & Jenrette Securities Corp., supra, 7 F.3d 1085; Baker v. McDonald's Corp., 686 F.Supp. 1474, 1481 (S.D.Fla.1987), aff'd 865 F.2d 1272 (11th Cir.1988), cert. denied, 493 U.S. 812, 110 S.Ct. 57, 107 L. Ed. 2d 25 (1989).

in Edwards,

> The [s]ine qua non of a complaint under section 1981 is a showing of racial discrimination.... The Court recognizes that motive and intent are crucial in determining whether an alleged violation of section 1981 has occurred. But just because racial animus is important, that does not suspend the application of Rule 56. In response to the motion for summary judgment the plaintiffs presented no significant probative evidence either to support the allegations of racial discrimination in the complaint or to show that a genuine issue as to a material fact exists. Simple dissatisfaction with the results of the testing does not translate into racial discrimination. The Court is satisfied that whatever the results of the academic placement testing is in Dallas County no racial animus is present. Accordingly, the defendants' motion for summary judgment as to the section 1981 claim is granted.

141 F.Supp.2d at 1345-46, quoting Smith v. Dallas County Bd. of Educ., 480 F.Supp. 1324, 1336 (S.D.Ala.1979).

In the case now before this Court, as in Edwards and Smith, Plaintiffs have failed to present any evidence creating a genuine issue of fact as to racial animus. Instead, the Plaintiffs have affirmed that these allegations of racial discrimination are based as much upon the color of the Defendants' skins as their own. (See Exhibit A, p. 46). The Plaintiffs were each asked to describe any discriminatory language from the Police Officers, but each of the Plaintiffs confirmed that no such language was used. (Exhibits F through I, nos. 23-24). In fact, there is nothing whatsoever in the record to indicate that the Plaintiffs' race or national origins played any part in the police officers' actions. (Exhibit E, pp. 168-171).

In short, there is no evidence that the Defendant Police Officers acted with the discriminatory intent required for recovery under 42 U.S.C. § 1981, and no reasonable jury could find discriminatory intent on this record. See Anderson, supra, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); accord Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.1997); see also Bibbs v. Bd. of Trs., 9 F.Supp.2d 964, 973- 74 (N.D.Ill.1998) (granting summary judgment where there was "not a scintilla of evidence" of racial animus and "the undisputed evidence would not allow a reasonable jury to return a verdict in support of [the] claim of racial discrimination"), aff'd, 191 F.3d 455 (7th Cir.1999); Reyes v. City of Dinuba, 1992 WL 289553, *1 (9th Cir. Oct.14, 1992) (affirming summary judgment where "racial animus [could] not reasonably be inferred from the evidence"); Zephyr v. Ortho McNeil Pharm., 62 F.Supp.2d 599, 607 (D.Conn. 1999) (granting summary judgment where case "present[ed] the Court with nothing more than pure and legally inadequate speculation that racial animus motivated the alleged discriminatory treatment of the plaintiff"); Brady v. Cheltenham Township, 1998 WL 164994, *7 (E.D.Pa. Apr.9, 1998) (finding that "[t]he evidence presented fail[ed] to bolster plaintiffs' conclusory allegations of racial animus, which are inadequate to create an issue of fact that would prevent the court from granting summary judgment" on section 1981 claims).

### B. Deprivation of Liberty Claims Must Fail Because Police Officers Entitled to Qualified Immunity for Investigating Guards' Complaint

The Plaintiffs allege that in the present case liability under § 1983 can be predicated under a theory of deprivation liberty in violation of the 4th and 14th Amendments to the United States Constitution.  (Complaint, ¶ 37).  The Plaintiffs, however, cannot overcome the defense of qualified immunity under the circumstances of the present case.

"Effective crime prevention and detection . . . [underlie] the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for

purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990). "Under the fourth amendment to the United States constitution and article first, §§ 7 and 9, of our state constitution, a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest. . . .  Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion."  (Citations omitted; internal quotation marks omitted.)  State v. Lipscomb, 258 Conn. 68, 75, 779 A.2d 88 (2001).

        The defense of qualified immunity protects government officials from civil liability arising from the performance of discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  Where, as here, the factual record is not in serious dispute, the issue of qualified immunity is a question of law for the court to resolve.  Lukos v. Bettencourt, supra, 23 F. Supp. 2d 178; see also Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995).  An arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause

test was met."  (Internal quotation marks omitted.) <u>Wachtler v. County of Herkimer</u>, 35 F.3d 77, 80 (2d Cir. 1994).

The Defendants are entitled to qualified immunity as to the Plaintiffs' constitutional claims of an unreasonable seizure, because the police officers' actions were objectively reasonable.  The police officers were called to the scene, because the Plaintiffs were giving the security guards a hard time and were ignoring the guards' requests that the Plaintiffs and their friends leave the Mall.  (Exhibit A, pp. 35-36; Exhibit B, p. 35; Exhibit C, pp. 34-35; Exhibit E, pp. 146-148).  The Plaintiffs were trespassing at the point when the members of their group were shouting profanities and the security guards asked them to leave the Mall.  (<u>See</u> Exhibit A, pp. 35, 63-65; Exhibit B, pp. 35-36, 59; Exhibit C, pp. 34-37; Exhibit L).  In such a situation, the Plaintiffs could have been charged with committing the crime of Criminal Trespass in the First Degree, Conn. Gen. Stat. § 53a-107.[10]  The Court should note that for purposes of a prosecution for the crime of trespass in Connecticut, "property does not lose its private character merely because the public is generally invited to use it for designated purposes."  <u>State v. Ong</u>, supra, 30 Conn. App. 50 n.8.  Rather than arrest the Plaintiffs, however, the only things the officers did at the scene were show up and hold the Plaintiffs long enough to check their identification.  (Exhibit C, pp. 40-41)  A reasonable jury could conclude that it was objectively reasonable for the Defendants to believe that these actions were

---

[10] Connecticut General Statutes § 53a-107(a) provides, in pertinent part, "A person is guilty of criminal trespass in the first degree when:  (1) Knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person…."

appropriate.  See, generally, <u>Smart v. Morgillo</u>, Docket No. 3:00cv1281, 2001 WL 802697, *2 (D. Conn. Jul. 10, 2001).

The Plaintiffs' claims that the Defendants unlawfully detained them and deprived them of liberty in violation of the 4th and 14th Amendments fly in the face of the facts of this case. The Defendants are entitled to qualified immunity as to these allegations, and, therefore, summary judgment is appropriate.

### C.    Freedom of Association Claims Must Fail Because Right Cannot be Imposed on Private Property

The final pillar upon which the Plaintiffs attempt to assert a federal cause of action in Counts Three and Four is an allegation that the Defendants deprived the Plaintiffs of their rights to "freedom of association in violation of the 1st Amendment to the United States Constitution."  (Complaint, ¶ 37).  The Court (Chatigny, J.) has already recognized the failings of these allegations when it issued its decision on the Defendants' Motion to Dismiss.

As the Court stated in its earlier decision, "plaintiffs clearly have no viable First Amendment claim…"  In reaching this conclusion, the Court cited the Supreme Court's decision in <u>Lloyd Corporation v. Tanner</u>, 407 U.S. 551, 563-64, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972) (privately-owned retail shopping mall not subject to First Amendment), and the Eleventh Circuit's decision in <u>D'Aguanno v. Gallagher</u>, 50 F.3d 877, 880 (11th Cir. 1995) (cases recognizing First Amendment right to freedom of association do not clearly establish that people have a right to associate on private property without owner's consent)  The Court should also note that the Connecticut Supreme Court has considered the similar issue of whether a privately-owned mall may restrict speech activities without violating the

Connecticut State Constitution; see Cologne v. Westfarms Associates, 192 Conn. 48, 469 A.2d 1201 (1984); and concluded that such a restriction was permissible. Id., 66.

Therefore, the Plaintiffs' claims in Counts Three and Four cannot proceed on the basis of the First Amendment freedom of association, and summary judgment is appropriate.

## VI.    COUNT SIX – MUNICIPAL LIABILITY CANNOT BE IMPOSED WHERE PLAINTIFFS MAKE NO SHOWING OF UNDERLYING VIOLATION

In the Plaintiffs' sixth claim for relief, they attempt to impose liability upon the Town of Trumbull for the alleged underlying violations of federal and state laws. (See Complaint, ¶¶ 41-42). It cannot be disputed, however, that the failure of the Plaintiffs to demonstrate the existence of evidence in support of the underlying violations must result in the Court granting summary judgment as to the Plaintiffs' claims against Trumbull. See Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986); Curley v. Village of Suffern, 268 F.3d 65, 71 (2d Cir. 2001); Campbell v. Erie Tp., 133 F. Supp. 2d 953, 958 (E.D. Mich 2001); Friedman v. City of Overland, 935 F.Supp. 1015 (E.D.Mo. 1996).

The Defendants will not repeat their arguments set forth above which demonstrate the grounds upon which each of the underlying claims cannot succeed. Instead, Trumbull will focus briefly on one issue unique to the claims against Trumbull: the theory of respondeat superior liability.

The Plaintiffs assert as one of their theories that Trumbull is liable to the Plaintiffs under the theory of respondeat superior. (Complaint, ¶ 42). However, the law is well-settled that a claim for a violation of civil rights brought against a municipality cannot be based upon a theory of respondeat superior. See Monell v. Department of Social Services, 436 U.S. 658,

98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Armao v. American Honda Motor Co., 917 F.Supp. 142

(D.Conn. 1996); Velez v. City of New London, 903 F.Supp. 286 (D.Conn. 1995).

Wherefore, the Court should grant summary judgment as to Count Six.

**VII.    CONCLUSION**

WHEREFORE, it is appropriate that summary judgment enter against the Plaintiffs as

to each of the counts directed to the moving Defendants.

DEFENDANTS,
TOWN OF TRUMBULL,
OFFICER COPPOLA, I.D. #24, AND OFFICER
LEOS, I.D. #35

By:    _____
Stuart E. Brown
Hassett & George, P.C.
555 Franklin Avenue
Hartford, Connecticut 06114
(860) 296-2111
sbrown@hgesq.com
Fed. Bar # CT 24659

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed this 14th day of June, 2004 to the following counsel and/or pro se parties of record:

Cynthia H. Hardaway
Hunt, Hamlin & Ridley
Military Park Building
60 Park Place, Suite 1602
Newark, NJ 07102

Michael T. McCormack
Tyler, Cooper & Alcorn, LLP
185 Asylum Street
Cityplace I 35th Floor
Hartford, CT 06103-3802

Robert J. Flanagan, Jr.
Cella, Flanagan & Weber, P.C.
21 Washington Avenue
P.O. Box 221
North Haven, CT 06473-0221

_____
Stuart E. Brown

SEB/
G:\Northland Cases\Meyers, Richard et al v. Town of Trumbull, et al\Pleadings\Memo to Support Motion For Summary Judgment.doc