UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD A MYERS, SHERNETTE CLARK, KENNETH BINGHAM, and FLOYD MCLEAN,<br>　　　Plaintiffs, | : : : : : : | |
| v. | : : | |
| TOWN OF TRUMBULL, OFFICER COPPOLA, I.D. #24 (first name unknown) (individually and in his official capacity), OFFICER, I.D. #35 (name unknown) (individually and in his official capacity), SPECTAGUARD, MICHAEL (last name unknown), WESTFIELD SHOPPINGTOWN, JOHN DOES 1 Through 10, Jane Does 1 through 10, and ABC Corp. through XYZ, individually, jointly, and severally, | : : : : : : : : : : : : : | CASE NO.: 3:03 CV 373 (RNC) |
| 　　　Defendants. | : | June 14, 2004 |

**LOCAL RULE 56(a)1 STATEMENT**

　　　Pursuant to Local Rule 56, the Defendants, Town of Trumbull, Officer Coppola, I.D. #24, and Officer Leos, I.D. #35, submit the following recitation of the undisputed material facts in support of their Motion for Summary Judgment against the Plaintiffs, Richard A. Myers, Shernette Clark, Kenneth Bingham and Floyd McLean.

　　　The Defendants submit that there is no genuine issue to be tried as to each of the following:

1. The Plaintiffs went to Westfield Shoppingtown Trumbull ("the Mall") on July 31, 2001, at approximately 9:00 p.m.  (See Second Amended Complaint (hereinafter "the

Complaint") ¶ 16; Deposition of Shernette Clark, p. 26, excerpts attached as Exhibit A).

2. On July 31, 2001, the Plaintiffs were accompanied by three other individuals who are not parties to the present lawsuit: Olando Wilson, Marvin Buntin and Nelay Grant. (See Deposition of Richard Myers, pp. 19-20, excerpts attached as Exhibit B; Deposition of Floyd McLean, p. 12, excerpts attached as Exhibit D; Plaintiffs' Responses to Trumbull's Interrogatories, no. 3, copies attached as Exhibits F through I).

3. While at the Mall, Shernette Clark, Richard Myers and Olando Wilson went shopping at Lord & Taylor while the rest of the group waited outside the Lord & Taylor. (See Complaint, ¶ 18; Exhibit A, p. 33-34; Exhibit B, pp. 31; Deposition of Kenneth Bingham, p. 25, excerpts attached as Exhibit C; Exhibit D, p. 18).

4. The Plaintiffs had been at the Mall for at least 20 to 30 minutes, before the smaller group went into Lord & Taylor. (Exhibit B, p. 31; Exhibit C, p. 24).

5. The Plaintiffs were not approached by security guards during the 20 or 30 minutes that they were first at the Mall. (Exhibit B, pp. 80-81; Exhibit C, p. 24).

6. While Clark, Myers and Wilson were in Lord & Taylor, security guards approached the members of the group who were waiting outside. (Complaint, ¶ 19; Exhibit A, p. 34; Exhibit B, p. 33; Exhibit C, p. 33-34; Exhibit D, p. 19).

7. Security guards had been called to investigate a complaint made by an employee of a store in the Mall as to the conduct of the group outside Lord & Taylor. (Deposition of Michael Hokanson, p. 76, excerpts attached as Exhibit E; Westfield Shoppingtown

Trumbull Matthew Wilkins Witness Statement, copy attached as Exhibit J; Westfield Shoppingtown Trumbull Security Report, copy attached as Exhibit L; Westfield Shoppingtown Trumbull Stephanie Caldwell Witness Statement, copy attached as Exhibit K).

8. When the security guards arrived, members of the group outside Lord & Taylor began to use profanities, including Marvin Buntin who said, "We ain't doing shit." (Exhibit C, pp. 34-35; Exhibit D, pp. 36-37; Exhibit E, pp. 81-84; Exhibit L; Exhibit K).

9. The Plaintiffs were not talking to two white girls who had given them a flyer at the time that the security guards approached the group outside of Lord & Taylor. (Compare Complaint, ¶ 19, with Exhibit B, p. 41; Exhibit C, pp. 31-32; Exhibit D, p. 73).

10. When Clark, Myers and Wilson returned from shopping at Lord & Taylor, they observed the security guards talking to their friends, and they approached the security guards to ask what was happening. (Complaint ¶¶ 21-22; Exhibit A, p. 35; Exhibit B, pp. 33-34; Exhibit D, pp. 19-20; Exhibit E, p. 88-89).

11. When the entire group was outside Lord & Taylor, several of the Plaintiffs and their friends were using profanities towards the security guards. (Exhibit A, pp. 63-65; Exhibit B, pp. 35-36, 59; Exhibit C, pp. 35-37; Exhibit E, pp. 12-13; Exhibit L).

12. The Plaintiffs and their friends were asked to leave the Mall by security guards. (Complaint, ¶¶ 20, 22; Exhibit A, p. 35; Exhibit C, pp. 34-35; Exhibit D, pp. 19-21; Exhibit E, p. 13, 92-93).

13. The Mall has a set of rules of conduct that patrons are expected to abide by while shopping. These rules of conduct were in effect on and prior to July 31, 2001. (Exhibit E, p. 44; Trumbull Shopping Park Rules of Conduct, copy attached as Exhibit M).

14. The Plaintiffs were given a card listing the rules of conduct of the Mall. (Complaint, ¶ 27; Exhibit B, p. 38; Exhibit C, pp. 75-76, 79-80; Exhibit D, p. 40).

15. The security guards informed the Plaintiffs and their friends of at least two of the rules they had violated at the Mall. (Exhibit B, pp. 37-38; Exhibit E, pp. 98-101).

16. The reasons that the Plaintiffs and their friends were asked to leave the Mall was that they were being loud and disruptive and using profanities. (Exhibit E, pp. 92-93, 140-141; Exhibit L).

17. The Plaintiffs and their friends gave the security guards a hard time about leaving the Mall after they had been asked to leave. (Exhibit B, p. 103, 105-106, 110-111; Exhibit E, p. 13; Exhibit J).

18. After they had been asked to leave the Mall by security guards, the Plaintiffs and their friends ignored the security guards and continued to go into several stores as they walked through the Mall. (Exhibit A, pp. 35-36; Exhibit B, p. 35; Exhibit C, pp. 34-35).

19. Security guards followed the Plaintiffs and their friends, repeating their requests that the Plaintiffs and their friends leave the Mall. (Exhibit A, p. 40; Exhibit B, p. 37; Exhibit C, pp. 34-35, 73-74).

20. The Plaintiffs and their friends walked slowly and took a circuitous route in leaving the Mall. (Exhibit C, p. 78; Exhibit E, p. 13, 108-112; Exhibit L).

21. Police officers of the Town of Trumbull were waiting outside the door when the Plaintiffs and their friends exited the doors of the Mall. (Exhibit A, p. 42; Exhibit B, p. 43; Exhibit C, p. 39).

22. The first time that security guards spoke to the police officers was when the Plaintiffs and their friends were outside the Mall. (Exhibit E., pp. 7-9).

23. The police officers asked the Plaintiffs and their friends for identification and checked the identification, which was produced. (Complaint, ¶ 25; Exhibit C, pp. 40-41; Exhibit E, pp. 19-20).

24. By the time the officers were finished checking the groups' identification, the Mall was closing for the night. (Exhibit E, p. 137, 174-175).

25. The police officers did not use any racial slurs towards the Plaintiffs or their friends. (Exhibit A, p. 46; Exhibit B, p. 48; Exhibit D, p. 27; Exhibit E, pp. 169-170; Exhibits F through I, no. 23).

26. The police officers did not make any negative comments about the Plaintiffs' national origins. (Exhibit B., p. 48; Exhibit E, pp. 169-170; Exhibits F through I, no. 24).

27. The Plaintiffs' allegations of racial discrimination are only an assumption by the Plaintiffs based upon the various Defendants' race that the Defendants' actions were racially motivated. (Exhibit A, p. 46).

28. The Plaintiffs have no evidence to support their claim that the various Defendants conspired with one another to deprive the Plaintiffs of their rights. (Exhibit A, pp. 116-17; Exhibit C, p. 111; Exhibit D, pp. 77-78).

29. It was reasonable for police to come to the Mall to investigate the conduct of the Plaintiffs and their friends in light of the complaints, which were made. (See Exhibit A, pp. 127-28; Exhibit B, p. 130; Exhibit C, pp. 51-52; Exhibit J).

30. The Plaintiffs did not sustain any physical injuries during any part of the incident at the Mall. (Exhibit A, pp. 49-50; Exhibit B, p. 53; Exhibit C, p. 55; Exhibit D, p. 28).

31. The Plaintiffs have not suffered any monetary loss as a result of any part of the incident at the Mall. (Exhibit A, p. 50; Exhibit B, pp. 53-54; Exhibit C, pp. 55-56, 88; Exhibit D, pp. 28-29).

32. The Plaintiffs have not sought any counseling or psychological treatment for the mental, psychological, and emotional injuries they claim to have suffered as a result of the incidents at the Mall. (Exhibit A, pp. 50-51, 90; Exhibit B, pp. 52-53; Exhibit C, p. 89; Exhibit D, p. 31).

33. The extent of the mental, psychological and emotional injuries, claimed by the Plaintiffs to be the result of the incident at the Mall, was greatly exacerbated by the Plaintiffs' decision to publicize the incident in a television interview several months after the incident. (Exhibit A, pp. 70-72; Exhibit B, pp. 75-76, 106-107; Exhibit C, pp. 87-88; Exhibit D, pp. 66-68).

                                    DEFENDANTS,
                                    TOWN OF TRUMBULL,
                                    OFFICER COPPOLA, I.D. #24, AND
                                    OFFICER LEOS, I.D. #35

By: _____
       Stuart E. Brown
       Hassett & George, P.C.
       555 Franklin Avenue
       Hartford, Connecticut 06114
       (860) 296-2111
       sbrown@hgesq.com
       Fed. Bar # CT 24659

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed this 14th day of June, 2004 to the following counsel and/or pro se parties of record:

Cynthia H. Hardaway
Hunt, Hamlin & Ridley
Military Park Building
60 Park Place, Suite 1602
Newark, NJ 07102

Michael T. McCormack
Tyler, Cooper & Alcorn, LLP
185 Asylum Street
Cityplace I 35th Floor
Hartford, CT 06103-3802

Robert J. Flanagan, Jr.
Cella, Flanagan & Weber, P.C.
21 Washington Avenue
P.O. Box 221
North Haven, CT 06473-0221

                                                      Stuart E. Brown

SEB/
\\Sbs2k\shared\Northland Cases\Meyers, Richard et al v. Town of Trumbull, et al\Pleadings\Local Rule 56a1 statement.doc