THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD A. MYERS, *ET AL.*

    Plaintiffs,

CIVIL ACTION NO.: 3:03-CV-00373 (RNC)

V.

TOWNSHIP OF TRUMBULL, *ET AL.*

    Defendants.

JUNE 15, 2004

## DEFENDANT WESTFIELD SHOPPINGTOWN TRUMBULL'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### I.   INTRODUCTION

Plaintiffs filed this case against twenty-seven separate defendants, including Westfield Shoppingtown Trumbull (improperly identified in the Complaint as Westfield Shoppingtown) (the "Trumbull Mall").[1] The sum and substance of plaintiffs' allegations are that they were discriminated against when employees of co-defendant Spectaguard Acquisitions, LLC ("Spectaguard") asked the plaintiffs to leave the Trumbull Mall on the night of July 31, 2001 after receiving several complaints about the plaintiffs' inappropriate and disruptive behavior, and after members of the plaintiffs' group shouted

---

[1] As defendant Trumbull Mall has consistently maintained throughout this action, plaintiffs have incorrectly named "Westfield Shoppingtown" as a defendant. The Trumbull Mall is owned and possessed by Trumbull Shopping Center, #2, LLC ("TSC"), a Delaware limited liability company that is registered to conduct business in Connecticut. See Affidavit of Len Maenza at ¶5 ("Maenza Affidavit"). The Mall is managed by Westfield Corporation, Inc. ("Westfield"). Id. at ¶7. Westfield Shoppingtown is merely a trade name of the Mall. Id. at ¶6. The remaining twenty-seven defendants include the Township of Trumbull, the Trumbull Police Department, Officer Coppola, I.D. #24, Officer, I.D. # 35, Spectaguard, Michael (last name unknown), John Does 1 through 10, Jane Does 1 through 10, and ABC Corp. through XYZ, individually, jointly and severally.

1

profanities directly at Spectaguard security personnel once they responded to investigate the complaint. Spectaguard was an independent security company with whom Westfield Corporation, Inc. ("Westfield") contracted to provide security services at the Trumbull Mall. See Standard Contractor's Service Agreement, attached as Exhibit A to Affidavit of Len Maenza; see also section III, infra.

Plaintiffs remaining complaints include that all defendants conspired to discriminate against them in violation of 42 U.S.C. §1985, that members of the Trumbull Police Department illegally detained them after plaintiffs voluntarily exited the Trumbull Mall, that members of the Trumbull Police Department, acting "under color of law," discriminated against them in violation of 42 U.S.C. §1983,[2] that all defendants discriminated against plaintiffs in violation of 42 U.S.C. §§1981 and 2000a, that unidentifiable John/Jane Doe defendants violated a variety of federal and New Jersey state laws, and that the Town of Trumbull is liable for plaintiffs' alleged damages under federal and state municipal law.[3]

What Plaintiffs do not and cannot complain of is that at no time during the alleged incident did they have any contact with anyone from Westfield Corporation, Inc., Westfield Shopping Center LLC #2, or Westfield Shoppingtown Trumbull. Indeed, by plaintiffs' own admissions, there were no managers, employees or personnel of any

---

[2] The named defendant officer is Officer Coppola, I.D. #24 (first name unknown). As this claim is clearly not directed to the Trumbull Mall, and the law is clear that a claim for tortious conduct by a private merchant cannot be transformed into an action undertaken by the state or under color of law, see Newman v. Bloomingdale's, 543 F.Supp. 1029, 1031 (S.D.N.Y. 1982), it need not be addressed in this motion for summary judgment.

[3] This claim also appears to be a claim against the defendant Town of Trumbull only. Accordingly, like count three, this claim is also moot for purposes of the Trumbull Mall's motion for summary judgment.

Westfield entity involved in the incident in any way, nor did plaintiffs have any contact with any Westfield entity regarding this incident until they filed the present action.

Accordingly, because, as discussed below, there are no material facts in dispute and no reasonable person could find in plaintiffs' favor as to the claims alleged against the Trumbull Mall, the Court should grant the Trumbull Mall's summary judgment motion on counts one, two, four and five of Plaintiffs' Amended Complaint.[4]

## II.    STATEMENT OF FACTS

This case arises from an alleged incident that occurred at Westfield Shoppingtown Trumbull in Trumbull, Connecticut on July 31, 2001. See Amended Complaint. The Trumbull Mall is owned and possessed by Trumbull Shopping Center, #2, LLC ("TSC"), a Delaware limited liability company that is registered to conduct business in Connecticut. See Affidavit of Len Maenza at ¶5. The Trumbull Mall is managed by Westfield. See id. at ¶7.

Plaintiffs allege that they entered the Trumbull Mall at approximately 9:00 p.m. on July 31, 2001.[5] Amended Complaint at ¶16. Plaintiffs Shernette Clark ("Clark") and Richard Myers ("Myers") proceeded to the *Lord & Taylor* store where they shopped for a short period of time. Deposition of Richard Myers ("Myers Depo.") at 31, relevant

---

[4]  Plaintiffs' recently filed a Motion to Amend Complaint and Amended Complaint dated May 27, 2004. For purposes of motions, plaintiffs' Amended Complaint dated May 27, 2004 is the same as plaintiffs' Amended Complaint filed on November 19, 2003. In count one, plaintiffs allege that all defendants conspired against them in violation of §1985. Count two alleges false imprisonment against all defendants. In count three, which is not directed towards the Trumbull Mall, plaintiffs allege that Officer Coppola, I.D. #24 discriminated against them in violation of 42 U.S.C. §1983. Count four alleges discrimination in violation of 42 U.S.C. §§1981 and 2000a. Count five is a John/Jane Doe count alleging violations of various federal and New Jersey state laws against various unnamed defendants. Finally, plaintiffs label count six "Municipal liability – federal and state", which appears to be a claim against the defendant Town of Trumbull only. Accordingly, like count three, this claim is also moot for purposes of the Trumbull Mall's motion for summary judgment.

[5]  No Plaintiff alleges additional or different facts to support any of the claims contained in their jointly filed Complaint.

3

portions attached to Westfield Shoppingtown Trumbull's Local Rule 56(a) Statement ("Rule 56(a) Statement") as Exhibit A. While Clark and Myers shopped, Plaintiffs Kenneth Bingham ("Bingham") and Floyd McLean ("McLean"), along with several other male friends, waited on a bench located outside the *Lord & Taylor* store. Myers Depo. at 32-33; Deposition testimony of Kenneth Bingham ("Bingham Depo.") at 25-26, relevant portions attached as Exhibit C to Rule 56(a) Statement; Deposition testimony of Floyd McLean ("McLean Depo.") at 18, relevant portions attached as Exhibit D to Rule 56(a) Statement. While their friends shopped, Bingham and McLean were passing the time by flirting and interacting with young female patrons of the Trumbull Mall. McLean Depo., Exh. D, at 18; Bingham Depo., Exh. C, at 27-28.

While Myers and Clark shopped at *Lord & Taylor*, at approximately 9:12 p.m., Spectaguard, the security company with whom Westfield contracted to provide security at the Trumbull Mall received a report of a disturbance outside *Lord & Taylor*. Deposition of Michael Hokanson ("Hokanson Depo.") at 135-137, attached as Exhibit E to Rule 56(a) Statement. When the Spectaguard security guards arrived outside of the *Lord & Taylor* store, the members of the plaintiffs' group outside the store were loud and disruptive. Hokanson Depo., Exh. E, at 80, 140-141. Myers and Clark rejoined their group after exiting *Lord & Taylor*. After they rejoined their group, members of the plaintiffs group were using profanity towards the security guards and being difficult. Deposition Testimony of Shernette Clark ("Clark Depo.") at 63-65, attached as Exhibit B to Rule 56(a) Statement; Myers Depo., Exh. A, at 35-36, 59; Bingham Depo., Exh. C, at 35-37.

4

At some point, the security guards requested the plaintiffs' group to leave the Trumbull Mall. Bingham Depo., Exh. C, at 34-35; Clark Depo., Exh. B, at 35; McLean Depo., Exh. D, at 19-21; Hokanson Depo., Exh. E, at 13, 92-93. The plaintiffs, however, did not leave. Instead the plaintiffs ignored the security guards' requests and Myers and Clark proceeded to enter another store. Myers Depo., Exh. A, at 34-35; Clark Depo., Exh. B, at 35-36; McLean Depo., Exh. D, at 21-22. In particular, when requested to leave by the security guards, one of the members of the group shouted, "I ain't doing shit." Bingham Depo., Exh. C, at 34-36.

The remaining members of the plaintiffs' group continued to be disruptive and rowdy as they moved through the Trumbull Mall towards an exit. See Security Report attached as Exhibit F to Rule 56(a) Statement. The Spectaguard security guards followed the plaintiffs' group, repeating their requests that the plaintiffs leave the mall. Myers Depo., Exh. A, at 37; Clark Depo., Exh. B, at 40; Bingham Depo., Exh. C, at 34-35, 73-74. The plaintiffs and their friends walked slowly throughout the mall, taking a circuitous route in leaving the mall before eventually exiting the mall. Bingham Depo., Exh. C, at 78. Eventually, the entire group voluntarily exited the mall. Myers Depo., Exh. A, at 66-68, 110-111; Bingham Depo., Exh. C, at 78-79; Hokanson Depo., Exh. E, at 13, 108-112.

The Trumbull Mall had a set of rules of conduct governing the behavior of patrons of the Trumbull Mall. Hokanson Depo., Exh. E, at 45-46. The Spectaguard officers provided plaintiffs with a copy of the rules and orally informed plaintiffs of the relevant rules that they had violated, namely that they were using offensive language and making lewd and inappropriate remarks and that they were in a large group that was

5

disruptive of shopping center function. Amended Complaint at ¶27; Myers Depo., Exh. A, at 37-38, 73-74; Bingham Depo., Exh. C, at 75-76, 79-80.

Upon exiting the Trumbull Mall, plaintiffs were met by members of the Trumbull Police Department who had been called by the Spectaguard security guards when the plaintiffs did not leave the mall and continued to be disruptive. See Hokanson Depo., Exh. E, at 146-149; Clark Depo., Exh. B, at 42; Myers Depo., Exh. A, at 43; Bingham Depo., Exh. C, at 39; McLean Depo., Exh. D, at 23. According to the plaintiffs, they were detained by the police while the police obtained identification from plaintiffs. Amended Complaint at ¶25; Clark Depo., Exh. B, at 42-43; Bingham Depo., Exh. C, at 40-41; McLean Depo., Exh. D, at 23-24.

At no point during the incident on July 31, 2001 did the Spectaguard security guards or Trumbull Police use racial slurs or make inappropriate racially motivated comments to the plaintiffs. See Clark Depo., Exh. B, at 82. After the police checked the plaintiffs' identifications, the police told the plaintiffs to leave the Trumbull Mall parking lot. See Amended Complaint at ¶26; Clark Depo., Exh. B, at 48.

No one from Westfield or TSC was present at any time during the incident on July 31, 2001. See Myers Depo., Exh. A, at 104; Clark Depo., Exh. B, at 155; McLean Depo., Exh. D, at 54-55; Bingham Depo., Exh. C, at 97-99; Affidavit of Len Maenza, ¶10. At the time of the alleged incident, Westfield Corporation, Inc. had contracted with Spectaguard, pursuant to which Spectaguard agreed to provide shopping center security at the Trumbull Mall. Maenza Affidavit at ¶9. In the contract, Westfield Corporation, Inc. and Spectaguard agreed that the relationship between Westfield Corporation and

6

Spectaguard was that of an independent contractor. Maenza Affidavit at ¶12; Agreement, Exh. A.

## III.   LAW AND ARGUMENT

### A.   Standard for Summary Judgment

The Federal Rules of Civil Procedure provide that a party is entitled to summary judgment "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).   When the moving party is a defendant, summary judgment should be entered "against a [plaintiff] who fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Caldwell v. American Basketball Assn., Inc., 825 F. Supp. 558, 565-66 (S.D.N.Y. 1993). Thus, if the plaintiff's evidence of essential elements of its claims is "merely colorable" or "not significantly probative," summary judgment must be granted for defendants.   Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).   A plaintiff may not successfully oppose a summary judgment motion by relying "upon mere speculation or conjecture as to the true nature of the facts." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).   Rather, the non-moving party must "bring to the district court's attention some affirmative indication that his version of the relevant events is not fanciful." Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).   Thus, to survive a motion for summary judgment, a plaintiff cannot rely on conclusory allegations and/or unsupported assertions.   See Celotex, 477 U.S. at 325.

The Second Circuit has repeatedly stressed the availability and virtue of summary judgment. In Knight, 804 F.2d 9, then Chief Judge Feinberg made it clear that the Second Circuit looks with favor upon summary judgment motions and expressed regret over any misperception that it does not. Id. at 12. This District has recognized that disfavor of summary judgment has been "jettisoned," and views the procedure as an "effective and correct method of avoiding protracted trials." Nichols v. Planning & Zoning Comm'n of Stratford, 667 F. Supp. 72, 74 (D.Conn. 1987).

Applying these principles and for the reasons set forth in this memorandum, this Court should grant the Trumbull Mall's motion for summary judgment on the plaintiffs' Amended Complaint in its entirety.

## B.    There is No Legal Basis to Impose Liability Against the Trumbull Mall on Any Count of Plaintiffs' Complaint

Counts one, two, four and five, which allege civil conspiracy, false imprisonment, denial of access to a public accommodation under 42 U.S.C. §§1981 and 2000a, and an all encompassing count against John and Jane Doe defendants, respectively, seek to impose liability against the Trumbull Mall for the alleged acts of all other named defendants. The theory of liability on which Plaintiffs rely for their claims against the Trumbull Mall is unclear. However, as a threshold matter, and by Plaintiffs' own admissions, no one from any Westfield entity was present at any time during the incident on July 31, 2001. Thus, it appears that the plaintiffs seek to hold the Trumbull Mall legally responsible for the alleged acts of the other defendants under the theory of respondeat superior. There is, however, no legal basis to hold the Trumbull Mall liable for plaintiffs' alleged harms because there was no relationship between any of the other

8

defendants and the Trumbull Mall which can give rise to a finding of liability under the

doctrine of respondent superior.[6]

> 1.    **The Trumbull Mall Cannot be Held Liable for the Alleged
>        Torts of an Independent Contractor or its Employees Pursuant
>        to the Plain Language of the Contract Between Westfield and
>        Spectaguard**

The nature of the relationship between the Trumbull Mall and Spectaguard is

clearly established as that of an independent contractor in the contract between Westfield

and Spectaguard. The Standard Contractor's Service Agreement ("Service Agreement"),

Exh. A to Maenza Affidavit, states: "The relationship of CONTRACTOR to

MANAGER during the term of this AGREEMENT shall be that of an independent

contractor. CONTRACTOR shall remain and maintain said independent contractor

relationship, and CONTRACTOR shall at no time be considered an employee or agent of

MANAGER or OWNER." See Service Agreement at 5, Exh. A to Maenza Affidavit; see

also Maenza Affidavit at ¶ 6.

Beyond the clear written intent of the parties, the actual relationship between

Spectaguard and the Trumbull Mall further bolsters this conclusion. The Connecticut

Supreme Court[7] defines an independent contractor as follows:

> An independent contractor is one who, exercising an independent
> employment, contracts to do a piece of work according to his own
> methods and without being subject to the control of his employer,
> except as to the result of his work . . . If the contract provides that
> the employer retains no control over the details of the work, but
> leaves to the other party the determination of the manner of doing

---

6 Because this is the only conceivable legal basis for liability, for the purposes of this motion only, the
Trumbull Mall will assume that plaintiffs' claims against it rely on a theory of vicarious liability based upon
the contractor-contractee relationship between Westfield and Spectaguard.

7 To the extent that federal jurisdiction is based on diversity of citizenship or a federal statute, Connecticut
law still applies to the state law questions. See Menzie v. Windham Community Memorial Hospital, et al.,
774 F.Supp. 91 (D.Conn. 1991).

it, without subjecting him to the control of the employer, the party
undertaking the work is a contractor and not a mere employee.

Darling v. Burrone Bros., Inc., 162 Conn. 187, 195 (1972); see also Menzie, 774 F.Supp.
at 94.

Connecticut courts acknowledge that "a fundamental principle of our tort law is
that ordinarily an individual should be held liable for compensating harm only when he
has caused that harm through his own fault." Ray v. Schneider, 16 Conn.App. 660, 669,
(1988). The Trumbull Mall can assume no direct liability for the alleged torts committed
against the plaintiffs because, by plaintiffs' own admissions, no representative of the
Trumbull Mall was present during the alleged incident or exerted any control over the
conduct of the Spectaguard employees or the Trumbull police officers involved. "The
principle of liability for individualized fault is the norm, whereas vicarious liability 'is
regarded as an exceptional solution.'" Id. (citations omitted).

The Restatement (Second) of Torts explicitly provides, subject to exceptions to be
discussed infra, that "the employer of an independent contractor is not liable for physical
harm caused to another by an act or omission of the contractee or his servants."
Restatement (Second) of Torts §409 (2004); see also Restatement (Second) of Agency
§250 (1999) (including comment b stating that, "[t]here is no inference that because a
principal has authorized an act to be done which would be non-tortious if done carefully,
he is liable for the act of a non-servant if the latter was negligent in his performance.");
41 Am. Jur.2d Independent Contractors §29 (1995) ("As a general rule, an employer or
contractee is not liable for the torts of an independent contractor or of the latter's servants
committed in the course of performance of the contracted work."). This principle has
been widely adopted by the Connecticut courts and courts in other jurisdictions. See,

10

e.g., Menzie v. Windham Cmty. Mem'l Hosp., 774 F.Supp. 91, 94 (D. Conn. 1991);
Pelletier v. Sordoni/Skanska Constr. Co., 264 Conn. 509, 518 (2003) ("This same rule
applies, as a general matter, to general contractors, as employers of independent
subcontractors: a general contractor is not liable for the torts of its independent
subcontractors."); Douglass v. Peck & Lines Co., 89 Conn. 622, 627 (1915)("[T]he
contractee or proprietor is not liable, for injuries caused by an independent contractor or
his servants, to any one."); Raboin v. N. Amer. Indus., 57 Conn. App. 535, 539 (2000)
("ordinarily, an employer of an independent contractor, absent an act of negligence on his
own part, is not liable to others for the negligent acts of the contractor"); see also
Anderson v. Marathon Petroleum. Co., 801 F.2d 936, 938 (7th Cir. 1986) ("Generally a
principal is not liable for an independent contractor's torts even if they are committed in
the performance of the contract and even though a principal is liable under the doctrine of
respondeat superior for the torts of his employees if committed in furtherance of their
employment.").

     Liability is generally not imposed on the principal for actions of an independent
contractor because "since the employer has no power of control over the manner in which
the work is to be done by the contractor, it is to be regarded as the contractor's own
enterprise, and he, rather than the employer, is the proper party to be charged with the
responsibility of preventing the risk, and bearing and distributing it." Restatement
(Second) of Torts §409 cmt. b; see also Menzie, 774 F. Supp. at 94; Pelletier, 264 Conn.
at 509, 518; Mozeleski v. Thomas, 76 Conn.App. 287 (2003).

     In the instant case, no employees or representatives of Westfield or TSC were
involved at any stage of the incident, either through their physical presence or through

control over the alleged actions of Spectaguard and its employees, or the Trumbull Police Department and its employees. All other named defendants had a presence at the scene and can be held liable for their alleged conduct. Therefore, plaintiffs' attempt to impose vicarious liability on a party who had no influence on the events is not appropriate. The relationship between Spectaguard and Westfield is clearly that of an independent contractor, and Westfield, TSC, nor the Trumbull Mall cannot be liable for the independent contractor's actions. Such a conclusion is in accord with the decisions of numerous courts that have applied this principle to situations involving contracts between a principal and security company regarding the provision of security services. See, e.g., Washington v. U.S. Dep't of Hous. & Urban Dev., 953 F. Supp. 762 (N.D. Tex. 1996) (holding that the U.S. was not liable under the independent contractor exception to the FTCA when tenant was raped at a complex owned by HUD and protected by an independent security company); Zelen v. City of Saratoga Springs, 589 N.Y.S.2d 709 (N.Y. App. Div. 1992) (holding that since the service providing the security guards to racetrack was an independent contractor, the racetrack was not liable for assault allegedly committed by a guard on a racetrack patron); Del Signore v. Pyramid Sec. Servs., Inc., 537 N.Y.S.2d 640 (N.Y. App. Div. 1989); Rouse v. McCrory, 334 S.E.2d 517 (S.C. Ct. App. 1985) (holding that a motel which retained a corporation for security services as an independent contractor was not liable for a security guard's alleged misconduct in shooting a person in the motel parking lot).

Spectaguard contracted with Westfield to perform, under its own methods, security services at the Trumbull Mall. See Service Agreement, Exh. A to Maenza Affidavit; Maenza Affidavit at ¶7. The contract between Spectaguard and Westfield

12

merely identifies the services Spectaguard is expected to provide. See Service Agreement, at 7-8. In the contract document, Westfield explicitly denies responsibility for supervising Spectaguard and its employees in carrying out those services. Id. at 1, Part 2 ("MANAGER is not a supervisor or foreman with respect to contractor and its labor and employees. Contractor is completely responsible for supervising the activities of its labor, employees, contractors, and subcontractors with respect to the subject matter of this contract, including but not limited to the Services."). Based on the clear language of the Agreement and the facts relating to the incident of July 31, 2001 about which the plaintiffs complain, it is undisputed that Spectaguard is an independent contractor for whom Westfield, TSC, the Trumbull Mall, or any other Westfield entity cannot be held liable. Accordingly, the Trumbull Mall is entitled to judgment as a matter of law as to counts one, two, four and five of plaintiffs' Amended Complaint.

## 2. Westfield did not Exercise Control over Spectaguard or its Employees in the Performance of Their Contractual Duties

Beyond the contract itself, courts look to the issue of control when analyzing whether the relationship between two parties is that of an independent contractor. Because no Westfield entity exercised the degree of control over Spectaguard's provision of security services at the Trumbull Mall necessary to give rise to an agency relationship, the plaintiffs cannot avoid the rule that the principal is not vicariously liable for the acts of its contractor.

Liability may only attach to the principal when the principal retains control over the work carried out by the independent contractor and the principal does not exercise that control with reasonable care. Restatement (Second) of Torts §414 (2004); see also Restatement (Second) of Agency §250 cmt. A (1999) ("It is only when to the relation of

13

principal and agent there is added that right to control physical details as to the manner of performance which is characteristic of the relation of master and servant that the person in whose service the act is done becomes subject to liability for the physical conduct of the actor."). The independent contractor relationship is not invalidated by the small amount of control that a principal may retain. "The owner may exercise a limited degree of control or give the contractor instructions on minor details without destroying the independent character of the contractor." Mozeleski, 76 Conn. App. at 293.

The determination of the existence or non-existence of the right to control is dependent upon several factors. See Menzie, et al., 774 F.Supp. at 94. First, the court should consider the intentions of the relationship via an examination of the operative terms of any written agreement between the parties. See Menzie, 774 F. Supp. at 94. As discussed previously, the Agreement between Spectaguard and Westfield clearly indicates that Spectaguard is to remain an independent contractor and that no agency relationship is established. See Service Agreement at 5. Westfield was not to act as a supervisor or foreman to Spectaguard or its employees. Id. at Part 2. Additionally, Spectaguard's responses to Plaintiffs' Interrogatories and Requests for Production in this case, clearly indicate that there was no employer-employee relationship between any Westfield entity and Spectaguard, but rather, a relationship of a contractual nature. See Rule 56(a) Statement, Exh. G at 21.

Second, the fact that Spectaguard was and remains in independent ownership of a well-recognized substantial enterprise in the security industry bolsters the intent of the parties to enter into a contractor-contractee relationship. "[A]n independent owner is less likely to submit to the control of others in the operation of its business than a non-owner."

14

Menzie, 774 F.Supp. at 94. Thus, as an independent contractor, Spectaguard is less likely to submit to the control of Westfield. Id.

Westfield did not reserve the type of control necessary to attach liability to Westfield, TSC, or the Trumbull Mall as principal for the actions of its independent contractors. Plaintiffs allege no facts and they have no evidence to support a claim that Westfield, TSC, or the Trumbull Mall was involved in the incident and controlling the situation that took place on July 31, 2001. Accordingly, the Trumbull Mall cannot be held liable for the alleged actions of Spectaguard, its employees, or any other co-defendant, and the Trumbull Mall is entitled to summary judgment on counts one, two, four and five of plaintiffs' Amended Complaint.

**C.      The Trumbull Mall is Entitled to Judgment as a Matter of Law as to Plaintiffs' Count Four Public Accommodation Claims Under 42 U.S.C. §2000a**

**1.      Plaintiffs' §2000a Claims Fail Because the Trumbull Mall is not a Place of Public Accommodation**

In count four of their Amended Complaint, plaintiffs allege that they were denied access to the Trumbull Mall because of their race and national origin in violation of 42 U.S.C. §§1981 and 2000.[8] Because the Trumbull Mall does not constitute a place of public accommodation, however, plaintiffs' claims under 42 U.S.C. §2000 fail and the Trumbull Mall is entitled to summary judgment in its favor as to plaintiffs' fourth claim for relief.

Section 2000a(b) of the title 42 of the United States Code provides:

> Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its

---

[8] Plaintiffs' allegations that the Trumbull Mall violated 42 U.S.C. §1981 are addressed in Section III(D) infra.

operations affect commerce, or if discrimination or segregation by it is supported by State action: (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence; (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment;  or any gasoline station; (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. §2000a (b).

Plaintiffs allege that the Trumbull Mall "discriminated against them by denying them access to a place of public accommodation." Amended Complaint at ¶39. Plaintiffs also allege that the Trumbull Mall is "a shopping center open to the general public for business purposes," Amended Complaint at ¶16, and that the Trumbull Mall "consists of various stores specializing in the sale of clothing articles, food products, and general merchandise." Id. at ¶17. While it is true that the list of establishments covered by 42 U.S.C. §2000a(b) traditionally has been construed broadly, Welsh v. Boy Scouts of America, 993 F.2d 1267, 1269 (7th Cir.1993), the plaintiffs do not specifically allege that the Trumbull Mall is a place of public accommodation covered by the statute, nor can they.

As a threshold matter, the Trumbull Mall is not an establishment within the meaning of the §2000(b). Courts have found that covered establishments include, *inter alia:* health spas,[9] golf clubs,[10] and beach clubs,[11] but the Act clearly does not include

---

[9]  Rousseve v. Shape Spa for Health and Beauty Inc., 516 F.2d 64 (5th Cir.1975); Johnson v. Brace, 472 F.Supp. 1056 (E.D.Ark.1979).

16

retail stores and food markets because there has been little if any discrimination in the operation of these establishments. Newman v. Piggie Park Enterprises, 377 F.2d 433, 436 (4th Cir.1967), aff'd, 390 U.S. 400 (1968). None of the case law addressing a covered establishment has specifically found that a privately owned shopping mall that is on private property falls within the meaning of the statute. More importantly, courts have found that shopping malls are not covered establishments under the statute. See, e.g., Halton, et al. v. Great Clips, et al., 94 F.Supp.2d 856, 863 (N.D. Ohio 2000). Additionally, if Congress wanted to include within the meaning of the statute other types of establishments such as a service establishment, it could have amended Title II; after all, over three decades have passed since Congress enacted the statute. "This inaction by Congress could not be a mere oversight or an expectation that courts would broadly interpret the statute to include basically any type of establishment because Congress has subsequently defined 'public accommodation' more broadly." Id. at 862; see also the Americans with Disabilities Act, 42 U.S.C. §12181.[12]

---

10 Anderson v. Pass Christian Isles Golf Club, Inc., 488 F.2d 855 (5th Cir.1974); Evans v. Laurel Links, Inc., 261 F.Supp. 474 (E.D.Va.1966).

11 United States v. Beach Associates, Inc., 286 F.Supp. 801 (D.Md.1968).

12 The Americans with Disabilities Act, 42 U.S.C. §12181(7), provides: Public accommodation The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce-- (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor; (B) a restaurant, bar, or other establishment serving food or drink; (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment; (D) an auditorium, convention center, lecture hall, or other place of public gathering; (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment; (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment; (G) a terminal, depot, or other station used for specified public transportation; (H) a museum, library, gallery, or other place of public display or collection; (I) a park, zoo, amusement park, or other place of recreation; (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education; (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or

17

In Halton, plaintiffs alleged that Cleveland Clips, a hair salon located within the premises of a shopping plaza that also contained restaurants, should be deemed a place of public accommodation and deemed a covered establishment under 42 U.S.C. §2000a. Halton, 94 F.Supp.2d at 861.   Plaintiffs claimed that the hair salon held itself out as serving patrons of the other allegedly covered establishments within the plaza and should, therefore, also be covered. Id. The court held that plaintiffs' interpretation of the statute was incorrect because a covered entity under the statute "does not include an entire shopping center or mall where the party has no control over who the other tenants may be and whether the other tenants will operate covered establishments." Id. at 863. The court reasoned that if it read the statute otherwise, "a place of public accommodation would depend upon who the other tenants of a shopping center happened to be a [sic] particular day.   One day a business may be covered because another tenant operates a covered establishment and the next day, if a covered establishment vacates a shopping center, other tenants would not fall within the meaning of the statute." Id.  The court also stated that "Congress could not have intended such a confusing and inconsistent result which depends upon such tenuous circumstances which are completely out of the control of an accused establishment." Id.

As in Halton, plaintiffs' interpretation of the statute to include the Trumbull Mall in the present case "would bring every establishment in any mall or any shopping center within the statute's purview.  In that event, Congress could have just as easily included in §2000a(b) all retail establishments and/or all shopping centers when it enacted Title II or Congress could have subsequently amended the statute to include such establishments."

---

other social service center establishment; and (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

Id. at 863. The fact that Congress did not do so supports a conclusion that a privately owned shopping mall on private property is not a place of public accommodation.

Because the Trumbull Mall is not a place of public accommodation within the meaning of 42 U.S.C. §2000a, plaintiffs' claims based upon this statutory section must fail. Accordingly, the Trumbull Mall is entitled to summary judgment on the fourth count of plaintiffs' Amended Complaint.

### 2. Alternatively, Plaintiffs failed to Exhaust their Administrative Remedies under 42 U.S.C. §2000a

Even assuming that this Court were to conclude that a privately owned mall on private property is a place of public accommodation, plaintiffs' claims under 42 U.S.C. §2000 must fail because plaintiffs failed to satisfy the jurisdictional prerequisites to filing a civil action by exhausting the administrative remedies available prior to filing suit.

It is well-established that a party's exhaustion of administrative processes for filing a claim of any type of discrimination under 42 U.S.C. §2000a is a condition precedent to filing suit in the district court, rather than a jurisdictional prerequisite. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982) (holding that the administrative provisions requiring an employee to pursue a charge of discrimination with the EEOC are conditions precedent to suit subject to waiver, tolling and estoppel). When a party fails to fulfill the specific condition precedent to filing suit in federal court under 42 U.S.C. §2000a, the party is permanently foreclosed from meeting the condition or statutory requirement. See, e.g., Truitt v. County of Wayne, 148 F.3d 644, 646-47 (6th Cir. 1998) ("we hold that [an administrative condition precedent requiring a plaintiff to file suit within ninety days of receiving a right to sue letter from the EEOC] is not a jurisdictional requirement but, instead, is a timing requirement similar to a statute of

limitations, subject to waiver, estoppel and equitable tolling"). Simply stated, the party is unable to rewind the clock, fulfill the condition/file the action within the requisite time period, and proceed to an adjudication of his or her claim.

Title 42 U.S.C. §2000a clearly establishes that prior to filing a discrimination suit in a state that has laws prohibiting the alleged discriminatory practice, the plaintiff must provide the appointed state agency with written notice of the alleged act or practice. Specifically, section 2000a provides:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State, or political subdivision of a State, which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) of this section before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

42 U.S.C. §2000a-3(c).

Connecticut has statutory provisions that prohibit discrimination in places of public accommodation.   Conn. Gen. Stat. §46a-63 et seq.   Connecticut also has a statutory provision authorizing a state or local authority to grant or seek relief from this prohibited practice.   Pursuant to Conn. Gen. Stat. §46a-100, "[a]ny person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with §46a-82[13] and who has obtained a release from the commission in accordance with §46a-83a or §46a-101, may also bring an action in the superior court for

---

13  §46a-82(a) provides that "[a]ny person claiming to be aggrieved by an alleged discriminatory practice, except for an alleged violation of §46a-68, may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission." Id.

the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business." Id. Section 46a-101 clearly states that "[n]o action may be brought in accordance with § 46a-100 unless the complainant has received a release from the commission in accordance with the provisions of this section." Id.

Since Connecticut has statutory provisions prohibiting discrimination in places of public accommodation and a mechanism for seeking relief, the plaintiffs are required to first avail themselves of the state administrative remedies before proceeding in federal court. There is no evidence that any of the Plaintiffs in this action submitted any claims to the Connecticut Commission on Human Rights and Opportunities ("CCHRO"), or any other administrative agency. The defendant submits that plaintiffs' failure to do so is evidence that they do not believe the Trumbull Mall is a place of public accommodation. Nevertheless, the plaintiffs failure to follow administrative procedures in pursuing a claim of discrimination forecloses access to judicial relief. Garcia v. Saint Mary's Hosp., 46 F.Supp.2d 140, 142-146 (D.Conn. 1999), citing Sullivan v. Bd. of Police Commissioners of City of Waterbury, 196 Conn. 208 (1985); Brewer v. Wilcox Trucking, Inc., 1997 WL 688778 (Conn.Super. 1997) (court lacked subject matter jurisdiction inasmuch as plaintiff had failed to exhaust his administrative remedies).

Even if the Court determines that the Trumbull Mall is a place of public accommodation under 42 U.S.C. §2000a, the plaintiffs have failed to meet the statutory prerequisite before proceeding in federal court for an alleged violation of 42 U.S.C. §2000a. Thus, the Court need not reach the merits of their claims and summary judgment should enter for the Trumbull Mall on count four of the Amended Complaint.

21

**D.** **Summary Judgment Should be Granted as to Plaintiffs' Count Four 42 U.S.C. §1981 Claims Because Plaintiffs Cannot Satisfy the Elements of a Prima Facie Case**

In addition to their claim in the Fourth Claim for Relief that they were denied access to a public accommodation, the plaintiffs allege that they were discriminated against based on their race and national origin in violation of 42 U.S.C. §1981. Because the plaintiffs cannot establish a prima facie case of discrimination under section 1981, however, the Trumbull Mall is entitled to judgment as a matter of law on this claim.

Section 1981 provides:

> (a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all law and proceedings for the security of persons and property is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" including the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. (c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. §1981. To prevail on a claim under §1981, a plaintiff must establish, *inter alia*, intentional race discrimination. See Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993); Jones v. City of Bridgeport, NO. CIV. 3:99CV1523(CFD), 2002 WL 272397 at *4 (D.Conn. Feb 19, 2002); Edwards v. Acadia Realty Trust, Inc., et al., 141 F.Supp.2d 1340, 1345 (M.D. Fla. 2001). Specifically, the plaintiffs must plead and prove the following: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e.,

22

make and enforce contracts, sue and be sued, give evidence, etc.). See, e.g., Mian, 7 F.3d at 1087 (2d Cir. 1993); Baker v. McDonald's Corp., 686 F.Supp. 1474, 1481 (S.D.Fla.1987), aff'd 865 F.2d 1272 (11th Cir.1988), cert. denied, 493 U.S. 812 (1989). A plaintiff opposing a motion for summary judgment on a §1981 claim must present significant probative evidence either to support the allegations of racial discrimination in the complaint or to show that a genuine issue as to a material fact exists. Edwards, 141 F.Supp. at 1345-46.

Plaintiffs in this case have no evidence that creates a genuine issue of fact as to racial animus. First, as to the Trumbull Mall, there is absolutely no evidence of discriminatory intent or even any involvement in the July 31, 2001 incident. No employee of TSC - the owner of the Trumbull Mall - or Westfield Corporation, Inc. - the manager of the Trumbull Mall - was present at the time of the incident, and plaintiffs had no contact with anyone from these entities on July 31, 2001. See Maenza Affidavit at ¶15; Myers Depo., Exh. A, at 104; Clark Depo., Exh. B, at 155; McLean Depo., Exh. D, at 54-55; Bingham Depo., Exh. C, at 97-99.

There are also no allegations or evidence to support a policy of the Trumbull Mall to discriminate, and there is no evidence that: (1) Westfield or TSC directed Spectaguard or any of the other defendants to act in a discriminatory manner; (2) Westfield or TSC acted in concert with Spectaguard or any of the other defendants; or (3) Westfield or TSC was even aware of Spectaguard or any of the other defendant's alleged discriminatory actions until notice of this suit. Moreover, the Plaintiffs themselves testified that they did not believe that they were discriminated against. For example, when asked about the defendants' alleged conspiracy to discriminate against him, Bingham testified "I wouldn't

23

say they discriminate against me." Bingham Depo., Exh. C, at 111-112. In response to questions regarding what conduct by Trumbull Police or Spectaguard constituted discrimination, Plaintiff Clark responded "the fact that we were asking questions, none were answered and you know, they're just telling us it's a private mall." Clark Depo., Exh. B, at 47. Most significantly, however, is that no Plaintiff has asserted any allegation or provided any testimony regarding facts they believe constitute discrimination by Westfield or TSC.

In short, there is no evidence that Westfield or TSC acted with the discriminatory intent required for recovery under 42 U.S.C. §1981, and no reasonable jury could find discriminatory intent on this record. Accordingly, the Trumbull Mall is entitled to the entry of summary judgment in its favor. See Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); accord Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.1997); see also Bibbs v. Bd. of Trs., 9 F.Supp.2d 964, 973-74 (N.D.Ill.1998) (granting summary judgment where there was "not a scintilla of evidence" of racial animus and "the undisputed evidence would not allow a reasonable jury to return a verdict in support of [the] claim of racial discrimination"), aff'd, 191 F.3d 455 (7th Cir.1999); Reyes v. City of Dinuba, 1992 WL 289553 at *1 (9th Cir. Oct.14, 1992) (affirming summary judgment where "racial animus [could] not reasonably be inferred from the evidence"); Zephyr v. Ortho McNeil Pharm., 62 F.Supp.2d 599, 607 (D.Conn.1999) (granting summary judgment where case "present[ed] the Court with nothing more than pure and legally inadequate speculation that racial animus motivated the alleged discriminatory treatment

24

of the plaintiff"); Brady v. Cheltenham Township, 1998 WL 164994 at *7 (E.D.Pa. Apr.9, 1998) (finding that "[t]he evidence presented fail[ed] to bolster plaintiffs' conclusory allegations of racial animus, which are inadequate to create an issue of fact that would prevent the court from granting summary judgment" on section 1981 claims).

Additionally, the only rights protected under section 1981 are those related to the making and enforcing of contracts. See Patterson v. McLean Credit Union, 491 U.S 164, 171 (1989). Plaintiffs allege no facts to show that they were deprived of the benefits and privileges of a contractual relationship as a result of any conduct by Westfield or TSC. They also allege no facts to indicate that they had a contractual relationship with Westfield or TSC. Plaintiffs' Amended Complaint together with their testimony establishes that they shopped freely while inside the Trumbull Mall, and that Myers and Clark actually made purchases in the *Lord & Taylor* store without incident prior to the dispute with the Spectaguard security personnel. See Bingham Depo., Exh. C, at 24; Myers Depo., Exh. A, at 30-32; Clark Depo., Exh. B, at 32-33. Thus, even if Westfield or TSC was somehow contractually bound to ensure that its tenants provide shopping opportunities to plaintiffs, the plaintiffs fail to allege sufficient facts and they lack evidence to support the conclusory allegations in count four of their amended complaint that the Trumbull Mall violated 42 U.S.C. §1981. Accordingly, the Trumbull Mall is entitled to summary judgment on plaintiffs' claims under 42 U.S.C. §1981.[14]

## E.    Plaintiffs Cannot Establish a Prima Facie Case of Conspiracy Under 42 U.S.C. §1985

In the first count of Plaintiffs' Amended Complaint, they allege that all defendants

---

14 A court's disposition of the issue of racial animus renders moot the other issues pertinent to a section 1981 claim. See Edwards, 141 F.Supp.2d at n.5.

25

"conspired with one another to deprive plaintiffs of their rights as guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution" in violation of 42 U.S.C. §1985. Amended Complaint at ¶31. Specifically, Plaintiffs claim that the Trumbull Mall conspired with the Town of Trumbull, through its employee police officers, and Spectaguard, through its employee security guards, to discriminate against plaintiffs by "forcing them to leave the Trumbull Mall based on their race and national origin." Amended Complaint at ¶32.

To establish a prima facie case of conspiracy under §1985 against the Trumbull Mall, plaintiffs must prove that the Trumbull Mall: (1) expressly or impliedly agreed to conspire with at least one other defendant; (2) for the purpose of depriving, either directly or indirectly, plaintiffs of equal protection of the laws, or of equal privileges and immunities under the laws; (3) engaged in an act in furtherance of the conspiracy; (4) whereby each plaintiff was either injured in his or her person or property or deprived of any right of a citizen of the United States. United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983). An essential element to a cause of action under §1985 is a requirement that the alleged discrimination took place because of the individual's race. Id. at 829. A plaintiff must do more than make "vague, general or conclusory accusations to establish the existence of a conspiracy actionable under §1985(3)." Mass v. McClenahan, 893 F.Supp. 225, 231 (S.D.N.Y. 1995), quoting Williams v. Reilly, 743 F.Supp. 168, 173-74 (S.D.N.Y. 1990); See also Mazurek v. Wolcott Bd. of Educ., 815 F.Supp. 71, 77 (D.Conn.1993) ("It is well established that mere conclusory allegations are insufficient to establish a cause of action for a violation of civil rights."). Rather, the plaintiff must plead specific material facts that show the existence of a conspiracy. See

26

Winterland Concessions Co. v. Trela, 735 F.2d 257, 262 (7th Cir. 1984). "Absent specific factual allegations as to the participation of a particular defendant in the conspiracy, plaintiff's §1985(3) claim cannot survive a motion for summary judgment by that defendant." McPartland v. American Broadcasting Companies, Inc., 623 F.Supp. 1334, 1341 (S.D.N.Y. 1985).

Plaintiffs have not alleged any facts indicating that Westfield or TSC, or any of its agents or employees, entered into an agreement with the Town of Trumbull, the Trumbull Police Department, Spectaguard, any of the named defendants' agents or employees, or anyone else with the goal of depriving plaintiffs of their constitutional rights because of their race or national origin. As has already been noted, plaintiffs have put forth no allegations, nor could they, that any representative, agent or employee of Westfield or TSC was present or participated in the events of July 31, 2001. Furthermore, plaintiffs have alleged no facts to indicate that racial animus underlay the defendants' alleged conspiracy against plaintiffs. Instead, plaintiffs simply tack the phrase "based on their race and national origin" onto their allegations. However, in describing the events of July 31, 2001 in the body of their amended complaint, plaintiffs allege no facts showing any kind of racial animus on the part of Westfield or TSC, or its agents or employees, against plaintiffs.

Plaintiffs also confirmed that they have no facts to support their claims against the Trumbull Mall under §1985 in their deposition testimony. For example, the following exchange took place during the deposition of plaintiff Richard Myers:

> Q: Now, in this lawsuit, you claim that people from Westfield conspired, had a plan with the security guards or the Town of Trumbull to discriminate against you. Are you aware of that claim?

27

A: No.

Q: "Do you know of any facts to support that claim?

A: They hired the security guards.

Q: Did they hire the security guards to discriminate against you?

A: No. They hired the security guards who discriminated against us.

Q: Do you know of any plan by the mall employees and the security company to discriminate against you?

A: No. I didn't see or heard any plans.

Myers Depo., Exh. A, at 103-04.

Plaintiff Shernette Clark also confirmed that the group never had any contact with anyone from the Trumbull Mall in regards to this incident.

Q: Did you ever have any encounter with any manager of the mall?

A: Any managers? No.

Q: Did you have any encounter with anyone who identified themselves as someone from Westfield Shopping Town [sic] Trumbull?

A: Not to my knowledge.

Q: Is it fair that the only people you dealt with on the night of July 31st 2001 were the security officers and the police officers from the Town of Trumbull?

A: Yes.

Clark Depo., Exh. B, at 115.

Plaintiff Kenneth Bingham testified as follows:

Q: The other question is do you have – what is your evidence or what is your basis for the claim that the security company and or its guards conspired with either Westfield or the Trumbull Police Department to discriminate against you?

28

A: What is my basis if I could say, okay, they was planning to kick us out, I can't say that. I can't say they was sitting down and plan as soon as we walk in because I guarantee you, they didn't know if we was going to the mall or not so we went there and they just tell us we got to go and escort us straight out the mall.

Q: Is it fair to say you have no information to support the claim that Spectaguard which is the security company or its employees, its guards conspired with either Westfield or with the Trumbull Police Department to discriminate against you?

A: I wouldn't say they discriminate against me.

Bingham Depo., Exh. C, at 111-112.

It is clear that plaintiffs have not, and cannot, allege or produce evidence to support the essential elements of a section 1985 claim against the Trumbull Mall. Therefore, the Trumbull Mall is entitled to the entry of summary judgment in its favor on the first count of plaintiffs' Amended Complaint.[15]

### F.    The Evidence Is Insufficient As A Matter of Law To Support a Claim for False Imprisonment Against the Trumbull Mall

In the second count of their Amended Complaint, the plaintiffs allege a claim for false imprisonment under state and federal law against each of the defendants. Plaintiffs claim that they were illegally detained inside of the Trumbull Mall and in the parking lot of the Trumbull Mall without being allowed to leave for a specific period of time.

---

15  In the fifth count of plaintiffs' Amended Complaint, they allege a violation of 42 U.S.C. §1986 against defendants John and Jane Does.  To the extent that this claim is directed to the Trumbull Mall, the Trumbull Mall is entitled to summary judgment.  Section 1986 provides a cause of action against anyone who "having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." Katz v. Morgenthau, 709 F.Supp. 1219, 1236 (S.D.N.Y.), *aff'd in part and rev'd in part on other grounds,* 892 F.2d 20 (2d Cir.1989). Thus, a section 1986 claim must be predicated upon a valid section 1985 claim. See Dacey v. Dorsey, 568 F.2d 275, 277 (2d Cir.), *cert. denied,* 436 U.S. 906 (1978).  Because Plaintiffs' conclusory allegations together with their innate lack of evidence are insufficient to sustain this motion for summary judgment on their section 1985 claims, their section 1986 claims as pled against the Trumbull Mall must also fail.  See, e.g., Mazurek v. Wolcott Bd. of Educ., 815 F.Supp. 71, 77 (D.Conn.1993) ("It is well established that mere conclusory allegations are insufficient to establish a cause of action for a violation of civil rights.").

Amended Complaint at ¶35.  Based upon the allegations and evidence presented, however, no reasonable juror could conclude that plaintiffs were physically restrained against their will by the Trumbull Mall.  Therefore, the Trumbull Mall is entitled to summary judgment on this count.

False imprisonment is an intentional tort that consists of the unlawful restraint of the physical liberty of one person by another person.  See Berry v. Loiseau, 223 Conn. 786, 820 (1992); Green v. Donroe, 186 Conn. 265, 267 (1982); Felix v. Hall-Brooke Sanitarium, 140 Conn. 496, 499 (1953).  "To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is that he did not consent to the restraint or acquiesce in it willingly."  Berry, 223 Conn. at 820, quoting Lo Sacco v. Young, 20 Conn. App. 6, 19, cert. denied, 213 Conn. 808 (1989)(emphasis added).  "In a case of false imprisonment there usually must be more than mental compulsion.  There must be a threat of present (not future) force."  Carr v. Devereux Foundation, Inc., 1995 WL 541799 (Conn.Super. 1995) (quoting D Wright & J. Fitzgerald, Connecticut Law of Torts (3d ed.) Sec. 12, p. 15).  "A person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it."  Rivera v. Double A Transportation. Inc., 248 Conn. 21, 31, 727 A.2d 204 (1999).

The evidence in the present case is insufficient as a matter of law for plaintiffs to recover damages against the Trumbull Mall for false imprisonment.  First, Plaintiffs unequivocally acknowledge that neither Westfield nor TSC, nor their agents, representatives or employees, were present during any unwanted detention.  In fact,

30

Plaintiffs testified during depositions that the only people whom they claim detained them were the Trumbull Police Department. See, e.g., Myers Depo., Exh. A, at 75; Clark Depo., Exh. B, at 74-75, 117-118. In response to the question, "But the only people who detained you were the Trumbull Police Department", Myers responded "Yes." Myers Depo., Exh. A, at 75. The following exchange took place during Clark's deposition:

> Q: And is it fair to say that no one from Westfield Shoppingtown Trumbull detained you, correct?
>
> A: Well, apart from the police just having us there telling us we can't move, we can't leave...
>
> Q: It was the Town of Trumbull police?
>
> A: Yes.
>
> Q: But other than those individuals, no one else detained you?
>
> A: No.

Clark Depo., Exh. B, at 117-118.

At no time did Westfield, TSC or any affiliated entity, their agents, servants or employees unlawfully detain plaintiffs, and at no time did any of these entities, their agents, servants or employees threaten plaintiffs with physical force in order to prevent them from leaving the mall. In fact, the undisputed facts show that Spectaguard requested the plaintiffs to exit the mall but the plaintiffs objected. At no time during the entire incident did any plaintiff have any contact whatsoever with anyone from Westfield or TSC.

There is no evidence from which a jury could conclude that anyone employed by Westfield or TSC restrained plaintiffs' physical liberty against their will. There is also no evidence of an intent on the part of Westfield or TSC to restrain plaintiffs' liberty, no

31

evidence that anyone from Westfield or TSC instructed any other defendant to restrain plaintiffs' liberty, and no evidence of "a rather extreme brand of recklessness" on the part of any Westfield entity that would substitute for the lack of evidence of intent necessary for plaintiffs to prevail on a false imprisonment claim. See Rivera, 248 Conn. at 32. Based upon the insufficient evidence, Westfield is entitled to summary judgment on count two of Plaintiffs' Amended Complaint.

## IV.    CONCLUSION

For the foregoing reasons, the defendant Westfield Shoppingtown Trumbull respectfully requests that this Court enter summary judgment in its favor as to counts one, two, four and five of the plaintiffs' Amended Complaint.

> THE DEFENDANT,
> WESTFIELD SHOPPINGTOWN
> TRUMBULL
>
>
> Michael T. McCormack, ct13799
> Elizabeth K. Andrews, ct20986
> Tyler Cooper & Alcorn, LLP
> CityPlace I, 35th Floor
> 185 Asylum Street
> Hartford, CT   06103
> Tel.:  (860) 725-6200
> Fax:  (860) 278-3802
> Email: mmccormack@tylercooper.com

## CERTIFICATION OF SERVICE

On June 15, 2004, I certify that a true and correct copy of the foregoing **MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW** was sent via U.S. mail, postage prepaid, to the following of record:

Cynthia H. Hardaway, Esq.
Hunt, Hamlin & Ridley
Military Park Building
60 Park Place, Suite 1602
Newark, NJ 07102

Louis N. George, Esq.
Stuart E. Brown
Hassett & George
555 Franklin Avenue
Hartford, CT 06114

Robert J. Flanagan, Jr., Esq.
Cella, Flanagan & Weber, P.C.
21 Washington Avenue
P.O. Box 221
North Haven, CT 06473-0221

Michael T. McCormack