1         A.    No.
2         Q.    So you didn't go to any
3   doctors for anything related to this?
4         A.    No.
5         MR. FLANAGAN: Sir, that's
6   all I have for you at this time.
7   Mr. McCormack gets a chance now.
8
9               CROSS EXAMINATION
10  BY MR. MCCORMACK:
11        Q.    Good afternoon, Mr. Bingham?
12        A.    How are you.
13        Q.    How are you?
14        A.    I'm fine.
15        Q.    I'm Mark McCormack. I
16  represent the defendant by the name of
17  Westfield Trumbull Shopping Town Trumbull.
18  I have a few follow-up questions for you.
19  If you don't understand a question that I
20  ask you, just let me know. Okay?
21        A.    Yes.
22        Q.    You indicated in response to
23  Attorney Brown's question that when you
24  were outside the mall, one of the police
25  officers told somebody to shut up; is that

1    talking to were girls that you never seen
2    before?
3         A.    No, never seen them before.
4         Q.    Was this after you had been
5    downstairs and received the flyer from
6    those other girls?
7         A.    Yes.
8         Q.    Did you say you followed
9    those girls into the store?
10        A.    What girls?
11        Q.    The girls downstairs.
12        A.    I said one of them.  I said I
13   thinks he went in the store, we was just
14   talking to them.  I don't remember.  I
15   don't recall if I walk with them in the
16   store.  I walked out with them out of the
17   store or they came out the store and we was
18   walk, talking to them but, you know, they
19   was standing outside the store and they
20   gave us the flyer.
21        Q.    Did you have any
22   conversations with anyone that identified
23   themselves as someone from the mall?
24        A.    No.
25        Q.    The only people you

98

1  interacted that night was the security
2  guards?
3      A.   Yes.  The security guard and
4  the police officers.
5      Q.   Just to establish a clear
6  record, you did not interact with anyone
7  else in the mall other than the security
8  guards and members of your group; is that
9  correct?
10     A.   Yes, sir.
11     Q.   And outside of the mall, you
12 did not interact with anyone other than
13 members of the Trumbull police department
14 and your group, correct?
15     A.   Yes.
16     Q.   And actually, in the mall,
17 you maybe had some interaction with
18 females?
19     A.   Yes.
20     Q.   But no one that identified
21 themselves as someone from Westfield?
22     A.   No, sir.
23     Q.   And to your knowledge, did
24 you interact with anyone from any stores in
25 the mall?

99

```
 1              A.     No, not that I --
 2              Q.     Do you know of any facts that
 3     support your claim that somebody from
 4     Westfield conspired, entered into a plan
 5     with the security guards or the Town of
 6     Trumbull Police Department to discriminate
 7     against you?
 8              A.     Repeat that?
 9              Q.     Do you know of any facts to
10     support a claim that someone from Westfield
11     entered into a plan with the security
12     guards or members of the Trumbull Police
13     Department to discriminate against you?
14              A.     Not that I know of.
15              Q.     Have you ever spoken with
16     anybody from Westfield about this incident?
17              A.     Not that I know of.
18              Q.     Who's idea was it to give an
19     interview to the television channel?
20              A.     It was all of us.
21              Q.     And did you make that
22     decision after first consulting with an
23     attorney?
24              A.     When we talk to a lawyer then
25     we make that, like, we was stood there and
```

111

1          A.    Like hold me and say don't
2    move from here or say don't leave?  No,
3    they was just telling us to get out the
4    mall.
5          Q.    The other question is do you
6    have -- what is your evidence or what is
7    your basis for the claim that the security
8    company and or its guards conspired with
9    either Westfield or the Trumbull Police
10   Department to discriminate against you?
11         A.    What is my basis if I could
12   say, okay, they was planning to kick us
13   out, I can't say that.  I can't say they
14   was sitting down and plan as soon as we
15   walk in because I guarantee you, they
16   didn't know if we was going to the mall or
17   not so we went there and they just tell us
18   we got to go and escort us straight out the
19   mall.
20         Q.    Is it fair to say you have no
21   information to support the claim that
22   Spectaguard which is the security company
23   or its employees, its guards conspired with
24   either Westfield or with the Trumbull
25   Police Department to discriminate against

112

1    you?
2            A.    I wouldn't say they
3    discriminate against me. I would say he
4    escort me out the mall which embarrassed
5    me, the security guard and then as soon as
6    I go outside, it's a bigger embarrassment
7    the police go into your privacy which you
8    didn't give them the rights, which you
9    didn't go in to do because I'm guarantee
10   you, you wouldn't like a police to walk in
11   here and say all ya'll show me the ID. The
12   police I guess they got right to do that as
13   far as immigration but my knowledge for the
14   law I know there's no police can come and
15   say that, if that be the case, everybody
16   walk down the street they could do that to.
17           Q.    That's what the police did in
18   the parking lot?
19           A.    Yes. And the security guard
20   escort us outside which is more
21   embarrassment because a lot of people,
22   everybody shop there and they look around
23   like why these guys being escort, so that's
24   even more embarrassment.
25           Q.    Are you saying that the fact

113

1    that the security guards escorted you out
2    and then the police were there is evidence
3    that there was a conspiracy to violate your
4    rights?
5         A.    Between both of them.  It's
6    like the security guard escort us out like
7    we did something and then call the police
8    because the police was out there, somebody
9    got to call the police to come out there, a
10   phone call, the police not going to pop up
11   and say okay, let's mess with these guys.
12              MR. FLANAGAN:  I don't have
13        anymore questions.
14
15        (Deposition concluded at 3:38 p.m.)

```
                                                              114
 1    UNITED STATES DISTRICT COURT )
                                   )SS.
 2    DISTRICT OF CONNECTICUT      )

 3            I, Okeemah S. Henderson, LSR and a
 4    Notary Public for the State of Connecticut,
 5    do hereby certify that the deposition of
 6    KENNETH BINGHAM, was taken before me
 7    pursuant to Rule 30 of the Federal Rules of
 8    Civil Procedure at Hassett & George, P.C.,
 9    555 Franklin Avenue, Hartford, CT commencing
10    at 1:51 p.m. on April 22, 2004.
11            I further certify that the
12    above-named deponent was first duly sworn by
13    me to tell the truth, and was examined by
14    counsel, and his testimony was
15    stenographically reported by me and
16    subsequently transcribed as hereinbefore
17    appears.
18            I further certify that I am not
19    related to the parties hereto or their
20    counsel, and that I am not in any way
21    interested in the outcome of said case.
22            Dated at Agawam, Massachusetts,
23    this 14th day of May, 2004.

24    _____
      Okeemah S. Henderson, LSR No. 00333
25    Notary Public
      My commission expires April 30, 2007.
```

NIZIANKIEWICZ & MILLER REPORTING SERVICES
972 Tolland Street
East Hartford, Connecticut  06108
(860) 291-9191       FAX: (860) 528-1972