1        CROSS EXAMINATION
2   BY MR. MCCORMACK:
3        Q.   Good morning.  My name is Michael
4   McCormack and I represent the defendant
5   Westfield Shopping Town Trumbull who is
6   another party you have sued.  What did you
7   all do when you were walking outside the
8   mall?
9        A.   Walked around looking around and
10  talking.
11       Q.   To whom?
12       A.   One another, each other.
13       Q.   Did you talk to any females
14  outside?
15       A.   Some was passing but we just said
16  Hi and that's it.
17       Q.   And then you continued that on
18  inside the mall, correct?
19       A.   Yes.
20       Q.   At any time that you were at the
21  mall, did anyone approach you and identify
22  themselves as an employee of Westfield
23  Shopping Town Trumbull?
24       A.   No.
25       Q.   To your knowledge, was anyone from

55

1  Westfield Shopping Town Trumbull there that
2  day?
3      A.  Apart from the security guards.
4      Q.  I'm sorry?
5      A.  Not apart from the security
6  guards, that's about it.
7      Q.  The only people present were the
8  security guards, correct?
9      A.  Yes.
10     Q.  And then outside the police
11 officers?
12     A.  Yes.
13     Q.  And then your group?
14     A.  Yes.
15     Q.  And sir, if in the report prepared
16 by the security guards one of the officers
17 reported that one of the members of your
18 group said quote, I ain't doin' shit, end
19 quote.  Who would that be?
20     A.  That would be Marvin.
21     Q.  And is it true that Ms. Clark was
22 the only female in your group?
23     A.  Yes.
24     Q.  So if one of the officers in the
25 report indicated that a female shouted to

56

1   him quote, man, don't give me that shit, end
2   quote, that would be Ms. Clark, correct?
3        A.   Yes, that would.
4        Q.   How many other members of your
5   group used profanities towards the officers?
6             MS. HARDAWAY:  Object to the
7        form.
8        Q.   (By Mr. McCormack) How many other
9   member of your group used profanities
10  towards the guards?
11       A.   I only know about one.
12       Q.   Marvin?
13       A.   Yes.
14       Q.   You didn't hear Ms. Clark say
15  quote, man, don't give me that shit, end
16  quote?
17       A.   No.
18       Q.   And if I understand your testimony
19  correctly, Ms. Clark, Mr. Myers and Mr.
20  Wilson were in Lord & Taylor at the time two
21  security guards approached you outside of
22  Lord & Taylor?
23       A.   Yes.  One first, then the other
24  one came up.
25       Q.   And the first one was the white

77

1  do it specifically or as a group?
2  I'm not clear as to what you're
3  making reference to.
4     Q.  (By Mr. McCormack) The complaint
5  alleges that plaintiffs informed defendant
6  Michael that there was no need to escalate
7  the situation and indicated that they would
8  leave the mall on their own accord.  Now,
9  my question is did any member of your group
10 indicate to Mr. Michael that you would leave
11 the mall on your own accord?
12    A.  I don't know.  I can't recall
13 that.
14    Q.  Do you know of any -- I'll
15 withdraw the last question.  In your
16 complaint, you and your fellow plaintiff's
17 allege that someone from Westfield Town
18 Shopping Trumbull conspired with the other
19 defendants, the security guards and or the
20 police to deprive you of your constitutional
21 rights.  Who at Westfield Trumbull do you
22 claim conspired with the security guards or
23 the police officers?
24    A.  I don't know.  To my knowledge, I
25 don't really remember.  I can't recall what

NIZIANKIEWICZ & MILLER REPORTING SERVICES
972 Tolland Street
East Hartford, Connecticut 06108
(860) 291-9191      FAX: (860) 528-1972

78

1  the exact thing that happened that night,
2  it's been three years.
3      Q.  Well, you testified that no one
4  from Westfield Shopping Town Trumbull was
5  present, correct?
6      A.  Except for the security guards,
7  that's about it.
8      Q.  Do you know of any other
9  individuals that conspired with the security
10 guards to deprive you of your claimed
11 rights?
12     A.  I don't know.
13     Q.  So what facts do you base your
14 allegation on that someone from the
15 defendant Westfield Shopping Town Trumbull
16 conspired with the security guards and or
17 the police officers to deprive you of your
18 constitutional rights?
19     A.  Can you repeat that?
20         MR. MCCORMACK:  Sure.  Madam
21     Court Reporter, can you read that
22     question back, please.
23 (The last question was read back by the
24              reporter.)
25         MS. HARDAWAY:  I'm

```
 1           going to object to the form of
 2           the question as there are a lot
 3           of --
 4                   MR. MCCORMACK:  That's
 5           fine.  Objection to the form.
 6                   MS. HARDAWAY:  -- a lot
 7           of legal terminologies in there.
 8                   MR. MCCORMACK:
 9           Obviously noted.
10                   MS. HARDAWAY:  If he
11           can answer the question given
12           that he might not have an
13           understanding of the legal
14           terminology.
15        Q.   (By Mr. McCormack)  Sir, you can
16   answer the question.
17        A.   I don't understand the direct form
18   of the question.
19        Q.   You don't understand the direct
20   form of the question?
21        A.   No.
22        Q.   Do you know of anyone from
23   Westfield Shopping Town Trumbull that
24   entered into a plan with the security guards
25   and or the police officers to deprive you of
```

1   your constitutional rights?
2       A.  No.
3       Q.  What facts do you base your claim
4   that someone from Westfield Shopping Town
5   Trumbull entered into a plan with the
6   security guards and or the police to deprive
7   you of your constitutional rights?
8       A.  The fact that I didn't know what
9   was going on and I didn't have the right to
10  know what was going on, they deprived me of
11  my rights, freedom of speech.  I couldn't
12  talk, I had to shut up and sit down.
13              MS. HARDAWAY:  I don't want
14      to put anything in his mouth --
15              MR. MCCORMACK:  Well,
16      the question has been asked and
17      answered.
18              MS. HARDAWAY:  If you
19      want to follow up because I think
20      there's a confusion about the
21      distinction between the mall and
22      the security, just so if you're
23      satisfied with the question,
24      that's fine but I'm just noticing
25      that from the prior depositions

1   items purchased from Lord &
2   Taylor on the evening of the
3   incident. Due to reconstruction
4   in my firm in which the entire
5   floor was renovated, a portion of
6   the file was misplaced. I am
7   still, to this day, looking for
8   that file to retrieve those
9   particular items. I have
10  requested through document
11  production that the defendant's
12  who are in possession of the
13  courtesy card which I believe to
14  be the defendant mall and the
15  defendant Spectaguard to provide
16  me with a copy of the courtesy
17  code. To date, it has not been
18  done even though responses to
19  document production request have
20  be forwarded to me.
21
22  (Deposition concluded at 11:20 a.m.)
23
24
25

```
UNITED STATES DISTRICT COURT )
                             )SS.
DISTRICT OF CONNECTICUT      )
```

I, Okeemah S. Henderson, LSR and a Notary Public for the State of Connecticut, do hereby certify that the deposition of **FLOYD MCLEAN**, was taken before me pursuant to Rule 30 of the Federal Rules of Civil Procedure at Cella, Flanagan & Weber, P.C., 21 Washington Avenue, North Haven, CT commencing at 9:43 a.m. on April 29, 2004.

I further certify that the above-named deponent was first duly sworn by me to tell the truth, and was examined by counsel, and his testimony was stenographically reported by me and subsequently transcribed as hereinbefore appears.

I further certify that I am not related to the parties hereto or their counsel, and that I am not in any way interested in the outcome of said case.

Dated at Agawam, Massachusetts, this 21st day of May, 2004.

_____
Okeemah S. Henderson, LSR No. 00333
Notary Public
My commission expires April 30, 2007.

**NIZIANKIEWICZ & MILLER REPORTING SERVICES**
972 Tolland Street
East Hartford, Connecticut 06108
(860) 291-9191    FAX: (860) 528-1972