EXHIBIT

Case 3:03-cv-00373-RNC    Document 75-13    Filed 06/15/2004

```
                                                                    1
 1           IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF CONNECTICUT
 2
     RICHARD A. MYERS, ET AL    CIVIL ACTION
 3
     VS                         NO. 3:03 CV 373 (RNC)
 4
     TOWN OF TRUMBULL, ET AL    APRIL 29, 2004
 5
                  DEPOSITION OF MICHAEL HOKANSON
 6
     APPEARANCES:
 7
             HUNT, HAMLIN & RIDLEY
 8                Attorneys for the Plaintiffs
                  Military Park Building
 9                60 Park Place, Suite 1602
                  Newark, New Jersey  07102
10                (973) 242-4471

11           BY:  CYNTHIA H. HARDAWAY, ESQUIRE

12
             HASSETT & GEORGE, P.C.
13                Attorneys for Officers Coppola & Leos
                  555 Franklin Avenue
14                Hartford, Connecticut  06114
                  (860) 296-2111
15
             BY:  STUART E. BROWN, ESQUIRE
16

17           TYLER, COOPER & ALCORN, LLP
                  Attorney for Westfield Shopping Center
18                185 Asylum Street
                  CityPlace I, 35th Floor
19                Hartford, Connecticut  06103
                  (860) 522-1216
20
             BY:  MICHAEL T. MCCORMACK, ESQUIRE
21
     *** APPEARANCES CONT'D ON PAGE 2
22
                             COPY
23

24              OKEEMAH S. HENDERSON
       NOTARY PUBLIC-LICENSED SHORTHAND REPORTER
25           CONNECTICUT LICENSE NO. 00333


           NIZIANKIEWICZ & MILLER REPORTING SERVICES
                      972 Tolland Street
                 East Hartford, Connecticut  06108
            (860)  291-9191     FAX:  (860) 528-1972
```

2

1      \*\*\* APPEARANCES CONT'D FROM PAGE 1

2

3           CELLA, FLANAGAN & WEBER, P.C.
               Attorneys for Spectaguard
4              21 Washington Avenue
               PO BOX 221
5              North Haven, Connecticut  06473-0221
               (203) 239-5851
6
        BY:  ROBERT J. FLANAGAN, ESQUIRE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24              OKEEMAH S. HENDERSON
       NOTARY PUBLIC-LICENSED SHORTHAND REPORTER
25          CONNECTICUT LICENSE NO. 00333


*NIZIANKIEWICZ & MILLER REPORTING SERVICES*
*972 Tolland Street*
*East Hartford, Connecticut  06108*
*(860)  291-9191        FAX:  (860) 528-1972*

3

```
 1                         I N D E X

 2    DEPONENT                                              PAGE

 3    MICHAEL HOKANSON

 4

 5    Direct Examination by Ms. Hardaway                     5
      Cross Examination by Mr. McCormack                   135
 6    Cross Examination by Mr. Brown                       166
      Redirect Examination by Ms. Hardaway                 175
 7    Recross Examination by Mr. McCormack                 179

 8

 9                    PLAINTIFF'S EXHIBITS
                        (For identification)
10
      EXHIBIT                                              PAGE
11
         1        Security report                            14
12
         2        Code of conduct                            45
13
         3A       Upper level floor plan                     74
14
         3B       Lower level floor plan                     74
15
         4        Matthew Wilkins statement                 121
16
         5        Stephanie Caldwell statement              121
17
         6        Trumbull Police case report               125
18
         7        Interrogatories                           133
19

20
                      DEFENDANT'S EXHIBITS
21                      (For identification)

22    EXHIBIT                                              PAGE

23       1        Photo array                               166

24       2        Photo array                               166

25       (Original exhibits retained by counsel.)
```

NIZIANKIEWICZ & MILLER REPORTING SERVICES
972 Tolland Street
East Hartford, Connecticut  06108
(860)  291-9191        FAX:  (860) 528-1972

```
 1              ... Deposition of MICHAEL HOKANSON,
 2      taken on behalf of the Defendant, pursuant
 3      to Rule 30 of the Federal Rules of Civil
 4      Procedure before Okeemah S. Henderson,
 5      Licensed Shorthand Reporter and Notary
 6      Public for the State of Connecticut, held at
 7      Cella, Flanagan & Weber, P.C., 21 Washington
 8      Avenue, North Haven, CT commencing at
 9      12:38 p.m. on April 29, 2004.
10              S T I P U L A T I O N S
11              It is hereby stipulated and agreed by
12      and among counsel for the respective parties
13      that all formalities in connection with the
14      taking of this deposition and the authority
15      of the officer before whom it is being
16      taken, may be and are hereby waived.
17              It is further stipulated and agreed
18      that objections other than as to form are
19      reserved to the time of trial and the
20      reading and signing of said deposition by
21      the Deponent is hereby not waived.
22              It is further stipulated that the
23      proof of the qualifications of the Notary
24      Public before whom the deposition is being
25      taken is hereby waived.
```

5

1        (Deposition convened at 12:38 p.m.)

2

3            MICHAEL HOKANSON, being first duly

4    sworn by Okeemah S. Henderson, LSR and

5    Notary Public within and for the State of

6    Connecticut, was examined, and testified on

7    his oath as follows:

8

9                DIRECT EXAMINATION

10   BY MS. HARDAWAY:

11       Q.    Is it good afternoon.  Good

12   afternoon, Mr. Hokanson.  My name is

13   Cynthia Hardaway.  As you know, I represent

14   the plaintiffs in this matter.  What we're

15   about to do is to take your deposition.

16   Have you ever been deposed before?

17       A.    Yes.

18       Q.    So you understand that this

19   is a question and answer session.  I'm

20   going to ask you a series of questions and

21   you have to answer them truthfully and to

22   the best of your ability.  If for some

23   reason you don't remember an answer to a

24   question that I ask just tell me that.

25           If you don't understand my question,

1  officers that came?
2     A.   Assuming so. Yes.
3     Q.   When you came out, you saw
4  the five or six officers, you spoke to one
5  or two?
6     A.   Yes.
7     Q.   Okay. Now, did the one or
8  two identify themselves as the people
9  responding to your call?
10    A.   They were all in the area
11 that we radioed them to, we assumed that
12 they were there only for that reason.
13    Q.   Well, when you spoke to one
14 or two, you said you spoke to them.
15    A.   Yes.
16    Q.   Did they indicate to you that
17 we're responding to a call from the mall?
18    A.   No, they did not specifically
19 say that.
20    Q.   Okay. What happened?
21    A.   We -- Fernando Torres, myself
22 and the other parties involved, after
23 exiting the mall, the police department was
24 there. Fernando and I went over to try to
25 explain the situation to them. I know

1  specifically myself we tried to explain it
2  was a rowdy group upstairs in Lord & Taylor
3  court, we asked them to leave several
4  times, they became loud, profane and
5  continued to cause a disturbance.
6         We then asked them to leave the
7  mall, we asked that they leave the mall and
8  they complied by starting to walk away in a
9  slow manner.  When we finally got -- when
10 we finally followed them throughout the
11 mall continuing to call Trumbull police
12 because they were continuing to be
13 extremely loud, boisterous and causing more
14 of a disturbance as they progressed through
15 the mall --
16         Q.    Let me stop you right there
17 because I'm on the point that you're
18 telling the officers.  So you're telling me
19 you told the officers all this?
20         A.    Yes.  That's when we called
21 the police department again to say we're
22 still needing an escort outside, it didn't
23 go away by itself, so we need an officer to
24 come and I believe the only call was done
25 by Fernando when we assumed they were going

14

1  to another door. My call was we're
2  progressing to a different door now, to
3  have an officer meet us over there.
4       Q.    The first door that you made
5  reference to, were there officers at that
6  door?
7       A.    I can't recall. I'm not
8  sure. We didn't go out that door, so I'm
9  not sure if they were or not.
10          MS. HARDAWAY:  Can we mark
11     this P1.
12
13     (Plaintiff's Exhibit No. 1, security
14     report, marked for identification.)
15
16       Q.    (By Ms. Hardaway) Directing
17  your attention to what's been marked P1 for
18  identification. Can you look at this and
19  tell me if you recognize this document?
20       A.    Yes.
21       Q.    What is that?
22       A.    That's an internal report
23  that we filed for Westfield.
24       Q.    Now, if you would review this
25  document to yourself and tell me if that

45

1   mall entry 1, 4, 2, not a store coming in
2   from Filene's or.
3           Q.   How many entries are there to
4   the mall?
5           A.   At that point there was five.
6           MR. MCCORMACK:  Just for the
7       record, can I get an idea as to
8       what point we're talking about?
9           MS. HARDAWAY:  He said at
10      the time when he was first hired by
11      the mall.
12          THE WITNESS:  '96.
13          MS. HARDAWAY:  So now, I
14      want to direct your attention to
15      what I will have marked as P-2 for
16      identification.
17
18      (Plaintiff's Exhibit No. 2, code of
19      conduct, marked for identification.)
20
21          Q.   (By Ms. Hardaway) Can you
22  review that to yourself?  Let me know when
23  you're done.
24          A.   (The witness complies.) Okay.
25          Q.   Did they ever come -- did

46

1  there ever come a time when the rules that
2  you made reference to, the code of conduct,
3  did there ever come a point when they were
4  no longer displayed at five different
5  entries?
6           A.    Yes.  I don't recall when
7  that was but in relation to the actual code
8  of conduct, there was a sign directing
9  everyone that there is a code of conduct in
10 place and to stop by customer service or a
11 security officer to obtain one.  I'm not
12 sure of the exact language on the sign.
13          Q.    At that point, you don't
14 recall what year it was?
15          A.    Yes.
16          Q.    Was it prior to this incident
17 that's the subject matter of the complaint?
18          A.    I believe so.  Yes.
19          Q.    Do you know what was waiting
20 at the security desk for anyone that
21 decided they wanted to go see?
22          A.    It was a depending on what
23 year it was, I know this was a copy of the
24 actual code of conduct whether it was this,
25 after some point we got small pocket-sized

47

1   cards that was the exact duplicate of the
2   code of conduct.
3         Q.    So at any given point it
4   would have either been a piece of paper
5   that you made reference, you touched in
6   P-2?
7         A.    I made reference to that.
8         Q.    Legal size paper and then at
9   some point it turned to more of like a
10  business card size?
11        A.    An oversized card, more of an
12  index card size, not a business card.
13        Q.    Now, in reference to the code
14  of conduct that was initially displayed
15  back in 1996, if you take a look at P-2, is
16  that the code of conduct?
17        A.    To the best of my
18  recollection, yes.
19        Q.    Okay.  Do you know if the
20  code of conduct has changed throughout the
21  years that you've been at the mall?
22        A.    Yes, it has to small varying
23  degrees, different language or in addition
24  to, specifically I know the one now is
25  changed, so I can't specifically say on

1  escalator and at the top of the escalator,
2  I overheard loud voices from the area of
3  where the problem was.
4          Q.    What did you -- did you hear
5  anything specifically?
6          A.    I don't recall. I know there
7  was loud -- a general overall loud
8  conversation and as I got closer to it, it
9  was loud, profane language being said.
10         Q.    Okay. Now, where did you end
11 up -- where was it where you first -- where
12 were you when you first heard the loud
13 conversation?
14         A.    At the top of the food court
15 escalator.
16         Q.    Is this the same escalator
17 that everybody went up to get to the second
18 floor that you went up and Mr. Torres went
19 up to get to the second floor?
20         A.    Yes.
21         Q.    The top of the escalator, is
22 that a hundred feet away from Lord &
23 Taylor?
24         A.    Very possibly more than a
25 hundred feet away.

NIZIANKIEWICZ & MILLER REPORTING SERVICES
972 Tolland Street
East Hartford, Connecticut  06108
(860) 291-9191    FAX: (860) 528-1972

81

1   Q.   How far is it away from the
2   group that you eventually went over to?
3   A.   A hundred plus or so feet
4   away.  They were at their original location
5   which is on the other side of Lord &
6   Taylor.
7   Q.   When you hit the top of the
8   escalator, you heard loud conversation?
9   A.   Loud.  Yes.
10  Q.   And could you see anybody at
11  that point?
12  A.   In looking down, I could see
13  the security officer and the group of
14  individuals.
15  Q.   How many individuals did you
16  see?
17  A.   At that point, I believe
18  there was four.
19  Q.   And you didn't hear any
20  conversation, specific conversation but you
21  heard voices?
22  A.   It was loud.  I wouldn't even
23  say conversation, it was just loud
24  language.
25  Q.   Well, you said loud language?

82

```
 1            A.    Just a loud -- it wasn't --
 2     it's not a conversation if you're just
 3     screaming why are we -- what's going on --
 4     it was just loud.
 5            Q.    Is that what you heard,
 6     loud --
 7            A.    Loud words.
 8            Q.    Did you hear what's going on?
 9     Did you hear those words?
10            A.    No.
11            Q.    Okay.  You just heard loud
12     words?
13            A.    Yes.
14            Q.    But you don't know what those
15     words were?
16                  MR. MCCORMACK:  Objection to
17          form.
18                  MR. FLANAGAN:  Objection
19          to the form.
20                  MR. MCCORMACK:  He
21          described them as profanities.
22                  MS. HARDAWAY: Let him
23          answer the question.
24                  MR. MCCORMACK:  I did.
25            Q.    (By Ms. Hardaway) What are
```

**NIZIANKIEWICZ & MILLER REPORTING SERVICES**
972 Tolland Street
East Hartford, Connecticut  06108
(860) 291-9191        FAX:  (860) 528-1972