FILED

2004 JUN 18 P 4:40

DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD A. MYERS, ET AL        :

:        CIVIL ACTION NO:
:        3:03-CV-00373 (RNC)
VS.                            :
:
TOWNSHIP OF TRUMBULL, ET AL    :
    Defendant                  :        JUNE 18, 2004

## LOCAL RULE 56 (a) STATEMENT

Pursuant to Local Rule 56, the Defendant, Spectaguard and Michael (LNU), submit the following recitation of the undisputed material facts as part of the Motion for Summary Judgment against the Plaintiffs, Richard A. Myers, Shernette Clark, Kenneth Bingham and Floyd MacLean.

The Defendants submit that there is no genuine issue to be tried as to each of the following:

1.      Plaintiffs went to Westfield Shoppingtown Trumbull ("the Mall") on July 31, 2001 at approximately 9:00 p.m. (See Second Amended Complaint (hereinafter "the Complaint") ¶ 16; Deposition of Shernette Clark, p. 26, excerpts attached as Exhibit A).

2.      On July 31, 2001, the Plaintiffs were accompanied by three other individuals who are not parties to this action; Olando Wilson, Marvin Buntin and Nelay Grant. (See Deposition of Richard Myers, pp. 19-20, excepts attached as Exhibit B;

Plaintiffs' Responses to Trumbull's Interrogatories, no. 3, copies attached as Exhibits D through G.

    3.        While at the Mall, Shernette Clark, Richard Myers and Olando Wilson went shopping at Lord & Taylor while the rest of the group waited outside the Lord & Taylor store. (See Complaint, ¶ 18; Exhibit A, p. 33-34; Exhibit B, pp.31; Deposition of Kenneth Bingham, p.25, excerpts attached as Exhibit C).

    4.        The Plaintiffs had been at the Mall for at least 20 to 30 minutes, before the smaller group went into Lord & Taylor. (Exhibit B, p.31; Exhibit C, p.34).

    5.        The Plaintiffs were not approached by security guards during the 20 to 30 minutes they were first in the Mall. (Exhibit B, pp. 80-81; Exhibit C, p.24).

    6.        While Clark, Myers and Wilson were in Lord & Taylor, security guards approached the members of the group who were waiting out side of the Lord k& Taylor. (Complaint, ¶ 19; Exhibit A., p. 34; Exhibit B, p.33; Exhibit C, p. 33-34).

    7.        Security guards had been called to investigate a compliant made by an employee of a store in the Mall as to the conduct of the group outside Lord & Taylor. (See Westfield Shoppingtown Trumbull Matthew Wilkins Witness Statement, copy attached as Exhibit H; Westfield Shoppingtown Trumbull Security Report, copy attached as Exhibit I; Westfield Shoppingtown Trumbull Stephanie Caldwell Witness Statement, copy attached as Exhibit J.)

    8.        When the security guards arrived, members of the group outside

Lord & Taylor began to use profanities, including Marvin Buntin who said, "We ain't doing shit." (Exhibit C, pp. 34-35; Exhibit I; Exhibit J).

9. The Plaintiff were not talking to two white girls who had given them a flyer at the time that the security guards approached the group outside of Lord & Taylor. (Compare Complaint, ¶ 19, with Exhibit B, p. 41; Exhibit C, pp. 31-32).

10. When Clark, Myers and Wilson returned from shopping at Lord & Taylor, they observed the security guards talking to their friends, and they approached the security guards to ask what was happening. (Complaint ¶¶ 21-22; Exhibit A, p. 35; Exhibit B, pp. 33-34).

11. When the entire group was outside Lord & Taylor, several of the Plaintiffs and their friends were using profanities towards the security guards. (Exhibit A, pp. 63-65; Exhibit B, pp. 35-36, 59; Exhibit C, pp. 35-37; Exhibit I).

12. The Plaintiffs and their friends were asked to leave the Mall by security guards. (Complaint, ¶¶ 20, 22; Exhibit A, p. 35; Exhibit C, pp. 34-35).

13. The Mall has a set of rules of conduct that patrons are expected to abide by while shopping. These rules of conduct were in effect on and prior to July 31, 2001. (See Trumbull Shopping Park Rules of Conduct, copy attached as Exhibit K).

14. The Plaintiffs were given a card listing the rules of conduct of the Mall. (Complaint, ¶ 27; Exhibit B, p. 38; Exhibit C, pp. 75-76, 79-80).

15. The security guards informed the Plaintiffs and their friends of at

least two of the rules they had violated at the Mall. (Exhibit B, pp. 37-38).

16.     The reasons that the Plaintiffs and their friends were asked to leave the Mall was that they were being loud and disruptive and using profanities. (Exhibit I; Deposition of Michael Hokansen, pp. 13, 80, 84, excerpts attached as Exhibit L).

17.     The Plaintiffs and their friends gave the security guards a hard time about leaving the Mall after they had been asked to leave. (Exhibit B, p. 103, 110-111; Exhibit H).

18.     After they had been asked to leave the Mall by security guards, the Plaintiffs and their friends ignored the security guards and continued to go into several stores as they walked through the Mall. (Exhibit A, pp.35-36; Exhibit B, p. 35; Exhibit C, pp. 34-35).

19.     Security guards followed the Plaintiffs and their friends, repeating their requests that the Plaintiffs, and their friends leave the Mall. (Exhibit A, p. 40; Exhibit B, p. 37; Exhibit C, pp. 34-35, 73-74).

20.     The Plaintiffs and their friends walked slowly and took a circuitous route at the Mall. (Exhibit C, p. 78; Exhibit I; Exhibit L, pp.104-109).

21.     Police officers of the Town of Trumbull were waiting outside the door when the Plaintiffs and their friends exited the doors of the Mall. (Exhibit A, p. 42; Exhibit B, p. 43: Exhibit C, p. 39).

22.     At no time did security guards detain or guide the Plaintiffs to any

particular door in leaving the Mall. (Exhibit L, pp. 104-109).

23.     Police officers asked the Plaintiffs and their friends for identification and checked the identification, which was produced. (Complaint, ¶ 25; Exhibit C, pp. 40-41).

24.     By the time the officers were finished checking the groups' identification, the Mall was closing for the night.

25.     After the police officers had checked the identification produced, they ordered the Plaintiffs to leave the Mall. (Complaint, ¶ 26; Exhibit A., p. 48).

26.     The police officers did not use any racial slurs towards the Plaintiffs or their friends. (Exhibit A, p. 46; Exhibit B, p. 48; Exhibits D through G, No. 23).

27.     The police officers did not make any negative comments about the Plaintiffs national origins. (Exhibit B, p. 48; Exhibits D through G, no. 24)

28.     The Plaintiffs' allegations of racial discrimination are only an assumption by the Plaintiffs based upon the various Defendants' race that the Defendants' actions were racially motivated. (Exhibit A, p. 46).

29.     The Plaintiffs have no evidence to support their claim that the various Defendants conspired with one another to deprive the Plaintiffs of their rights. (Exhibit A, pp. 116-17; Exhibit C, p. 111).

30.     It was reasonable for police to come to the Mall to investigate the

conduct of the Plaintiffs and their friends in light of the complaints, which were made. (See Exhibit A, pp. 127-128; Exhibit B, p. 130; Exhibit C, pp. 51-41; Exhibit H).

31. The Plaintiffs did not sustain any physical injuries during any part of the incident at the Mall. (Exhibit A, pp.49-50; Exhibit B, p. 53; Exhibit C, p. 55).

32. The Plaintiffs have not suffered any monetary loss as a result of any part of the incident at the Mall. (Exhibit A., p. 50; Exhibit B, pp. 53-54; Exhibit C, pp. 55-56, 88).

33. The Plaintiffs have not sought any counseling or psychological treatment for the mental psychological, and emotional injuries they claim to have suffered as a result of the incidents at the Mall. (Exhibit A., pp. 50-51; Exhibit B., pp. 52-53; Exhibit C, p. 89).

34. The extent of the mental, psychological and emotional injuries, claimed by the Plaintiffs to be the result of the incident at the Mall, was greatly exacerbated by the Plaintiffs' decision to publicize the incident in a television interview several months after the incident. (Exhibit A., pp. 70-72; Exhibit B, pp. 75-76, 106-107; Exhibit C, pp. 87-88).

THE DEFENDANTS, SPECTAGUARD
and MICHAEL (LNU),

BY: _____
Robert J. Flanagan, Jr., Esq.
Cella, Flanagan & Weber, P.C.
21 Washington Avenue
North Haven, CT 06473
Tel. (203) 239-5851
 Federal Bar No. 18549

## CERTIFICATION

**THIS IS TO CERTIFY** that a copy of the foregoing was mailed, postage prepaid, to the following counsel:

Cynthia H. Hardaway, Esq.
Hunt, Hamlin & Ridley
Military Park Building
60 Park Place, Suite 1602
Newark, NJ 07102

Michael T. McCormack, Esq.
Tyler, Cooper & Alcorn, LLP
185 Asylum Street
CityPlace I
35th Floor
Hartford, CT 06103-3802

Stuart Brown, Esq.
Hassett & George
555 Franklin Avenue
Hartford, CT 06114

ROBERT J. FLANAGAN, JR.
6/18/04

Cella, Flanagan & Weber, P.C.
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue   P.O. Box 221   North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974