FILED

2004 JUN 18  P 4: 39

U.S. DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD A. MYERS, ET AL, | : | |
| Plaintiffs | : | CIVIL ACTION NO: |
| | : | 3:03-CV-00373 (RNC) |
| V. | : | |
| | : | |
| TOWNSHIP OF TRUMBULL, ET AL, | : | |
| Defendants | : | JUNE 18, 2004 |

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

### I.   INTRODUCTION

Plaintiffs filed this case against twenty-seven separate defendants, including

Westfield Shoppingtown Trumbull (improperly identified in the Complaint as Westfield

Shoppingtown) (the "Trumbull Mall"). The sum and substance of plaintiffs allegations

are that they were discriminated against when employees of co-defendant Spectaguard

Acquisitions, LLC ("Spectaguard") asked the plaintiffs to leave the Trumbull Mall on the

night of July 31, 2001 after receiving several complaints about the plaintiffs'

inappropriate and disruptive behavior, and after members of the plaintiffs' group shouted

profanities directly at Spectaguard security personnel once they responded to investigate

the complaint. Spectaguard was an independent security company with whom Westfield

Corporation, Inc. (Westfield") contracted to provide security services at the Trumbull

Mall.

1

**Cella, Flanagan & Weber, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue   P.O. Box 221   North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

Plaintiffs remaining complaints include that all defendants conspired to discriminate against them in violation of 42 U.S.C. §1985, that members of the Trumbull Police Department illegally detained them after plaintiffs voluntarily exited the Trumbull Mall, that members of the Trumbull Police Department, acting "under color of law,: discriminated against them in violation of 42 U.S.C. § 1983,[1] that all defendants discriminated against plaintiffs in violation of 42 U.S.C. §§1981 and 2000a, that unidentifiable John/Jane Doe defendants violated a variety of federal and New Jersey state laws, and that the Town of Trumbull is liable for plaintiffs' alleged damages under federal and state municipal law.[2]

## II.    STATEMENT OF FACTS

This case arises from an alleged incident that occurred at West Field Shoppingtown Trumbull in Trumbull, Connecticut on July 31, 2001. See Amended Complaint.

Plaintiffs allege that they entered the Trumbull Mall at approximately 9:00 p.m. on July 31, 2001.[3] Amended Complaint at ¶16. Plaintiffs Shernette Clark ("Clark") and

---

[1] The named defendant officer is Officer Coppola, I.D. #24 (first name unknown). As this claim is clearly not directed to the Trumbull Mall, and the law is clear that a claim for tortuous conduct by a private merchant cannot be transformed into an action undertaken by the state or under color of law, see Newman v. Bloomingdale's, 543 F.Supp. 1029, 1031 (S.D.N.Y. 1982), it need not be addressed in this motion for summary judgment.

[2] This claim also appears to be a claim against the defendant Town of Trumbull only. Accordingly, like count three, this claim is also moot for purposes of the Trumbull Mall's motion for summary judgment.

[3] No plaintiff alleges additional or different facts to support any of the claims contained in their jointly filed complaint.

2

Richard Myers ("Myers") proceeded to the Lord and Taylor Store where they shopped

for a short period of time. Deposition of Richard Myers ("Myers Dep.") at 31, relevant

portions attached to Spectaguard and Michael (LNU)'s Local Rule 56(a) Statement

("Rule 56(a) Statement") as Exhibit A. While Clark and Myers shopped, Plaintiffs

Kenneth Bingham ("Bingham") and Floyd McLean("McLean"), along with several other

male friends, waited on a bench located outside the Lord and Taylor store. Myers Depo.

at 32-33; Deposition testimony of Kenneth Bingham ("Bingham Depo.;") at 25-26,

relevant portions attached as Exhibit C to Rule 56(a) Statement. While their friends

shopped, Bingham and McLean were passing the time by flirting and interacting with

young female patrons of the Trumbull Mall.

 While Myers and Clark shopped at Lord and Taylor, at approximately 9:12 p.m.,

Spectaguard, the security company with whom Westfield contracted to provide security

at the Trumbull Mall received a report of a disturbance outside Lord and Taylor.

Deposition of Michael Hokanson at 135-137, attached as Exhibit L to Rule 56(a)

statement. When the Spectaguard security guards arrived outside of the Lord and Taylor

store, the members of the plaintiffs' group outside the store were loud and disruptive.

Hokanson Dep. Ex. L at 80. Myers and Clark rejoined their group after exiting Lord and

Taylor. After they rejoined their group, members of the plaintiffs group were using

profanity towards the security guards and being difficult. Deposition of Shernette Clark

3

**Cella, Flanagan & Weber, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue   P.O. Box 221   North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

at 63-65 attached as Exhibit A to Rule 56(a) statement; Myers Depo., Ex B, at 35-36; Bingham Depo. Exhibit C at 35-37.

At some point, the security guards requested the plaintiffs' group to leave the Trumbull Mall. Bingham Depo. Exhibit C at 34-35; Clark Depo. Exhibit A at 35; Hokanson Depo. Exhibit L at 13, 92-93. The plaintiffs, however, did not leave. Instead the plaintiffs ignored the security guards' requests and Myers and Clark proceeded to enter another store. Myers Depo., Ex. B at 34-35; Clark Depo., Exhibit A at 35-36. In particular, when requested to leave by the security guards, one of the members of the group shouted, "I ain't doing shit." Bingham Depo., Ex. C at 34-36.

The remaining members of the plaintiffs' group continued to be disruptive and rowdy as they moved through the Trumbull Mall towards an exit. See Security Report attached as Exhibit I to Rule 56(a) Statement. The Spectaguard security guards followed the plaintiffs' group, repeating their requests that the plaintiffs leave the mall. Myers Depo., Ex. B at 37; Clark Depo., Ex. A at 40; Bingham Depo. Ex. C at 34-35. The plaintiffs and their friends walked slowly throughout the mall, taking a circuitous route in leaving the mall before eventually exiting the mall. Bingham Depo., Ex. C at 78. Eventually, the entire group voluntarily exited the mall. Myers Depo., Ex. B at 66-68, 110-111; Bingham Depo., Ex. C at 78-79; Hokanson Depo., Ex. L at 108-112.

The Trumbull Mall had a set of rules of conduct governing the behavior of patrons of the Trumbull Mall. Hokanson Depo., Ex. L at 45-46. The Spectaguard

4

officers provided plaintiffs with a copy of the rules and orally informed plaintiffs of the relevant rules that they had violated, namely that they were using offensive language and making lewd and inappropriate remarks and that they were in a large group that was disruptive of shopping center function. Amended Complaint at ¶27; Myers Depo. Ex. B at 47-38; Bingham Depo., Ex. C at 75-76. 79-80.

Upon exiting the Trumbull Mall, plaintiffs were met by members of the Trumbull Police Department who had been called by the Spectaguard security guards when the plaintiffs did not leave the mall and continued to be disruptive. <u>See</u> Hokanson Depo., Ex. L at 146-149; Clark Depo., Ex. A at 42; Myers Depo., Ex. B at 43; Bingham Depo., Ex. C at 39. According to the plaintiffs, they were detained by the police while the police obtained identification from plaintiffs. Amended Complaint at ¶25; Clark Depo., Ex. B at 42-43; Bingham Depo. Ex. C at 40-41.

At no point during the incident on July 31, 2001 did the Spectaguard security guards or Trumbull Police use racial slurs or make inappropriate racially motivated comments to the plaintiffs. <u>See</u> Clark Depo., Ex. A at 82. After the police checked the plaintiffs' identifications, the police told the plaintiffs to leave the Trumbull Mall parking lot. <u>See</u> Amended Complaint at ¶26; Clark Depo., Ex. A at 48.

## III.    <u>LAW AND ARGUMENT</u>

### A.    <u>Standard for Summary Judgment</u>

The Federal Rules of Civil Procedure provide that a party is entitled to summary

**Cella, Flanagan & Weber, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue    P.O. Box 221    North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

judgment "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 c. When the moving party is a defendant, summary judgment should be entered "against [plaintiff] who fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Caldwell v. American Basketball Assn., Inc., 825 F. Supp. 558, 565-66 (S.D.N.Y. 1993). Thus, if the plaintiff's evidence of essential elements of its claims is "merely colorable or "not significantly probative," summary judgment must be granted for defendants. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). A plaintiff may not successfully oppose a summary judgment motion by relying "upon mere speculation or conjecture as to the true nature of the facts." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987). Rather, the non-moving party must "bring to the district court's attention some affirmative indication that his version of the relevant events is not fanciful." "Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980). Thus, to survive a motion for summary judgment, a plaintiff cannot rely on conclusory allegations and/or unsupported assertions. See Celotex, 477 U.S. at 325.

The Second Circuit has repeatedly stressed the availability and virtue of summary judgment. In Knight, 804 F.2d 9, then Chief Judge Feinberg made it clear that the

Cella, Flanagan & Weber, P.C.
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue    P.O. Box 221    North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

Second Circuit looks with favor upon summary judgment motions and expressed regret

over any misperception that it does not.  Id. at 12.  This District has recognized that

disfavor of summary judgment has been "jettisoned," and views the procedure as an

"effective and correct method of avoiding protracted trials."  Nichols v. Planning &

Zoning Comm'n of Stratford, 667 F. Supp. 72, 74 (D.Conn. 1987)

Applying these principles and for the reasons set forth in this memorandum, this

Court should grant Spectaguard Acquisition LLC and Michael (LNU)'s motion for

summary judgment on the plaintiffs' Amended Complaint in its entirety.

**Summary Judgment Should be Granted as to Plaintiffs' Count Four Public**

**Accommodation Claims under 42 U.S.C. §2000a.**

**1.     Plaintiffs' §2000a claims must fail because Plaintiffs failed to exhaust
         their administrative remedies, which is a pre-requisite to filing suit.**

In Count Four of their Complaint, Plaintiffs allege generally that all "[d]efendants

discriminated against Plaintiffs [sic] by denying them access to a public accommodation

based on their race and national origin. . .in violation of 42 U.S.C. §§ 1982 and 2000 (a)."

Amended Complaint at ¶39.  Plaintiffs' federal public accommodation claims must fail

because Plaintiffs have failed to satisfy the jurisdictional prerequisites.

It is well established that a Plaintiffs' exhaustion of administrative processes for

filing a claim for any type of discrimination under 42 U.S.C. §2000a is a condition

precedent to filing suit in the district court, rather than a jurisdictional prerequisite.  See

Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982) (holding that the

7

administrative provisions requiring an employee to pursue a charge of discrimination with the EEOC are conditions precedent to suit subject to waiver, tolling and estoppel);. When a party fails to fulfill the specific condition precedent to filing suit in federal court under 42 U.S.C. §2000a the party is permanently foreclosed from meeting the condition or statutory requirement. See, e.g., Truitt v. County of Wayne, 148 F.3d 644, 646-7 (6th Cir. 1998) ("we hold that [an administrative condition precedent requiring a plaintiff to file suit within ninety days of receiving a right to sue letter from the EEOC] is not a jurisdictional requirement but, instead, is a timing requirement similar to a statute of limitations, subject to waiver, estoppel and equitable tolling."). Simply stated, the party is unable to rewind the clock, fulfill the condition/file the action within the requisite time period, and proceed to an adjudication of his or her claim.

42 U.S.C. §2000a clearly establishes that prior to filing a discrimination suit in a state that has laws prohibiting the alleged discriminatory practice, the plaintiff must provide the appointed state agency with written notice of the alleged act or practice. Specifically, §2000a provides:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State, or political subdivision of a State, which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) of this section before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may

8

stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

42 U.S.C. §2000a.-3(c).

Connecticut has statutory provisions that prohibit discrimination in places public accommodation. See, Conn. Gen. Stat. §46a-63 et seq. And, Connecticut has a statutory provision authorizing a State or local authority to grant or seek relief from this prohibited practice. Pursuant to Conn. Gen. Stat. §46a-100, "[a]ny person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with §46a-82[4] and who has obtained a release from the commission in accordance with §46a-83a or §46a-101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business." Id.  §46a-101 that "[n]o action may be brought in accordance with §46-100 unless the complainant has received a release from the commission in accordance with the provision of this section." Id.

As Connecticut has statutory provisions both prohibiting discrimination in places of public accommodation and providing a mechanism for seeking relief, the Plaintiffs are required to first avail themselves of the state administrative remedies before proceeding in federal court. There is no evidence that any of the Plaintiffs in this action submitted

---

[4] § 46a-82(a) provides that "[a]ny person claiming to be aggrieved by an alleged discriminatory practice, except for an alleged violation of § 46a-68, may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission." Id.

9

any claims to the Connecticut Commission of Human Rights and Opportunities ("CHRO"), or any other administrative agency. "Failure to follow administrative procedures in pursuing a claim of discrimination forecloses access to judicial relief because it deprives the trial court of subject matter jurisdiction." Sullivan v. Bd of Police Commissioners of City of Waterbury, 196 Conn. 208, 491 A.2d 1096 (1985); see also Garcia v. Saint Mary's Hosp., 46 F.Supp.2d 140, 142-146 (D.Conn. 1999); Brewer v. Wilcox Trucking, Inc., 1997 WL 688778, 1997 Conn.Super. LEXIS 287 (1997) (court lacked subject matter jurisdiction inasmuch as Plaintiff had failed to exhaust his administrative remedies). As the Plaintiffs have failed to meet the prerequisite before proceeding in federal court, the Court need not reach the merits of their claims under 42 U.S.C. §2000a and summary judgment should enter for the Spectaguard Defendants on this claim contained in Count Four.

### 2.    In The Alternative, Plaintiffs' §2000a Claims Must Fail Because The Mall In Question Is Not A Place Of Public Accommodation Under The Law.

As noted above, in court four of their Amended Complaint, Plaintiffs bring claims against all of the many Defendants for race and national origin-based denial of a public accommodation under 42 U.S.C. §2000a. Even if the Plaintiffs had fulfilled the prerequisites to filing these claims, the Spectaguard Defendants would still be entitled to a summary judgment.

10

Based upon a plain reading 42 U.S.C. §2000a(b), the Mall in question (referred to in the Plaintiffs' Complaint as "Westfield Shoppingtown Trumbull and hereinafter as "Defendant, Westfield") is not a place of public accommodation.  42 U.S.C. Section 2000a(b) provides:

> Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action: (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence; (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located at the premises of any retail establishment; or any gasoline station; (3) any motion picture house, theater, concert hall, sports arena, stadium or other place or exhibition or entertainment; and (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. §2000a(b).

The Plaintiffs allege that the Spectaguard Defendants "discriminated against plaintiff by denying them access to a place of public accommodation."  Amended Complaint at ¶39.  Plaintiffs also allege that the Defendant, Westfield is "a shopping center open to the general public for business purposes, " Amended Complaint at ¶16, and that the Defendant, Westfield "consists of various stores specializing in the sale of clothing articles, food products, and general merchandise." Id. at ¶17.  While it is true

11

that the list of covered establishments traditionally has been construed broadly, <u>Welsh v. Boy Scouts of America</u>, 993 F.2d 1267, 1269 (7th Cir.1993), the Plaintiffs do not specifically allege that the Defendant, Westfield is a place of public accommodation covered by the statute.

As a threshold matter, the Defendant, Westfield is not an establishment within the meaning of §2000(b). Courts have found covered establishments include, *inter alia*: health spas, [5] golf clubs, [6] and beach clubs, [7] but the Act clearly does not include retail stores and food markets because there has been little, if any, discrimination in the operation of these establishments. <u>Newman v. Piggie Park Enterprises</u>, 377 F.2d 433 (4th Cir. 1967), *aff'd*, 390 U.S. 400, 88 S.Ct. 9674, 19 L.Ed. 2d 1263 (1968). None of the cases addressing a covered establishment has specifically found that a shopping mall falls within the meaning of the statute. Notably, courts have found that shopping malls are not covered establishments under the statute. <u>See</u>, <u>e.g.</u>, <u>Halton, et al v. Great Clips, et al</u>, 94 F.Supp.2d 856, 863 (N.D. Ohio 2000). In addition, if Congress had intended to include, within the meaning of the statute, other types of establishments such as a service establishment, it could have amended Title II over the three decades which have passed since Congress enacted the statute.

---

[5] <u>Rousseve v. Shape Spa for Health and Beauty, Inc.</u>, 516 F.2d 64 (5th Cir. 1975); <u>Johnson v. Brace</u>, 472 F.Supp. 1056 (E.D. Ark. 1979).

[6] <u>Evans v. Laurel Links, Inc.</u>, 261 F.Supp. 474 (E.D. Va. 1966); <u>Anderson v. Pass Christian Isles Golf Club, Inc.</u>, 4888 F.2d 855 (5th Cir. 1974).

[7] <u>United States v. Beach Associates, Inc.</u>, 286 F.Supp. 801 (D.Md. 1968)

12

**Cella, Flanagan & Weber, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue    P.O. Box 221    North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

"This inaction by Congress could not be a mere oversight or an expectation that courts would broadly interpret the statute to include basically any type of establishment because Congress has subsequently defined 'public accommodation' more broadly." Id. at 862; see also the Americans with Disabilities Act, 42 U.S.C. §12181. [8]

In Halton, Plaintiffs alleged that Cleveland Clips, a hair salon located within the premises of a shopping plaza, which also contained, for example, restaurants, should be deemed a place of public accommodation and deemed a covered establishment under 42 U.S.C. §2000a. Halton, 94 F.Supp. 2d at 861. Plaintiffs claimed that the hair salon held itself out as serving patrons of the other allegedly covered establishments within the plaza and should therefore, also be covered. Id. The court in that case held that Plaintiff's interpretation of the statute was incorrect because a covered entity under the statute "does not include an entire shopping center or mall where the party has no control over who the other tenants may be and whether the other tenants will operate covered establishments."

---

[8] 42 U.S.C. §12181(7) provides: Public accommodation
The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce-- (A) an in, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more then five rooms for rent or hire an that is actually occupied by the proprietor of such establishment as the residence of such proprietor; (B) a restaurant, bar, or other establishment serving food or drink; (C) a motion picture house, theater, concert hall, stadium, or other place of exhibitions or entertainment; (D) an auditorium, convention center, lecture hall, or other place of public gathering; (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment; (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment; (G) a terminal, depot, or other station used for specified public transportation; (H) a museum, library, gallery, or other place of public display or collection; (I) a park, zoo, amusement park, or other place of recreation; (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education; (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

**Cella, Flanagan & Weber, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue     P.O. Box 221     North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

Id. at 863. The court reasoned that if it read the statute otherwise, "a place of public

accommodation would depend upon who the other tenants of a shopping center happened

to be on a particular day. One day a business may be covered because another tenant

operates a covered establishment and the next day, if a covered establishment vacates a

shopping center, other tenants would not fall within the meaning of the statute." Id. The

court went on to state that "Congress could not have intended such a confusing and

inconsistent result which depends upon such tenuous circumstances which are completely

out of the control of an accused establishment." Id.

As in Halton, the Plaintiff's interpretation of the statute in this case "would bring

every establishment in any mall or any shopping center within the statute's purview. In

that event, Congress could have just as easily included in §2000a(b) all retail

establishments and/or all shopping centers when it enacted Title II or Congress could

have subsequently amended the statute to include such establishments." Id. at 863.

Because the Defendant, Westfield is not a place of public accommodation within

the meaning of 42 U.S.C. §2000a, all Plaintiff's claims based upon this statutory section

must fail. Accordingly, the Spectaguard Defendants are entitled to summary judgment on

this claim.

> **D.    Summary Judgment Should Be Granted As To Plaintiffs' Count Four 42 U.S.C. §1981 Claims Because Plaintiffs Cannot Satisfy The Elements of Prima Facie Case.**

42 U.S.C. §1981 provides:

14

**Cella, Flanagan & Weber, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue    P.O. Box 221    North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same rights in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all law and proceedings for the security of persons and property is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. (c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. §1981. To prevail on a claim under §1981, a Plaintiff must establish, inter alia,

intentional race discrimination.[9] See Edwards v. Acadia Realty Trust, Inc., et al, 141

F.Supp. 2d 1340, 1345 (M.D. Fla. 2001). As the court noted in Edwards.

> The [s]ine qua non of a complaint under §1981 is a showing of racial discrimination ... The Court recognizes that motive and intent are crucial in determining whether an alleged violation of §1981 has occurred. But just because racial animus is important, that does not suspend the application of Rule 56. In response to the motion for summary judgment the Plaintiffs presented no significant probative evidence either to support the allegations of racial discrimination in the complaint or to show that a genuine issue as to a material fact exists Simple dissatisfaction with the results of the testing does not translate into racial discrimination. The Court is satisfied that whatever the result of the academic placement testing is in Dallas County no racial animus is present. Accordingly, the defendants' motion for summary judgment as to the §1981 claim is granted.

---

[9] To establish a claim under §1981 a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.). See, e.g., Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085 2d Cir. 1993); Baker v McDonald's Corp., 68 F.Supp. 1474, 1481 (S.D. Fla. 1987), aff'd 865 F.2d 1272 (11th Cir 1988), cert. denied, 493 U.S. 812, 110 S.Ct. 57 (1989).

15

141 F.Supp. 2d at 1345-46, quoting <u>Smith v. Dallas County Bd. of Educ.</u>, 480 F.Supp. 1324, 1336 (S.D. Ala. 1979) (citations omitted).

The Plaintiffs themselves testified that they did not believe that they were discriminated against.  For example, when asked about the Defendants alleged conspiracy to discriminate against him, Bingham testified "I wouldn't say they discriminate against me."  Bingham Depo. at 111-112.  In response to questions regarding what conduct by Trumbull police or Spectaguard constituted discrimination, Plaintiff Clark responded "the fact that we were asking questions, none were answered and you know, they're just telling us it's a private mall."  Clark Depo. at 47.  Most significantly, however, is that <u>no</u> Plaintiff has asserted any allegation or provided any testimony regarding facts they believe constitute specific intentional discrimination by the Spectaguard Defendants.

In short, there is no evidence that either Spectaguard or Michael (LNU) acted with discriminatory intent required for recovery under 42 U.S.C. §1981, and no reasonable jury could find discriminatory intent on this record.  <u>See Anderson</u>, 477 U.S. at 252, 106 S.Ct. 2505 ("The mere existence of a scintilla of evidence in support of the Plaintiffs' position will be insufficient; there must be evidence in which the jury could reasonably find for the Plaintiff."); <u>Accord Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997); <u>see also</u> <u>Bibs v. Bd. of Trs.</u>, 9 F.Supp. 2d 964, 973-74 (N.D.Ill. 1998) (granting summary judgment where there was "not a scintilla of evidence" of racial animus and "the undisputed evidence would not allow a reasonable jury to return a verdict in support

16

**Cella, Flanagan & Weber, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue   P.O. Box 221   North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

of [the] claim of racial discrimination"), aff'd, 191 F.3d 455 (7th Cir. 1999); Reyes v. City

of Dinuba, 1992 WL 289553, *1(9th Cir. Oct. 14, 1992) (affirming summary judgment

where "racial aniums [could] not reasonably be inferred from the evidence"); Zephyr v.

Ortho McNeil Pharm, 62 F.Supp. 2d 599, 607 (D.Conn. 1999) (granting summary

judgment where case "present[ed] the Court with nothing more than pure and legally

inadequate speculation that racial animus motivated the alleged discriminatory treatment

of the Plaintiff"); Brady v. Cheltenham Township, 1998 WL 164994, *7 (E.D. Pa. Apr. 9,

1998) finding that "[t]he evidence presented fail[ed] to bolster Plaintiffs' conclusory

allegations of racial animus, which are inadequate to create an issue of act that would

prevent the court from granting summary judgment" on §1981 claims).

Additionally, the only rights protected by §1981 are those related to the making

and enforcing of contracts. See, Patterson v. McLean Credit Union, 491 U.S. 164, 171,

109 S.Ct. 2363, 2369-70 (1989). Plaintiffs allege no facts to show that they were

deprived of the benefits and privileges of a contractual relationship as a result of any

conduct by the Spectaguard Defendants. They also allege no facts to indicate that they

had a contractual relationship with the Spectaguard Defendants. Moreover, Plaintiffs'

Amended Complaint together with their testimony establishes that they stopped freely

while inside the Mall, and that Myers and Clark actually made purchases in the *Lord &*

*Taylor* store without incident. See Bingham Depo. at 24; Myers Depo at 30-32; Clark

Depo. at 32-33. Thus, even if the Spectaguard Defendants here somehow bound

**Cella, Flanagan & Weber, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue    P.O. Box 221    North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

contractually to ensure that the tenants of the co-defendant Westfield provided shopping opportunities to Plaintiffs, Plaintiffs fail to allege sufficient facts to support their conclusory allegations in court four.

Plaintiffs have presented no evidence of intent or contractual relationship; accordingly the Spectaguard Defendants are entitled to summary judgment on Plaintiffs' claims under 42 U.S.C. §1981.[10]

**E.     The Spectaguard Defendants are Entitled to Summary Judgment on Count One Because Plaintiffs Cannot Establish a Prima Facie Case of Conspiracy Under 42 U.S.C. §1985.**

In the first count of Plaintiffs' Amended Complaint they allege that all Defendants "conspired with one another to deprive Plaintiffs of their rights as guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution" in violation of 42 U.S.C. §1985. Amended Complaint at ¶31. Specifically, Plaintiffs claim that the Spectaguard Defendants conspired with the Town of Trumbull, through its employee police officers and Defendant Westfield to discriminate against Plaintiffs by "forcing them to leave the Mall based on their race and national origin." Amended Complaint at ¶32.

To establish a prima facie case of conspiracy under §1985 against the Spectaguard Defendants, Plaintiffs must prove that the Spectaguard Defendants: (1) expressly or impliedly agreed to conspire with at least one other Defendant; (2) for the

---

[10] A court's disposition of the issue of racial animus renders moot the other issues pertinent to a section 1981 claim. See Edwards, 141 F.Supp. 2d at n.5.

18

**Cella, Flanagan & Weber, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue     P.O. Box 221     North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

purpose of depriving, either directly or indirectly, Plaintiffs of equal protection of the laws, or of equal privileges and immunities under the laws; (3) engaged in an act in furtherance of the conspiracy; (4) whereby each Plaintiff was either injured in his or her person or property or deprived of any right of a citizen of the United States. United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 3356 (1983). An essential element to a cause of action under §1985 is a requirement that the alleged discrimination took place because of the individual's race. Id. at 829, 103 S.Ct. at 3356. A Plaintiff must do more than make "vague, general or conclusory accusations to establish the existence of a conspiracy actionable under §1985(3)." Mass v. McClenahan, 893 F.Supp. 225 (S.D.N.Y. 1995), quoting Williams v. Reilly, 743 F.Supp. 168, 173-74 (S.D.N.Y. 1990); Mazurek v. Wolcott Bd. of Educ., 815 F.Supp. 71, 77 (D.Conn. 1993) ("It is well established that mere conclusory allegations are insufficient to establish a cause of action for a violation of civil rights."). Rather, the Plaintiff must plead specific material facts that show the existence of a conspiracy. See Winterland Concessions Co. v. Trela, 735 F.2d. 257, 262 (7th Cir. 1984) "Absent specific factual allegations as to the participation of a particular defendant in the conspiracy, Plaintiffs' §1985(3) claim cannot survive a motion for summary judgment by that Defendant." McPartland v. American Broadcasting Companies, Inc., 623 F.Supp. 1334, 1341 (S.D.N.Y. 1985).

Plaintiffs have failed to not allege any facts indicating that either of the Spectaguard Defendants entered into an agreement with the Town of Trumbull, the

Cella, Flanagan & Weber, P.C.
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue    P.O. Box 221    North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

Trumbull Police Department, Westfield, any of the named defendant's agents or employees, or anyone else with the goal of depriving Plaintiffs of their constitutional rights because of their race or national origin. Furthermore, Plaintiffs have alleged no facts to indicate that racial animus underlay the Defendants alleged conspiracy against Plaintiffs. Instead, Plaintiffs simply tack the phrase "based on their race and national origin" onto their allegations. Moreover, Plaintiffs confirmed that they had no facts to support their claims against Westfield under §1985 in their deposition testimony. For example, the following exchange took place during the deposition of Plaintiff, Richard Myers.:

> Q:  Now, in this lawsuit, you claim that people from Westfield conspired, had a plan with the security guards or the Town of Trumbull to discriminate against you. Are you aware of that claim?
>
> A:  No.
>
> Q:  Do you know of any facts to support that claim ?
>
> A:  They hired security guards.
>
> Q:  Did they hire the security guards to discriminate against you?
>
> A:  No. They hired the security guards who discriminated against us.
>
> Q:  Do you know of any plan by the Mall employees and the security company to discriminate against you?
>
> A:  No. I didn't see or heard any plans.

Myers Depo. at 103-04, Exh. B.

**Cella, Flanagan & Weber, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue    P.O. Box 221    North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

Plaintiff, Kenneth Bingham testified as follows:

Q:    The other question is do you have - what is your evidence or what
      is your basis for the claim that the security company and or its
      guards conspired with either Westfield or the Trumbull Police
      Department to discriminate against you?

A:    What is my basis if I could say, okay, they was planning to kick us
      out, I can't say that. I can't say they was sitting down and plan as
      soon as we walk in because I guarantee you, they didn't know if
      we was going to the mall or not so we went there and they just tell
      us we got to go and escort us straight out the mall.

Q:    Is it fair to say you have no information to support the claim that
      Spectaguard which is the security company or its employees, its
      guards conspired with either Westfield or with the Trumbull Police
      Department to discriminate against you?

A:    I wouldn't say they discriminate against me.

Bingham Depo. at 111-112, Exh. C.

Further, as Defendant Michael Hokanson (AKA Michael [LNU]) noted in his

Affidavit (attached) there was no conspiracy or plan to force the plaintiffs to leave the

mall on the alleged impermissible grounds.

It is clear that Plaintiffs have not, and cannot allege the essential elements of a

§1985 claim against the Spectaguard Defendants. Therefore, the Spectaguard Defendants

are entitled to a grant of summary judgment in its favor on the first count of Plaintiffs'

Amended Complaint.[11]

---

[11] In the fifth count of Plaintiff's Amended Complaint, they allege a violation of 42 U.S.C. §1985 against
defendants John and Jane Does. To the extent that this claim is directed to Spectaguard, Spectaguard is
entitled to summary judgment. Section 1986 provides a cause of action against anyone who "having
knowledge that any of the wrongs conspired to be done an mentioned in section 1985 are about to be

**Cella, Flanagan & Weber, P.C.**

ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue    P.O. Box 221    North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

**F.      The Evidence Is Insufficient As A Matter Of Law To Support A
         Claim for False Imprisonment Against Westfield**

In the second count of their Amended Complaint, Plaintiffs allege a claim for

false imprisonment under state and federal law against each of the Defendants.  Plaintiffs

claim that they were illegally detained in the Mall parking lot without being allowed to

leave for a specific period of time.  Amended Complaint at ¶35.  Based upon the

allegations and evidence presented, no reasonable juror could conclude that the Plaintiffs

were physically restrained against their will by the Spectaguard Defendants.  Plaintiffs

were not, therefore, falsely imprisoned, and Spectaguard and Michael (LNU) [The

Spectaguard Defendants] are entitled to summary judgment on this count.

False imprisonment is an intentional tort that consists of the unlawful restraint of

the physical liberty of one person by another person.  See Berry v. Loiseau, 223 Conn.

786, 820, 614 A.2d 414 (1992); Green v. Donroe, 186 Conn. 265, 267, 440 A.2d 973

(1982); Felix v. Hall-Brooke Sanitarium, 140 Conn. 496, 499, 101 A.2d 500 (1953).  "To

prevail on a claim of false imprisonment, the Plaintiff must prove that his physical liberty

has been restrained by the Defendant and that the restraint was against his will, that is

that he did not consent to the restraint or acquiesce in it willingly."  Berry, 223 Conn. at

---

committed and having power to prevent or aid, neglects to do so."  Katz v. Morgenthau, 709 F.Supp. 1219,
1236 (S.D.N.Y.), aff'd in part and rev'd in part on other grounds, 892 F.2d 20 (2d Cir. 1989).  Thus, a §1986
claim must be predicated upon a valid §1985 claim.  See Dacey v. Dorsey, 568 F.2d 275, 277 (2d Cir.),
cert. denied, 436 U.S. 906, 98 S.Ct. 2238 (1978).  Because Plaintiffs conclusory allegations together with
their innate lack of evidence are insufficient to sustain this notion for summary judgment on their section
1985 claims, their section 1986 claims as pled against Spectaguard must also fail.  See, e.g., Mazurek v.
Wolcott Bd. of Educ., 815 F.Supp. 71, 77 (D.Conn. 1993) ("It is well established that mere conclusory
allegations are insufficient to establish a cause of action for a violation of civil rights.").

**Cella, Flanagan & Weber, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue    P.O. Box 221    North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974

820 (quoting <u>Lo Sacco v. Young</u>, 20 Conn.App. 6, 19, 564 A.2d 610, <u>cert. denied</u>, 213

Conn. 808, 568 A.2d 793 (1989) (emphasis added).  "In a case of false imprisonment

there usually must be more than mental compulsion.  There must be a threat of present

(not future) force."  <u>Carr v. Devereaux Foundation, Inc.</u>, 1995 WL 541799 (Conn.Super.

1995) (quoting D Wright & J. Fitzgerald, Connecticut Law of Torts (3d ed.) Sec. 12, P.

15).  "a person is not liable for false imprisonment unless his act is done for the purpose

of imposing a confinement, or with knowledge that such confinement will, to a

substantial certainty, result from it." <u>Rivera v. Double A Transportation, Inc.</u>, 248 Conn.

21, 31, 727 A.2d 204 (1999).

      The evidence in the present case is insufficient as a matter of law for Plaintiffs to

recover damages against the Spectaguard Defendants for false imprisonment.  First, the

Plaintiffs testified during deposition that the <u>only</u> people who detained them were the

Trumbull Police Department.  <u>See, e.g.</u>, Myers Depo. at 75; Clark Depo. at 45-46; 115.

In response to the question, "But the only people who detained you were the Trumbull

Police Department", Myers responded "Yes." Myers Depo. at 75.  The following

exchange took place during Clark's deposition:

> Q:    And is it fair to say that no one from Westfield Shoppingtown
>        Trumbull detained you, correct ?
>
> A:    Well, apart from the police just having us there telling us we can't
>        move, we can't leave...
>
> Q:    It was the Town of Trumbull police ?

23

A:    Yes.

Q:    But other than those individuals, no one else detained you?

A:    No.

Clark Depo. at 117-118.

At no time did the Spectaguard Defendants unlawfully detain Plaintiffs and at no time did they threaten Plaintiffs with physical force to prevent them from leaving the mall.

There is no evidence from which a jury could conclude that the Spectaguard Defendants restrained Plaintiffs physical liberty against their will. In fact, it is undisputed that the Plaintiffs took a meandering, slow course to an exit when asked to leave the mall (See L Rule 56(a) statement of Defendants Spectaguard and Michael (LNU), Paragraph 20; Exhibit C, p. 78; Exhibit I; Exhibit L, pp. 104-109.) There is neither evidence that the Spectaguard Defendants intended to restrain Plaintiffs' liberty nor evidence of that sort of extreme recklessness required in the absence of evidence of intent for the plaintiffs' to prevail on a false imprisonment claim. See Rivera, 248 Conn. at 32.

Based upon the insufficient evidence, Westfield is entitled to summary judgment on count two on Plaintiffs' Amended Complaint.

24

## IV.    CONCLUSION:

For the foregoing reasons, the Defendants, Spectaguard and Michael (LNU) respectfully request that this Court enter summary judgment in their favor as to counts one, two, four and five of the Plaintiff's Amended Complaint.

THE DEFENDANTS, SPECTAGUARD and MICHAEL (LNU),

BY:    _____
Robert J. Flanagan, Jr., Esq.
Cella, Flanagan & Weber, P.C.
21 Washington Avenue
North Haven, CT 06473
Tel. (203) 239-5851
Federal Bar No. 18549

25

## CERTIFICATION

**THIS IS TO CERTIFY** that a copy of the foregoing was mailed, postage prepaid, to the following counsel:

Cynthia H. Hardaway, Esq.
Hunt, Hamlin & Ridley
Military Park Building
60 Park Place, Suite 1602
Newark, NJ 07102

Michael T. McCormack, Esq.
Tyler, Cooper & Alcorn, LLP
185 Asylum Street
CityPlace I
35th Floor
Hartford, CT 06103-3802

Stuart Brown, Esq.
Hassett & George
555 Franklin Avenue
Hartford, CT 06114

ROBERT J. FLANAGAN, JR.

6 | 18/04

**Cella, Flanagan & Weber, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
21 Washington Avenue    P.O. Box 221    North Haven, CT 06473-0221
TEL 203-239-5851 FAX 203-234-2974