HUNT, HAMLIN, & RIDLEY
Military Park Building
60 Park Place, Suite 1602
Newark, New Jersey  07102
973) 242-4471
Attorney(s) for Plaintiff(s)

FILED

2004 JUL 28  A 10: 56

U.S. DISTRICT COURT
HARTFORD, CT.

| RICHARD A. MYERS, SHERNETTE CLARK, KENNETH BINGHAM, FLOYD McLEAN | UNITED STATES DISTRICT COURT DISTRICT OF CONNECTICUT |
|---|---|
| Plaintiffs, | |
| v. | |
| TOWNSHIP OF TRUMBULL, OFFICER COPPOLA, I.D. # 24 (first name unknown) (individually and in his official capacity), OFFICER, I.D. #35 (name unknown) (individually and in his official capacity), SPECTAGUARD, MICHAEL (last name unknown), WESTFIELD SHOPPINGTOWN, JOHN DOES 1 through 10, JANE DOES 1 through 10, and ABC Corp. through XYZ, individually, jointly and severally, | CASE NO.:3:03 CV 373 (RNC) |
| Defendants. | July 26, 2004 |

## LOCAL RULE 56(a)2 STATEMENT

Pursuant to Local Rule 56, plaintiffs Richard Meyers, Shernette Clark, Kenneth Bingham, and Floyd McLean, hereby submit the following responses in support of their opposition to defendants' motion for summary judgment.

Plaintiff's submit the following responses to defendants' Township of Trumbull, Officer Coppola, I.D. #24, and Officer Leos, I.D. #35's Local Rule 56(a)1 statement:

1. Admitted.

2. Admitted.

3. Plaintiffs admit that Shernette Clark, Richard Meyers, and Olando Wilson went shopping at Lord & Taylor while the rest of the group waited for outside of Lord & Taylors in a waiting area where benches were located.

4. Admitted.

5. Admitted.

6. Admitted.

7. Denied. According to the deposition testimony of defendant Michael Hokanson, he and his partner Fernando Torres received a call on a "store complaint in the upper level of Lord & Taylor." (Deposition Transcript of Michael Hokanson, attached hereto as Exhibit A, at 76). At that time, Hokanson was not informed at to the nature of the complaint, or that any complaint had been lodged against the particular plaintiffs. (Exhibit A at 76, 101-102). Defendant's Exhibits J, L, and K, submitted in support of this paragraph, are not affidavits of witnesses competent to testify as to the facts at trial and/or evidence that would be admissible at trial, and therefore, should not be considered for the purpose of this motion.

8. Denied. The security guards arrived and demanded that plaintiffs' leave the mall with no explanation. When plaintiffs' asked the guards why they had to leave, one of the guards rudely responded "because he said so 2 seconds

ago," and began cursing at plaintiffs. Thereafter, Marvin Buntin responded, "he ain't doing shit." (Deposition Transcript of Kenneth Bingham, attached hereto as Exhibit B, at 33-36; Deposition Transcript of Shernette Clark, attached hereto as Exhibit D, at 62, 64, 82-85, 89, 110, 114).).

9. Plaintiffs admit that they were not talking to two white girls who had given them flyers at the time the security guards approached them.

10. Admitted.

11. Denied. Aside from Richard Meyers possibly using the word "hell," Marvin Buntin was the only member of the group to use the word "shit" in response to a rude comment by one of the security guards. Neither of these words, if they are to be considered profanity were directed towards the security guards, but made in response rude treatment and profane language used by security. (Exhibit B, at 71, Deposition Transcript of Floyd McLean, attached hereto as Exhibit C, at 55-56, Exhibit A, at 141, Exhibit D, at 62, 64, 82-85, 89, 110, 114).

12. Denied. Plaintiffs were told that they had to leave the Mall. (Exhibit D, at 35-36, 38, 63-64, 67; Exhibit A, at 93-99; Exhibit C, at 19-22; Exhibit B, at 70-71; Deposition Transcript of Richard Meyer attached hereto as Exhibit E, at 65).

3

13. Plaintiffs admit that on and prior to July 31, 2001, the Mall adopted a set of Rules of Conduct substantially the same as the Mall Rules of Conduct attached hereto as Exhibit F.

14. Denied. A card listing the Rules of Conduct of the Mall was given to Olando Wilson, who is not a plaintiff. (Exhibit E, at 73-74.)

15. Denied. Once plaintiffs and their friends were outside of the Mall, one of the security guards told plaintiff Richard Meyer that they had broken the Mall rules in that they were in a group of seven and that they had been "loud and talking in the hallway." (Exhibit E, at 38).

16. Denied. With the exception of one statement by Marvin Buntin which included the word "shit," plaintiff and their friends did not use profanity. They were neither loud, nor disruptive. Plaintiffs merely inquired of the security guards why they had to leave the Mall, and were not given an explanation by the guards while inside of the Mall. (Exhibit E, at 35, 102, 125; Exhibit B at 71, 75-76; Exhibit D, at 62, 62, 82-85, 89, 110, 114; Exhibit C, at 40-41, 55-56).

17. Denied. The plaintiffs and their friends did not give the guards a "hard time" about leaving. After being given no explanation as to why they had to leave, plaintiffs and their friends continued to ask the guards why they had to leave the Mall. Plaintiffs and their friends never refused

to leave the Mall. (Exhibit D at 118; Exhibit B, at 94; Exhibit E, at 85-86, 110-112, 118-122; Exhibit A, at 160).

18. Denied. Only Shernette Clark and Richard Meyers attempted to go inside of a photo store after the security guards initially told the other members of the group that they had to leave the Mall. (Exhibit D at 35-36; Exhibit E, at 36-37, 62-65).

19. Denied. The security guards surrounded plaintiffs and their friends, and herded them to an exit where the defendant police officers were waiting for them. The security guards restricted the movement of plaintiffs and their friends. (Exhibit C, at 21-22, 44-46, 48-49, 62, Exhibit D, at 35-36; Exhibit E, at 36-37, 62-65, 66-68; Exhibit B, at 34-35).

20. Denied. Plaintiffs and their friends, most of whom were at the Mall for the first time, were being guided and directed by the security guards. (Exhibit E, at 67-68; Exhibit C, at 62, 46-49; Exhibit A, at 94, 107-08, 112-13).

21. Admitted.

22. Denied. Officer Hokanson testified that the first time that he and Officer Torres spoke to the police officers directly was when plaintiffs and their friends were outside of the Mall. (Exhibit A, at 7-9). However, prior to that time, both Officer Hokanson and Torres contacted police officers through their radio dispatcher. (Exhibit A, at 7-

5

9).

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Denied. As to the defendant police officers, plaintiffs base their allegations of racial discrimination on the fact that five to six officers detained them outside of the Mall without their consent and without probable cause. The detention occurred after plaintiffs and their friends were trying to leave the Mall parking lot as directed by Mall security. (Exhibit E, at 45; Exhibit B, at 39-40; Exhibit C, at 23-25; Exhibit D, at 42-45; Exhibit A, at 11-12).

The only information the police officers had at the time from Mall security was that there were eight black people who were "unwanted" at the Mall. When the police arrived, they security guards told them that eight black males were told to leave the Mall. (Defendant police officers' Answers to Plaintiffs' Interrogatories, attached hereto as Exhibit G; Certified Copy of Police Trumbull Police Department Case/Incident Report, attached hereto as Exhibit H).

The police officers unlawfully detained plaintiffs and their friends for a period of approximately forty-five minutes to an hour, after the Mall had already closed from

6

business and there was no reason for plaintiffs and their friends to remain at the Mall. (Exhibit E, at 47; Exhibit B, at 41, Exhibit C, at 29, Exhibit D, at 45-46).

The officers record checked everyone's identification, and escorted at least two plaintiffs to their car in order to retrieve their identification. The officers also directed plaintiffs to "shut up" and "sit down", and refused to answer any questions from plaintiffs and their friends. The officers further threatened plaintiffs and their friends with arrest, and further told them that if they ever came back to the Mall that they would be arrested. (Exhibit A, at 19-21; Exhibit E, at 37, 68; Exhibit B, at 40, 42, 44-45, 47, 49; Exhibit C, at 25; Exhibit D, at 43, 45, 48).

In order to hide their behavior, the defendant officers falsified their police report to indicate that they had absolutely no contact with plaintiffs' group. The officers also covered their badges so that plaintiffs could not identify them. (Exhibit A, at 19-21, 126-27, 130; Exhibit E, at 43-45; Exhibit H).

28. Denied. The plaintiff security guards acted as agents of the Mall. (Exhibit F, Paragraph Two; Exhibit A, at 49-51). Without explanation, six or seven security guards surrounded and herded plaintiffs and their friends through the Mall towards an exit where the police officers, who had been

radioed by the security guards, were waiting. (Exhibit E, at 45, 67-68; Exhibit C, at 23-25, 62, 46-49; Exhibit A, at 6-9, 11-14, 94, 107-08, 112-13; Exhibit B, at 39-40, 113; Exhibit D, at 42-45). Police officers were informed by security that 8 black males were "unwanted" on their premises. (Exhibits G and H). The police immediately detained plaintiffs and their friends for forty-five minutes to an hour and thereafter told them that if they ever came back to the Mall, they would be arrested. (Exhibit A, at 19-21; Exhibit E, at 37, 68; Exhibit B, at 40, 42, 44-45, 47, 49; Exhibit C, at 25; Exhibit D, at 43, 45, 48).

29. Denied. The police officers behavior was not reasonable in that the plaintiffs and their friends were attempting to exit the Mall as directed by Mall security, and in fact were leaving the Mall area when the police unlawfully detained them for about an hour. The security guards summoned the police to the Mall to assist in removing plaintiffs, who were "unwanted" from the premises. The plaintiffs and their friends were attempting to leave when the officers arrived, stopped, and detained them without probable cause or any reason to believe that plaintiff and their friends were engaging in or had engaged in criminal activity. (Exhibit G and H; Exhibit E, at 45; Exhibit B, at 39-40; Exhibit C, at 23-25; Exhibit D, at 42-45; Exhibit A, at 11-12).

8

30. Admitted.

31. Admitted.

32. Admitted.

33. Denied.    Plaintiffs emotional damages were not exacerbated by their decision to publicize the incident in a television interview.  (Exhibit D, at 70-72; Exhibit E, at 75-76; 106-07; Exhibit B, at 87-88; Exhibit C, at 66-68).

Plaintiffs submit the following responses to defendant Westfield Shoppingtown Trumbull's Local Rule 56(a)1 statement:

1. Admitted.
2. Admitted.
3. Admitted.
4. Admitted.
5. Admitted.
6. Admitted.
7. Admitted.
8. Admitted.
9. Admitted.
10. Admitted.
11. According to the deposition testimony of defendant Michael Hokanson, he and his partner Fernando Torres received a call on a "store complaint in the upper level of Lord & Taylor." (Deposition Transcript of Michael Hokanson, attached hereto as Exhibit A, at 76). At that time, Hokanson was not informed at to the nature of the complaint, or that any complaint had been lodged against the particular plaintiffs. (Exhibit A at 76, 101-102). Defendant's Exhibits F, submitted in support of this paragraph, is not affidavits of witnesses competent to testify as to the facts at trial and/or evidence that would be admissible at trial,

and therefore, should not be considered for the purpose of this motion.

12. Admitted.

13. Admitted.

14. Denied. The security guards arrived and demanded that plaintiffs' leave the mall with no explanation. When plaintiffs' asked the guards why they had to leave, one of the guards rudely responded "because he said so 2 seconds ago," and began cursing at plaintiffs. Thereafter, Marvin Buntin responded, "he ain't doing shit." (Deposition Transcript of Kenneth Bingham, attached hereto as Exhibit B, at 33-36; Deposition Transcript of Shernette Clark, attached hereto as Exhibit D, at 62, 64, 82-85, 89, 110, 114).

Aside from Richard Meyers possibly using the word "hell," Marvin Buntin was the only member of the group to use the word "shit" in response to a rude comment by one of the security guards. Neither of these words, if they are to be considered profanity were directed towards the security guards, but made in response rude treatment and profane language used by security. (Exhibit B, at 71, Deposition Transcript of Floyd McLean, attached hereto as Exhibit C, at 55-56, Exhibit A, at 141; Exhibit D, at 62, 64, 82-85, 89, 110, 114).

With the exception of one statement by Marvin Buntin

11

which included the word "shit," plaintiff and their friends did not use profanity. They were neither loud, nor disruptive. Plaintiffs merely inquired of the security guards why they had to leave the Mall, and were not given an explanation by the guards while inside of the Mall. (Exhibit E, at 35, 102, 125; Exhibit B at 71, 75-76; Exhibit D, at 62, 62, 82-85, 89, 110, 114; Exhibit C, at 40-41, 55-56).

15. Admitted.

16. Admitted.

17. Denied. Aside from Richard Meyers possibly using the word "hell," Marvin Buntin was the only member of the group to use the word "shit" in response to a rude comment by one of the security guards. Neither of these words, if they are to be considered profanity were directed towards the security guards, but made in response rude treatment and profane language used by security. (Exhibit B, at 71, Deposition Transcript of Floyd McLean, attached hereto as Exhibit C, at 55-56, Exhibit A, at 141, Deposition Transcript of Shernette Clark, attached hereto as Exhibit D, at 62, 64, 82-85, 89, 110, 114).

18. Denied. Plaintiffs were told by the security guards that they had to leave the Mall. (Exhibit D, at 35-36, 38, 63-64, 67; Exhibit A, at 93-99; Exhibit C, at 19-22; Exhibit B, at 70-71; Deposition Transcript of Richard Meyer attached

hereto as Exhibit E, at 65).

19. Denied. The security guards arrived and demanded that plaintiffs' leave the mall with no explanation. When plaintiffs' asked the guards why they had to leave, one of the guards rudely responded "because he said so 2 seconds ago," and began cursing at plaintiffs. Thereafter, Marvin Buntin responded, "he ain't doing shit." (Deposition Transcript of Kenneth Bingham, attached hereto as Exhibit B, at 33-36; Exhibit D, at 62, 64, 82-85, 89, 110, 114).

Aside from Richard Meyers possibly using the word "hell," Marvin Buntin was the only member of the group to use the word "shit" in response to a rude comment by one of the security guards. Neither of these words, if they are to be considered profanity were directed towards the security guards, but made in response rude treatment and profane language used by security. (Exhibit B, at 71, Deposition Transcript of Floyd McLean, attached hereto as Exhibit C, at 55-56, Exhibit A, at 141, Deposition Transcript of Shernette Clark, attached hereto as Exhibit D, at 62, 64, 82-85, 89, 110, 114).

With the exception of one statement by Marvin Buntin which included the word "shit," plaintiff and their friends did not use profanity. They were neither loud, nor disruptive. Plaintiffs merely inquired of the security

13

guards why they had to leave the Mall, and were not given an explanation by the guards while inside of the Mall. (Exhibit E, at 35, 102, 125; Exhibit B at 71, 75-76; Exhibit D, at 62, 62, 82-85, 89, 110, 114; Exhibit C, at 40-41, 55-56).

20. Denied. The security guards physically touched Marvin Buntin. (Exhibit E, at 66; Exhibit B, at 35).

21. Denied. Plaintiffs Richard Meyers and Shernette Clark had not broken any rule Malls so they continued shop after the guards told other members of the group to leave. (Exhibit A, at 102-04, Exhibit D, at 35-36).

22. Denied. The security guards surrounded plaintiffs and their friends, and herded them to an exit where the defendant police officers were waiting for them. The security guards restricted the movement of plaintiffs and their friends. (Exhibit C, at 21-22, 44-46, 48-49, 62, Exhibit D, at 35-36; Exhibit E, at 36-37, 62-65, 66-68; Exhibit B, at 34-35).

23. Plaintiffs and their friends, most of whom were at the Mall for the first time, were being guided and directed by the security guards. (Exhibit E, at 67-68; Exhibit C, at 62, 46-49; Exhibit A, at 94, 107-08, 112-13).

24. Plaintiffs admit that on and prior to July 31, 2001, the Mall adopted a set of Rules of Conduct substantially the same as the Mall Rules of Conduct attached hereto as Exhibit F.

25. Denied. A card listing the Rules of Conduct of the Mall

was given to Olando Wilson, who is not a plaintiff. (Exhibit E, at 73-74.)

26. Denied. Once plaintiffs and their friends were outside of the Mall, one of the security guards told plaintiff Richard Meyer that they had broken the Mall rules in that they were in a group of seven and that they had been "loud and talking in the hallway." (Exhibit E, at 38).

27. Denied. The security guards surrounded plaintiffs and their friends, and herded them to an exit where the defendant police officers were waiting for them. The security guards restricted the movement of plaintiffs and their friends. (Exhibit C, at 21-22, 44-46, 48-49, 62, Exhibit D, at 35-36; Exhibit E, at 36-37, 62-65, 66-68; Exhibit B, at 34-35).

Plaintiffs and their friends, most of whom were at the Mall for the first time, were being guided and directed by the security guards. (Exhibit E, at 67-68; Exhibit C, at 62, 46-49; Exhibit A, at 94, 107-08, 112-13).

28. Admitted.

29. Denied. Plaintiff's and their friends were not disruptive and the security guards called the police officers to assist in the removal of eight black unwanted persons. (Exhibit E, at 35, 102, 125; Exhibit B at 71, 75-76; Exhibit D, at 62, 62, 82-85, 89, 110, 114; Exhibit C, at 40-41, 55-56; Exhibit G, Exhibit H).