30. Admitted.

31. Admitted.

32. Admitted.

33. Denied. The security guards were agents of the Mall. (Exhibit F, paragraph 2; Exhibit A, at 49-51).

34. Admitted.

35. Denied. The security guards were agents of the Mall. (Exhibit F, paragraph 2; Exhibit A, at 49-51).

36. Denied. It was after 10:00 p.m., when plaintiffs and their friends were allowed to go to their cars. The police officers were still on the scene when plaintiff's group entered their cars. (Exhibit C, at 27; Exhibit A, at 126-27).

37. Admitted.

38. Denied. The plaintiff security guards acted as agents of the Mall. (Exhibit F, Paragraph Two; Exhibit A, at 49-51). Without explanation, six or seven security guards surrounded and herded plaintiffs and their friends through the Mall towards an exit where the police officers, who had been radioed by the security guards, were waiting. (Exhibit E, at 45, 67-68; Exhibit C, at 23-25, 62, 46-49; Exhibit A, at 6-9, 11-14, 94, 107-08, 112-13; Exhibit B, at 39-40, 113; Exhibit D, at 42-45). Police officers were informed by security that 8 black

16

males were "unwanted" on their premises. (Exhibits G and H). The police immediately detained plaintiffs and their friends for forty-five minutes to an hour and thereafter told them that if they ever came back to the Mall, they would be arrested. (Exhibit A, at 19-21; Exhibit E, at 37, 68; Exhibit B, at 40, 42, 44-45, 47, 49; Exhibit C, at 25; Exhibit D, at 43, 45, 48).

39. Admitted.

40. Admitted.

41. Admitted.

42. Admitted.

Plaintiffs submit the following responses to defendants Spectaguard and Michael (LNU)'s Local Rule 56(a)1 statement:

1. Admitted.
2. Admitted.
3. Admitted.
4. Admitted.
5. Admitted.
6. Admitted.
7. Denied. According to the deposition testimony of defendant Michael Hokanson, he and his partner Fernando Torres received a call on a "store complaint in the upper level of Lord & Taylor." (Deposition Transcript of Michael Hokanson, attached hereto as Exhibit A, at 76). At that time, Hokanson was not informed at to the nature of the complaint, or that any complaint had been lodged against the particular plaintiffs. (Exhibit A at 76, 101-102). Defendant's Exhibits H, I, and J, submitted in support of this paragraph, are not affidavits of witnesses competent to testify as to the facts at trial and/or evidence that would be admissible at trial, and therefore, should not be considered for the purpose of this motion.
8. Denied. The security guards arrived and demanded that plaintiffs' leave the mall with no explanation. When

18

plaintiffs' asked the guards why they had to leave, one of the guards rudely responded "because he said so 2 seconds ago," and began cursing at plaintiffs. Thereafter, Marvin Buntin responded, "he ain't doing shit." (Deposition Transcript of Kenneth Bingham, attached hereto as Exhibit B, at 33-36; Exhibit D, at 62, 64, 82-85, 89, 110, 114).).

9. Plaintiffs admit that they were not talking to two white girls who had given them flyers at the time the security guards approached them.

10. Admitted.

11. Denied. Aside from Richard Meyers possibly using the word "hell," Marvin Buntin was the only member of the group to use the word "shit" in response to a rude comment by one of the security guards. Neither of these words, if they are to be considered profanity were directed towards the security guards, but made in response to rude treatment and profane language used by security. (Exhibit B, at 71, Deposition Transcript of Floyd McLean, attached hereto as Exhibit C, at 55-56, Exhibit A, at 141, Exhibit D, at 62, 64, 82-85, 89, 110, 114).

12. Denied. Plaintiffs were told that they had to leave the Mall. (Exhibit D, at 35-36, 38, 63-64, 67; Exhibit A, at 93-99; Exhibit C, at 19-22; Exhibit B, at 70-71; Deposition Transcript of Richard Meyer attached hereto as

19

Exhibit E, at 65).

13. Plaintiffs admit that on and prior to July 31, 2001, the Mall adopted a set of Rules of Conduct substantially the same as the Mall Rules of Conduct attached hereto as Exhibit F.

14. Denied. A card listing the Rules of Conduct of the Mall was given to Olando Wilson, who is not a plaintiff. (Exhibit E, at 73-74.)

15. Denied. Once plaintiffs and their friends were outside of the Mall, one of the security guards told plaintiff Richard Meyer that they had broken the Mall rules in that they were in a group of seven and that they had been "loud and talking in the hallway." (Exhibit E, at 38).

16. Denied. With the exception of one statement by Marvin Buntin which included the word "shit," plaintiff and their friends did not use profanity. They were neither loud, nor disruptive. Plaintiffs merely inquired of the security guards why they had to leave the Mall, and were not given an explanation by the guards while inside of the Mall. (Exhibit E, at 35, 102, 125; Exhibit B at 71, 75-76; Exhibit D, at 62, 62, 82-85, 89, 110, 114; Exhibit C, at 40-41, 55-56).

17. Denied. The plaintiffs and their friends did not

20

give the guards a "hard time" about leaving. After being given no explanation as to why they had to leave, plaintiffs and their friends continued to ask the guards why they had to leave the Mall. Plaintiffs and their friends never refused to leave the Mall. (Exhibit D at 118; Exhibit B, at 94; Exhibit E, at 85-86, 110-112, 118-122; Exhibit A, at 160).

18. Denied. Only Shernette Clark and Richard Meyers attempted to go inside of a photo store after the security guards initially told the other members of the group that they had to leave the Mall. (Exhibit D at 35-36; Exhibit E, at 36-37, 62-65).

19. Denied. The security guards surrounded plaintiffs and their friends, and herded them to an exit where the defendant police officers were waiting for them. The security guards restricted the movement of plaintiffs and their friends. (Exhibit C, at 21-22, 44-46, 48-49, 62, Exhibit D, at 35-36; Exhibit E, at 36-37, 62-65, 66-68; Exhibit B, at 34-35).

20. Denied. Plaintiffs and their friends, most of whom were at the Mall for the first time, were being guided and directed by the security guards. (Exhibit E, at 67-68; Exhibit C, at 62, 46-49; Exhibit A, at 94, 107-08, 112-13).

21

21. Admitted.

22. Denied. The security guards surrounded plaintiffs and their friends, and herded them to an exit where the defendant police officers were waiting for them. The security guards restricted the movement of plaintiffs and their friends. (Exhibit C, at 21-22, 44-46, 48-49, 62, Exhibit D, at 35-36; Exhibit E, at 36-37, 62-65, 66-68; Exhibit B, at 34-35).

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Denied. Without explanation or reason, six or seven security guards surrounded and herded plaintiffs and their friends through the Mall towards an exit where the police officers, who had been radioed by the security guards, were waiting. (Exhibit E, at 45, 67-68; Exhibit C, at 22-25, 62, 46-49; Exhibit A, at 6-9, 11-14, 94, 107-08, 112-13; Exhibit B, at 39-40; Exhibit D, at 40, 42-45). Police officers were informed by security that 8 black males were "unwanted" on their premises. When the police arrived, the security guards told them that eight black males were told to leave the Mall. (Exhibits G and H). There were

22

other similarly situated white individuals in the Mall who were not targeted by Mall security. (Exhibit E, at 126-28; Exhibit D, at 47-48, 87).

29. Denied. The plaintiff security guards acted as agents of the Mall. (Exhibit F, Paragraph Two; Exhibit A, at 49-51). Without explanation or reason, six or seven security guards surrounded and herded plaintiffs and their friends through the Mall towards an exit where the police officers, who had been radioed by the security guards, were waiting. (Exhibit E, at 45, 67-68; Exhibit C, at 23-25, 62, 46-49; Exhibit A, at 6-9, 11-14, 94, 107-08, 112-13; Exhibit B, at 39-40, 113; Exhibit D, at 42-45). Police officers were informed by security that 8 black males were "unwanted" on their premises. (Exhibits G and H). The police immediately detained plaintiffs and their friends for forty-five minutes to an hour and thereafter told them that if they ever came back to the Mall, they would be arrested. (Exhibit A, at 19-21; Exhibit E, at 37, 68; Exhibit B, at 40, 42, 44-45, 47, 49; Exhibit C, at 25; Exhibit D, at 43, 45, 48).

30. Denied. The police officers behavior was not reasonable in that the plaintiffs and their friends were attempting to exit the Mall as directed by Mall security, and in fact were leaving the Mall area when the police

23

unlawfully detained them for about an hour. The security guards summoned the police to the Mall to assist in removing plaintiffs, who were "unwanted" from the premises. The plaintiffs and their friends were attempting to leave when the officers arrived, stopped, and detained them without probable cause or any reason to believe that plaintiff and their friends were engaging in or had engaged in criminal activity. (Exhibit G and H; Exhibit E, at 45; Exhibit B, at 39-40; Exhibit C, at 23-25; Exhibit D, at 42-45; Exhibit A, at 11-12).

31. Admitted.

32. Admitted.

33. Admitted.

34. Denied. Plaintiffs emotional damages were not exacerbated by their decision to publicize the incident in a television interview. (Exhibit D, at 70-72; Exhibit E, at 75-76; 106-07; Exhibit B, at 87-88; Exhibit C, at 66-68).

## DISPUTED ISSUES OF MATERIAL FACTS

1. Prior to approaching plaintiffs and their friends, the defendant security guards were unaware of the specific alleged store complaint which they now contend was the reason that plaintiffs' group were forced to leave the Mall. (Exhibit A, at 76, 101-102).

2. Prior to approaching plaintiffs and their friends, the security guards failed to investigate the alleged store complaint to determine if plaintiffs' group was the source of said complaint and whether plaintiffs' group had broken any Mall rules. (Exhibit A, at 76, 101-02).

3. Without any prior investigation of the alleged store complaint, which is not substantiated by competent evidence as against plaintiffs' group (See Exhibits Defendant's Exhibits I, J, K), the security guards told plaintiffs and their friends that they had to leave the Mall without further explanation. (Exhibit A, at 76, 101-02; Exhibit B, at 34; Exhibit C, at 19-22; Exhibit E, at 33-35, 65, 73; Exhibit D, at 35-36, 87).

4. While waiting outside of Lord & Taylor, plaintiffs' group was flirting with female patrons. There are no complaints from any female indicating that she was harassed by plaintiffs and their friends. (Exhibit B, at 26-28, 50-51, 68-69; Exhibit C, at 18-19, 83).

5. The security guards made rude comments and use profanities directed towards plaintiffs and their friends. (Exhibit D, at 82-85; Exhibit E, at 84-85, 121-22).

6. Although the security guards did not believe that plaintiffs Meyers and Clark had broken any Mall rules, or acted improperly, the security guards told them that they had to leave the Mall when the two attempted to continue shopping. (Exhibit A, 102-04, Exhibit D, at 35-36; Exhibit C, at 39).

7. During the incident inside of the Mall, plaintiffs and their friends began speaking in Jamaican language and the security guards started getting upset. (Exhibit C, at 42-43).

8. Plaintiffs' group, stating that they were leaving the Mall, attempted to move away from the security guards. (Exhibit C, at 58, 75-76; Exhibit E, at 37; Exhibit B, at 36,93; Exhibit A, at 160).

9. Plaintiffs and their friends asked the security guards why they had to leave and received no explanation from the security guards. (Exhibit B, at 34, 69; Exhibit C, at 19-22; Exhibit E, at 33-35, 61, 65, 73, 100; Exhibit D, at 35-36, 87).

10. When the security guards first told plaintiffs to leave the Mall, they told the security guards that the

drivers of the group were inside of Lord & Taylor and that they had to wait on them. (Exhibit B, at 73).

11. Six or eight security guards surrounded plaintiffs and their friends, and herded them to an exit where the defendant police officers, who had been directed to the same exit by the security guards, were waiting for them. The security guards restricted the movement of plaintiffs and their friends. (Exhibit C, at 21-22, 44-46, 48-49, 62, Exhibit D, at 35-36, 40; Exhibit E, at 36-37, 62-65, 66-68; Exhibit B, at 34-35; Exhibit A, at 11-15, 173-74).

12. The security guards physically touched Marvin Buntin. (Exhibit E, at 66; Exhibit B, at 35).

13. The security guards radioed for police assistance in the removal of eight black males, who were classified as "unwanted persons." (Exhibit G and Exhibit H).

14. The police officers falsified there police report to reflect that they had absolutely no interaction with plaintiffs and their friends. (Exhibit A, 19-21, 126-27, 130; Exhibit E, at 43-45; Exhibit H and Exhibit G).

15. Once plaintiffs and their friends were outside of the Mall, one of the security guards told plaintiff Richard Meyer that they had broken the Mall rules of being in a group of more than seven and being "loud and talking in the hallway. (Exhibit E, at 38).

16. Plaintiffs' group was not loud and they were grouped in seven only because the security guards surrounded them and herded them to an exit were the defendant police officers were waiting for them. (Exhibit E, at 36-37, 62-65, 66-68, 102, 125; Exhibit B, at 34-35, 76; Exhibit D, at 35-36, 114, 118; Exhibit C, at 21-22, 44-46, 48-49, 62).

17. The police officers unlawfully detained plaintiffs and their friends for a period of approximately 45 minutes to an hour, after the Mall has closed for business and there was no reason for plaintiffs' group to remain on Mall premises. (Exhibit E, at 47; Exhibit B, at 41; Exhibit C, at 29, Exhibit D, at 45-46).

18. The officers record checked everyone's identification, and escorted at least two plaintiffs to their car in order to retrieve their identification. The officers also directed plaintiffs to "shut up" and "sit down", and refused to answer any questions from plaintiffs and their friends. The officers further threatened plaintiffs and their friends with arrest, and further told them that if they ever came back to the Mall that they would be arrested. (Exhibit A, at 19-21; Exhibit E, at 37, 68; Exhibit B, at 40, 42, 44-45, 47, 49; Exhibit C, at 25; Exhibit D, at 43, 45, 48).

19. In order to hide their behavior, the defendant officers falsified their police report to indicate that they had absolutely no contact with plaintiffs' group. The officers also covered their badges so that plaintiffs could not identify them. (Exhibit A, at 19-21, 126-27, 130; Exhibit E, at 43-45; Exhibit H).

20. Plaintiffs were discriminated against base on their race and national origin in that they were treated differently from similarly situated white individuals and were targeted because of their color and Jamaican accents. (Exhibit E, at 126-28; Exhibit D, at 47-48, 87; Exhibit C, at 42-43; Exhibit B, at 86).

21. Plaintiffs filed timely notice to the Commission of Human Rights and Opportunities. (Attorney Certification attached hereto as Exhibit L.)

22. The Statement of Matthew Wilkens is dated August 29, 2001. (Exhibit I). The Statement of Stephanie Caldwell is not dated, but marked received on October 4, 2002. (Exhibit J). Defendant Michael Hokanson testified that he reviewed Wilkens' and Caldwell's reports within the week of the incident, July 31, 2001. (Exhibit A, at 121-22).

30. At the time of the incident, a copy of the Mall rules were not posted, but were available for review at customer services. (Exhibit A, at 46).

29

31. Investigating Officer Fernando Torres, who investigated the alleged store complaints and prepared an incident report with respect to same, has refused to cooperate during the discovery process and now is no longer employed by Spectaguard. (Exhibit M).

32. None of the witnesses that have knowledge about the alleged store complaints are available for depositions and their whereabouts are unknown.

33. The defendant police officers have received no training with respect to "racial profiling" and/or "bias sensitivity. (Township of Trumbull's Answers to Interrogatories, attached hereto to as Exhibit N).

34. The security guards were agents of the Mall. (Exhibit F, at Paragraph 2).

35. Plaintiffs have suffered emotional damages as a result of the incident. (Exhibit E, at 50-53; Exhibit B, at 55, 85; Exhibit C, at 31, 63-65; Exhibit D, at 96-103).

36. Aside from Richard Meyers possibly using the word "hell," Marvin Buntin was the only member of the group to use the word "shit" in response to a rude comment by one of the security guards. Neither of those word, if they are to be considered profanity were directed towards the security guards, but made in response to rude treatment and profane language used by security. (Exhibit B, at 71;

Exhibit C, at 55-56; Exhibit A, at 141, Exhibit D, at 62, 64, 82-85, 89, 110, 114).

37. While inside of the Mall, plaintiffs were neither loud, nor disruptive. Plaintiffs merely inquired of the security guards why they had to leave the Mall, and were not given an explanation by the guards. (Exhibit E, at 35, 102, 125; Exhibit B at 71, 75-76; Exhibit D, at 62, 82-85, 89, 110, 114; Exhibit C, at 40-41, 55-56).

38. The defendant Mall is a place of public accommodation in that it operates a food court serving food and beverages to the general public. (Exhibit A, 55, 93).

By _____
Cynthia H. Hardaway Esq.
Fed. Bar No.: CT24752
Hunt, Hamlin & Ridley
Military Park Building
60 Park Place, 16th Floor
Newark, New Jersey 07102
(973) 242-4471