UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 SEP -8 A 9: 26

U.S. DISTRICT COURT

| RICHARD A. MYERS, SHERNETTE CLARK, KENNETH BINGHAM, FLOYD McLEAN<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF TRUMBULL, , OFFICER COPPOLA, I.D. # 24 (first name unknown) (individually and in his official capacity), OFFICER, I.D. #35 (name unknown) (individually and in his official capacity), SPECTAGUARD, MICHAEL (last name unknown), WESTFIELD SHOPPINGTOWN, JOHN DOES 1 through 10, JANE DOES 1 through 10, and ABC Corp. through XYZ, individually, jointly and severally,<br><br>Defendants. | CASE NO.: 3:03 CV 373 (RNC)<br><br><br>September 7, 2004 |
|---|---|

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO STRIKE

I. INTRODUCTION

Defendant Westfield Shoppingtown ("Mall") moves to strike plaintiffs' exhibits attached to their opposition to defendants' motions for summary judgment. Defendant further contends that plaintiff's responses to defendants' motion for summary judgment was untimely.

## II. LAW AND ARGUMENT

Entry of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if the evidence is such that a "reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Thereafter, the burden shifts to the non-moving party to show that a genuine issue of material fact exists for the purpose of trial. Id. at 324. Any inference to be drawn from the proffered evidence must be viewed in the light most favorable to the non-moving party. Id.

Here, defendant moves to strike all of the deposition testimony taken during the course of discovery. Since depositions are clearly allowed in support of motions for summary judgments and any related responses, defendant's motion to strike should be denied. Defendant further moves to strike plaintiffs' Exhibit F, a document provided through discovery by one of the named defendant's as the Mall's Rules of Conduct, and further

relied on by defendants as their basis for forcing plaintiffs' to leave the Mall . The contents of this document, according to the deposition testimony of defendant Michael Hokanson, were adopted by the Mall as its code of conduct at the time of the incident. <u>See</u> Deposition testimony of Michael Hokanson, attached hereto as Exhibit A, pages 44-51. As such, defendant's motion with respect to plaintiffs' Exhibit F should denied.

Finally, since plaintiffs' counsel received defendant's motion for summary judgement via regular mail, plaintiffs' responses were timely filed pursuant to Local Rule 6 and the Federal Rules of Civil Procedure 6(e).

III.  CONCLUSION

Based on the foregoing, defendants' motion should be denied.

Hunt, Hamlin & Ridley
Attorneys for Plaintiffs

By: _____
Cynthia H. Hardaway
Hunt, Hamlin & Ridley
60 Park Place, 16th Floor
Newark, New Jersey 07102
Tel. (973) 242-4471
Fed. Bar No.: CT24752

cc: Louis N. George, Esq.
    Michael T. McCormack, Esq.
    Robert J. Flanagan, Jr.

1        Q.    And you were disciplined for
2  that?
3        A.    Correct.
4        Q.    When was that?
5        A.    I don't recall the year.
6        Q.    Is there anything else?
7        A.    Not to my knowledge.
8        Q.    Now, when you became employed
9  by the mall, Trumbull Mall, did they ever
10  give you a set of rules and regulations
11  adopted by the mall for you to enforce?
12        MR. FLANAGAN:  Objection to
13    the form.
14        MR. MCCORMACK:  Objection
15    to the form.
16        THE WITNESS:  Yes.
17        Q.    (By Ms. Hardaway) What were
18  those?
19        A.    It's known as a code of
20  conduct which was at that time was hired,
21  was displayed prominently in every door.
22        Q.    When you say every door, what
23  do you mean?
24        A.    Every mall entrance into the
25  mall.  So in the case of the report, the

**NIZIANKIEWICZ & MILLER REPORTING SERVICES**
972 Tolland Street
East Hartford, Connecticut  06108
(860) 291-9191    FAX:  (860) 528-1972

A

1   mall entry 1, 4, 2, not a store coming in
2   from Filene's or.
3          Q.    How many entries are there to
4   the mall?
5          A.    At that point there was five.
6          MR. MCCORMACK:  Just for the
7      record, can I get an idea as to
8      what point we're talking about?
9          MS. HARDAWAY:  He said at
10     the time when he was first hired by
11     the mall.
12         THE WITNESS:  '96.
13         MS. HARDAWAY:  So now, I
14     want to direct your attention to
15     what I will have marked as P-2 for
16     identification.
17
18     (Plaintiff's Exhibit No. 2, code of
19     conduct, marked for identification.)
20
21         Q.    (By Ms. Hardaway) Can you
22  review that to yourself?  Let me know when
23  you're done.
24         A.    (The witness complies.)  Okay.
25         Q.    Did they ever come -- did

NIZIANKIEWICZ & MILLER REPORTING SERVICES
972 Tolland Street
East Hartford, Connecticut  06108
(860) 291-9191     FAX:  (860) 528-1972

1  there ever come a time when the rules that
2  you made reference to, the code of conduct,
3  did there ever come a point when they were
4  no longer displayed at five different
5  entries?
6        A.   Yes.  I don't recall when
7  that was but in relation to the actual code
8  of conduct, there was a sign directing
9  everyone that there is a code of conduct in
10 place and to stop by customer service or a
11 security officer to obtain one.  I'm not
12 sure of the exact language on the sign.
13       Q.   At that point, you don't
14 recall what year it was?
15       A.   Yes.
16       Q.   Was it prior to this incident
17 that's the subject matter of the complaint?
18       A.   I believe so.  Yes.
19       Q.   Do you know what was waiting
20 at the security desk for anyone that
21 decided they wanted to go see?
22       A.   It was a depending on what
23 year it was, I know this was a copy of the
24 actual code of conduct whether it was this,
25 after some point we got small pocket-sized

47

1    cards that was the exact duplicate of the
2    code of conduct.
3            Q.    So at any given point it
4    would have either been a piece of paper
5    that you made reference, you touched in
6    P-2?
7            A.    I made reference to that.
8            Q.    Legal size paper and then at
9    some point it turned to more of like a
10   business card size?
11           A.    An oversized card, more of an
12   index card size, not a business card.
13           Q.    Now, in reference to the code
14   of conduct that was initially displayed
15   back in 1996, if you take a look at P-2, is
16   that the code of conduct?
17           A.    To the best of my
18   recollection, yes.
19           Q.    Okay.  Do you know if the
20   code of conduct has changed throughout the
21   years that you've been at the mall?
22           A.    Yes, it has to small varying
23   degrees, different language or in addition
24   to, specifically I know the one now is
25   changed, so I can't specifically say on

that one what's changed.

Q. I'm sorry. You said you know --

A. That the mall that I work at now we've changed the code of conduct and its similar to that but we added stuff to it but I can't say that its changed on P-2.

Q. But the mall that you're making reference to is not the Westfield mall?

A. Yes. There have been changes to the code of conduct. I can't specifically say what changes have been made.

Q. Do you know when this document was actually put out?

A. No, I don't. The code of conduct was established and displayed prior to my employment.

Q. Okay.

A. In general this document specifically, no, I don't.

Q. And you can't tell after having reviewed that document what changes that might have occurred since 1996?

49

1   A. No, not specifically. I
2   know there were minor changes.
3   Q. Okay. Well, could this be
4   the same document that was back there in
5   1996?
6   A. Yes.
7   Q. Or it could have changed up
8   until the present date you just don't know?
9   A. That's correct.
10  Q. Now, when you first became
11  employed with the mall, they went over
12  these rules with you?
13  A. Correct.
14  Q. And your understanding was
15  that part of your job function was to
16  enforce these rules, correct?
17  A. Correct.
18  Q. Did you consider yourself to
19  be an agent of the mall in the performance
20  of your duties?
21       MR. MCCORMACK: Objection to
22   the form.
23       THE WITNESS: When I was
24   first hired? Yes.
25  Q. (By Ms. Hardaway) And at some

1   point you no longer felt that to be the
2   case?
3       A.   I was an agent of Spectaguard
4   at that point which was contracted by the
5   mall, so in an essence yes, it was -- a
6   different relationship but yes, still an
7   agent of the mall.
8       Q.   So at all times you
9   considered yourself to be an agent of the
10  mall?
11          MR. FLANAGAN:  Objection to
12      the form.
13          MR. MCCORMACK:  Objection
14      to the form.
15          THE WITNESS:  Yes.
16      Q.   (By Ms. Hardaway) I want to
17  direct your attention to P-2 to the -- just
18  one second.  Directing your attention to
19  paragraph 2 of Plaintiff's 2 for
20  identification.  You see where it starts
21  the security department?
22      A.   Yes.
23      Q.   Have you ever seen that
24  language used before?
25      A.   Yes.

1   Q.   When was the first time you
2   saw that language?
3   A.   When I was hired, it was part
4   of the code of conduct.
5   Q.   And when you became
6   contracted out through Spectaguard, was
7   that language still in place?
8   A.   I believe so.  Yes.
9   Q.   So is it fair to say that
10  throughout your connection with Westfield
11  mall, that language was in effect?
12  A.   Yes.
13  Q.   Now, with respect to the
14  different rules and regulations, let me
15  just draw your attention -- is this the
16  only copy we have?
17          MR. FLANAGAN:  I think
18      everybody's got one copy at this
19      point.
20          MS. HARDAWAY:  Can he
21      use -- now, directing your
22      attention to No. 1 on Page 2.
23          MR. BROWN:  You mean
24      Plaintiff's 2.
25          MS. HARDAWAY:  What did I

## CERTIFICATION OF MAILING

This is to certify that, on this 7th day of September 2004, an original and one copy of the foregoing has been sent via overnight mail to the Clerk of the United States District Court and via regular mail to the following counsel of record:

Stuart E. Brown
Hasset & George, P.C.
555 Franklin Avenue
Hartford, Connecticut 06114

Michael T. McCormack
Tyler, Cooper & Alcorn, LLP
185 Asylum Street
Cityplace I 35th Floor
Hartford, CT 06103-3802

Robert J. Flanagan, Jr.
Cella, Flanagan & Weber, P.C.
21 Washington Avenue
P.O. Box 221
North Haven, CT 06473-0221

By: _____
Cynthia H. Hardaway

DATED: September 7, 2004